IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-00107 |
| | § | |
| RBC CAPITAL MARKETS | § | |
| CORPORATION N/K/A RBC CAPITAL | § | |
| MARKETS, LLC; RBC CENTURA | § | |
| BANK N/K/A RBC BANK (USA); | § | |
| RBC U. S. INSURANCE SERVICES, INC.; | § | |
| | § | |
| Defendants. | § | |

# PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
# AND SUPPORTING BRIEF

          Respectfully submitted,

          */s/ William G. Whitehill*
            William G. Whitehill
            State Bar No. 21356550
            Joe B. Harrison
            State Bar No. 09115500
          GARDERE WYNNE SEWELL LLP
          1601 Elm Street, Suite 3000
          Dallas, Texas 75201
          Telephone: 214.999.4633
          Facsimile: 214.999.3633

          ATTORNEY-IN-CHARGE FOR
          PLAINTIFF, BRENDA TOLBERT

OF COUNSEL:

Geoffrey H. Bracken
State Bar No. 02809750
J. Palmer Hutcheson
State Bar No. 10335500
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Telephone: 713.276.5739
Facsimile: 713.276.6739

2196476v.3

# TABLE OF CONTENTS

I. Preliminary Statement ........................................................................................................1

II. Evidentiary Basis .................................................................................................................1

III. Nature Of The Case ............................................................................................................2

IV. Class Definition ...................................................................................................................5

V. Argument And Authorities ..................................................................................................6

    A. Certification Standards ..............................................................................................6

    B. Rule 23(a) ...................................................................................................................6

        1. Numerosity: The class is so numerous that joinder is impractical. ............6

        2. Commonality: Whether the WAP is a valid top hat plan is the controlling question and is common to every class member. ......................7

        3. Typicality: Tolbert's claims as a WAP participant are typical of all class member's claims. ...............................................................................8

        4. Adequacy: Tolbert and her counsel will adequately represent the class. ...........................................................................................................8

            (a) Tolbert and her counsel will vigorously prosecute this case for the class. ...............................................................................9

            (b) Tolbert has no conflicts with the class. .........................................10

    C. Rule 23(b): This case satisfies all three subdivisions of Rule 23(b). .....................10

        1. This case satisfies Rule 23(b)(1). ................................................................11

        2. This case satisfies Rule 23(b)(2). ................................................................11

        3. This case satisfies Rule 23(b)(3). ................................................................12

            (a) Common questions of law and fact predominate ...........................12

            (b) A class action is superior for fair and efficient adjudication. ........13

VI. CONCLUSION ..................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bigda v. Fischbach Corp.*,
    898 F. Supp. 1004 (S.D.N.Y. 1995)...................................................................................2

*Boos v. AT&T, Inc.*,
    252 F.R.D. 319 (W.D. Tex. 2008) ...............................................................8, 9, 11, 12, 13

*Boykin v. Georgia-Pacific Corp.*,
    706 F.2d 1384 (5th Cir. 1983) ..................................................................................................9

*Carrabba v. Randalls Food Markets, Inc.*,
    38 F.Supp. 2d 468 (N.D. Tex. 1999) ................................................................................7, 11

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2nd Cir. 1995)..................................................................................................6

*Duggan v. Hobbs*,
    99 F.3d 307 (9th Cir. 1996) ..................................................................................................2

*Durrett v. John Deere Co.*,
    150 F.R.D. 555 (N.D. Tex. 1993)....................................................................................7, 13

*Forbush v. J.C. Penney Co., Inc.*,
    994 F.2d 1101 (5th Cir. 1993) .....................................................................................7, 8, 10

*Gallione v. Flaherty*,
    70 F.3d 724 (2d Cir.1995)....................................................................................................3

*Halford v. Goodyear Tire & Rubber Co.*,
    161 F.R.D. 13 (W.D.N.Y. 1995)........................................................................................12

*Hollingshead v. Burford Equip. Co.*,
    747 F. Supp. 1421 (M.D. Fla. 1990).....................................................................................2

*Horton v. Goose Creek I.S.D.*,
    690 F.2d 470 (5th Cir. 1982), *cert. denied*, 463 U.S. 1207 (1983)............................................8

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ..............................................................................................10

*Murillo v. Musegades*,
    809 F. Supp. 487 (W.D. Tex. 1992)......................................................................................6

*Pension Benefit Guar. Corp. v. LTV Corp.*,
   122 F.R.D. 436 (S.D.N.Y. 1988) ...................................................................................9

*Republic Nat'l Bank of Dallas v. Denton & Anderson Co.*,
   68 F.R.D. 208 (N.D. Tex. 1975) ...............................................................................6, 12

*Shady Grove Orthopedic Assocs. v. Allstate In., Co.*,
   __ U.S. __, 130 S.Ct. 1431 (2010)................................................................................6

*Spacek v. Maritime Ass'n*,
   134 F.3d 283 (5th Cir. 1998) ........................................................................................2

*Westman v. Textron, Inc.*,
   151 F.R.D. 229 (D. Conn. 1993)................................................................................3, 6


**STATUTES**

29 U.S.C. § 1002(2)(A)........................................................................................................2

29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1) .....................................................................2


**OTHER AUTHORITIES**

5 Moore's Federal Practice ¶ 23.23[4][i] (3d ed. 1997) .....................................................5

5 Moore's Federal Practice ¶ 23.40[2] (3d ed. 1997) ......................................................12

Department of Labor ERISA Opinion 92-13A n. 1............................................................2

Department of Labor ERISA Opinion 90-14A................................................................2, 3

Fed. R. Civ. P. 23(a) ..............................................................................................6, 10, 14

Fed R. Civ. P. 23(b)(1)..................................................................................................11, 12

Fed. R. Civ. P. 23(b)(1)(A), (B)...........................................................................................11

## I. Preliminary Statement

Defendants established an ERISA pension plan to encourage employee loyalty. Brenda Tolbert and thousands of other employees trusted Defendants and joined the plan. Years later, Defendants forfeited Tolbert's vested employer contributed benefits, claiming that the plan allegedly is a "top hat" plan exempt from ERISA's statutorily mandated vesting, accrual, trust fund, and other employee protections. This is not the first time that Defendants have forfeited benefits based on that false premise. Nor will it be the last. Moreover, Defendants never created or funded the statutorily required trust to protect participants' vested accrued pension benefits. Nor did they do a number of other things ERISA requires of pension plans, because they say the plan is exempt from those Congressionally mandated employee protections.

This case pivots on a single issue: Is the plan a top hat plan? The answer to the question must—as a matter of law—apply uniformly to all present and former plan participants and will determine whether Tolbert and others like her have valid claims for ERISA-protected statutory rights. As the *Carrabba v. Randalls Food Markets* top hat litigation shows (discussed *infra*), not only is the case ideally suited for class-action treatment, but that the certified class should be mandatory.

## II. Evidentiary Basis

The evidence supporting this motion is contained in the accompanying Appendix To Plaintiff's Motion For Class Certification ("Plaintiff's App."), which Tolbert adopts and incorporates herein.[1]

---

[1] Where, as here, the complaint clearly identifies the nature of the issues that will actually be presented at trial, merits discovery and a determination of a probable outcome on the merits is not properly part of the certification decision. *See* Fed. R. Civ. P. 23 — 2007 Notes of Advisory Committee [¶3]. Therefore, under these circumstances, courts may presume that the factual allegations stated in the complaint regarding the case's underlying merits (as opposed to Rule 23's procedural requirements, such as numerosity, typicality, adequacy, etc.) are correct. *See Westman v. Textron, Inc.*, 151 F.R.D. 229, 230 (D. Conn. 1993). Tolbert refers, therefore, to the allegations in her

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING BRIEF** Page 1

### III. Nature Of The Case

Tolbert, for herself and all similarly situated persons, seeks a judgment declaring that Defendants' employee pension benefit plan called the Wealth Accumulation Plan ("WAP") is not a lawful top hat plan exempt from ERISA's mandatory, vesting, accrual, trust fund, and other statutory protections, and that she and they are entitled to appropriate equitable relief requiring Defendants to maintain the WAP in full compliance with ERISA and such other equitable relief as is appropriate.

*What is a "top hat" plan?*

A plan is an ERISA pension plan if it expressly or as a result of surrounding circumstances either "provides retirement income to employees" or "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A). As discussed in depth in Plaintiff's First Amended Class Action Complaint [Dkt. #24] ("FAC," pp. 7-15), a "top hat" plan is a narrow subset of pension plans that is "unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Top hat plans are exempt from ERISA's minimum vesting, trust fund, and other critical ERISA mandates because of the strict statutory limits placed on who can participate in a top hat plan. Thus, as the name suggests, top hat plans are limited to those influential people who do not need ERISA's statutory rights to protect their retirement benefits:

> [I]n providing relief for "top hat" plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their position or compensation level, have the ability to

---

FAC to support her background factual allegations regarding the substantive merits of her claims. She also submits the Appendix as evidence establishing the Rule 23 requirements.

> affect or substantially influence, through negotiation or otherwise, the design and operation of their compensation plan, considering any related risks, and therefore, do not need the substantive rights and protections of [ERISA].

*Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996) (*quoting* U.S. Department of Labor ERISA Opinion 90-14A); *Hollingshead v. Burford Equip. Co.*, 747 F. Supp. 1421, 1426 (M.D. Fla. 1990); *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1015 (S.D.N.Y. 1995); and DOL ERISA Op. 92-13A n. 1; *see generally* discussion at FAC, pp. 10-15. These tight parameters have their foundation in ERISA's legislative history. *See, e.g., Spacek v. Maritime Ass'n*, 134 F.3d 283, 286 n. 12 (5th Cir. 1998), quoting Dept. of Labor Op. 90-14A; *Gallione v. Flaherty*, 70 F.3d 724, 727-728 (2d Cir.1995).

Here, of course, the WAP has included many employees who are neither a member of a select group of management, nor highly compensated. Therefore, the WAP is subject to the full complement of ERISA protections. *See* FAC, pp. 16-24.

### *What is the WAP?*

Defendants admit that the WAP is a "retirement plan", but claim that it is also an exempt top hat plan.[2] FAC, p. 16 (¶ 71). The facts belie that latter premise.

As discussed more thoroughly in Tolbert's FAC, the WAP has included a cornucopia of job positions, a chasmic disparity in income levels, and overall population levels that defy the idea that the WAP was limited to a select group of management or highly compensated employees who individually had the ability to "affect or substantially influence, through negotiation or otherwise, the design and operation of their compensation plan, considering any related risks." *See* FAC, pp. 16-25. For example, over half the participants cannot be classified

---

[2] The WAP is currently known as the Royal Bank of Canada US Wealth Accumulation Pan and was formerly known as the Dain Rauscher Wealth Accumulation Pan and the RBC Dain Rauscher Wealth Accumulation Plan.

as any form of executive, top, mid, or bottom level management. FAC, pp. 20-23. Indeed, being a member of management at any level itself was never an eligibility standard, which were always based on an employee's total compensation or production.

As to compensation, there exists a more than 28 times top to bottom disparity in compensation between Defendants' true top hat senior executives and Defendants' supposed entry level eligibility guidelines; there are numerous WAP participants who fall below Defendants' minimum compensation eligibility threshold; and numerous participants make less than the average compensation for all Defendants' employees. FAC, pp. 24-25.

In 2001, Defendants told the Department of Labor that the WAP then covered 1,200 employees. FAC, p. 18 (¶ 78). Even more telling, employees making *less than* $75,000 and *more than* $3.5 million were in the WAP (a 46.7 times disparity). FAC, pp. 24-25 (¶s 100, 102). By 2008, the WAP covered nearly 2,700 employees, which was almost 18% of the work force. FAC, pp. 18-19 (¶s 79, 83); Pl. App., Ex. 4. Finally, the WAP contained voluminous numbers of participants. FAC, pp. 18-20 (¶s 76-87).

Plainly, a plan of this scope and diversity is not "selective" in any sense relevant to the ERISA top-hat exemption. Thus, Defendants set about to cover over their problem by raising the compensation threshold and thereby reducing the number of eligible participants by over 1,200 employees and booted an estimated 444 persons from further participation in the WAP. FAC, pp. 19-20 (¶s 82-87); Pl. App., Ex. 4.

*Who is the named plaintiff?*

Brenda Tolbert worked for RBC Capital Markets Corporation and its predecessors for nearly forty years as a secretary and administrative assistant. FAC, pp. 6 (¶ 27), 20 (¶ 88-89); Tolbert Decl. at ¶ 3. Tolbert received awards and consistently strong reviews. FAC, p. 20

(¶ 89). After many years of loyal service, she asked for a raise but received the empty title of associate vice president instead. FAC, p. 20 (¶ 89). Her job responsibilities remained the same, and she never had any management responsibilities. FAC, p. 20 (¶ 89). Despite her title, her compensation was far below that of the financial consultants and brokers in her office. FAC, pp. 6 (¶ 27). From 2003 through August 2009, Tolbert was a WAP participant. FAC, pp. 6 (¶ 27), 27-28 (¶ 114 n. 39); Tolbert Decl. at ¶s 3-4. At no time during her eligibility or participation was she considered "management," nor did she have any ability to affect or substantially influence the design or operation of the WAP. FAC, pp. 6 (¶ 27), 20 (¶ 88-89), 24 (¶ 98).

As more fully described in the FAC, Defendants fired Tolbert as part of their scheme to force her boss to retire and pass his book of business to younger brokers. FAC, pp. 27-28 (¶ 114 n. 39). When she asked Defendants to pay her vested accrued WAP pension benefits to her, they returned her employee contributions and forfeited her vested accrued employer contributions and earnings based on a forfeiture clause in the WAP plan document. FAC, pp. 6 (¶ 27), 27-28 (¶ 114 n. 39); *see* Tolbert Decl. at ¶ 5. That clause is illegal, unless Defendants can establish that the WAP is a lawful top hat plan.

### IV. Class Definition

Plaintiff seeks to certify a plaintiff class pursuant to Rule 23. The proposed class consists of:

> All persons who—within the last four years—have or had at least five years of service with Defendants, are current or former employees of Defendants, and were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased (the "Plaintiff Class").

## V. Argument And Authorities

### A. Certification Standards.

ERISA cases are ideally suited for certification as class actions, and so—not surprisingly—they routinely are. *See* 5 Moore's Federal Practice ¶ 23.23[4][i] (3d ed. 1997) ("The factual situations in which class actions have been approved are as varied and complex as ERISA itself . . ."). As in other types of cases, certification is required where a court finds that the prerequisites in Federal Rule of Civil Procedure 23(a) and at least one subsection of Rule 23(b) are present. *Shady Grove Orthopedic Assocs. v. Allstate In., Co.*, __ U.S. __, 130 S.Ct. 1431, 1437-38 (2010) (certification required if requisites are met).

Here, all requirements of Rule 23(a)—commonly referred to as numerosity, commonality, typicality and adequacy—are satisfied, as are all the requirements of Rule 23(b)(1), (b)(2), and (b)(3). Certification is, therefore, both appropriate and necessary to protect the rights of all WAP participants.

### B. Rule 23(a).

#### 1. Numerosity: The class is so numerous that joinder is impractical.

The first requirement in Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Practicality of joinder depends upon the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined, and their geographic dispersion. *Murillo v. Musegades*, 809 F. Supp. 487, 502 (W.D. Tex. 1992). To satisfy Rule 23(a)(1), joinder of all parties need only be impractical, not impossible. *Republic Nat'l Bank of Dallas v. Denton & Anderson Co.*, 68 F.R.D. 208, 213 (N.D. Tex. 1975).

Here, the WAP has had thousands of participants spread around the country. Pl. App., Ex. 4; Bracken Decl. at ¶s 7-8. Given these numbers, especially when coupled with wide geographic

dispersal, joinder is legally and factually impracticable. In fact, the number of potential plaintiffs is so large that impracticality of joinder should be presumed without further inquiry. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2nd Cir. 1995) (numerosity presumed at a level of forty members); *Carrabba v. Tom Thumb Food & Drugs, Inc.,* June 16, 1998 order (certifying class consisting of 250 participants in a failed top hat plan)[3]; 1 Conte and Newberg, Newberg on Class Action, § 3.5 at 2463-25 (Thomson West 2002) ("Certainly, when the class is very large—for example, numbering in the hundreds—joinder will be impractical; but in most cases, the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower.").

> **2. Commonality: Whether the WAP is a valid top hat plan is the controlling question and is common to every class member.**

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." To satisfy this standard, a plaintiff must show only that there is "at least one issue where resolution will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (certifying ERISA class and finding common issues as to whether defendant violated ERISA's non-forfeiture provisions). For this reason, the threshold of "commonality" is not high and is easily met. *Id.* at 1106.

In *Forbush,* for example, the Fifth Circuit concluded that the plaintiff met the commonality requirement, even though four different pension plans were involved. This reasoning holds all the more so when, as here, the case turns on the single question of whether a plan is a top hat plan. *See Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp. 2d 468, 470 (N.D. Tex. 1999) ("determining that this action should proceed as a class action for the determination of the issue of whether the [plan] qualified as a top hat plan…"). Resolution of

---

[3] A true and correct copy of said order is a part of the Plaintiff's Appendix. Whitehill Decl. at ¶ 9 and Ex. C.

this question, a question common to all class members, will be dispositive and will occupy most, if not all, of the litigants' efforts. Accordingly, commonality is established. *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993).

### 3. Typicality: Tolbert's claims as a WAP participant are typical of all class member's claims.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality, like commonality is not demanding" and is satisfied if Tolbert's claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theories. *Forbush*, 994 F.2d at 1106; *Boos v. AT&T, Inc.*, 252 F.R.D. 319, 323 (W.D. Tex. 2008). Typicality thus requires the minimal showing that the proposed representative is part of the class and possesses the same interests and suffers the same injury as the class members. *See Boos*, 252 F.R.D. at 323. In other words, it requires a demonstration that members of the class have the same or similar grievances as Tolbert. *Id.*

This case presents a paradigm of typicality in that all members of the putative class have claims based on the same basic legal theories: Namely, that the WAP is not a lawful "top-hat plan." Moreover, the remedy recognized by Defendants will be the same for all class members: termination of the plan and distribution of the vested balances to all class members. Pl. App., Ex. 5. There is no difference between the legal and remedial theories advanced by Tolbert and those that can be advanced on behalf of the class as a whole. Typicality is thereby established.

### 4. Adequacy: Tolbert and her counsel will adequately represent the class.

To determine whether a named plaintiff will fairly and adequately protect the class's interests, the Court must analyze whether the named plaintiff has a sufficient interest in, and nexus with, the class to ensure vigorous prosecution of the action. *See Boos*, 252 F.R.D. at 323.

"The adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of the absentees." *Horton v. Goose Creek I.S.D.*, 690 F.2d 470, 484 (5th Cir. 1982), *cert. denied*, 463 U.S. 1207 (1983).

Here, Tolbert was a nearly forty year employee with six years active participation in the WAP, nearly its entire existence, before she was fired. She has no conflicts with the class members that would prevent her from vigorously prosecuting the claims involved in this case.

### (a) **Tolbert and her counsel will vigorously prosecute this case for the class.**

The vigorous prosecution requirement refers mainly to the ability of Plaintiff's counsel to pursue the class action. *See Boos*, 252 F.R.D. at 323. Thus, so long as the class representative understands the obligations associated with being a class representative (and accepts them), she easily satisfies her part of the "vigorous prosecution" requirement.

Here, Plaintiff has expressed a willingness to participate in the full range of litigation procedures. Tolbert Decl. at ¶ 7. She recognizes the duties associated with being a class representative and has stated her commitment to vigorously pursue the recovery of the retirement benefits that should have been paid to her and all of the other WAP participants. Tolbert Decl. at ¶s 7-9. Then, too, she is ideally situated because she is no longer associated with Defendants (and therefore does not fear reprisal, retaliation or coercion). *Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1387 (5th Cir. 1983).

Tolbert has employed counsel with specialized knowledge and vast experience and able to prosecute this action vigorously to a successful conclusion. *See* Whitehill Decl. at ¶s 5-10; Bracken Decl. at ¶ 8. Plaintiff's counsel have no conflicts with any of the interests of the class

and have the resources to devote to prosecution of the class action, so that the due process rights of the class members are protected. *Id.*

### (b) Tolbert has no conflicts with the class.

The primary issue in determining whether a named class representative is adequate is whether any antagonism exists between the interests of the named plaintiff and those of the remainder of the class. *See Parker v. Bell Helicopter*, 78 F.R.D. 507, 512 (N.D. Tex. 1978). Thus, "as long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981). Plainly, the typicality and adequacy analyses for class certification converge in this area, and courts quickly find that satisfaction of the typicality requirement is tantamount to establishing a lack of conflict between the representative and the putative class. *Forbush*, 994 F.2d at 1106. That is the case here.

**C.  Rule 23(b): This case satisfies all three subdivisions of Rule 23(b).**

Rule 23(b) provides in pertinent part:

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

(1)  prosecuting separate actions by or against individual class members would create a risk of:

  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

  (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2)  the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

This case satisfies all of the requirements of these subsections of Rule 23(b).

### 1. This case satisfies Rule 23(b)(1).

This case should be certified under Rule 23(b)(1) because prosecution of separate actions by individual class members would risk inconsistent or varying adjudications or adjudications that would, as a practical matter, dispose of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(A), (B); *see also Boos*, 252 F.R.D. at 324-25 (certifying ERISA claims under (b)(1)(A), (B)); *Carrabba* (slip. op.) (certifying top hat issue under (b)(1)(A)); Pl. App., Ex. 5. This is so because answering whether the WAP is a "top-hat" plan is a core question that should be decided once and for all for all participants and all Defendants. The facts upon which these issues will be evaluated are identical for all WAP participants: The WAP is a lawful top hat plan or it isn't. There is no middle ground. It cannot be a valid top hat plan for some participants but an unlawful top hat plan for others. Certification under Rule 23(b)(1) is thus warranted.

### 2. This case satisfies Rule 23(b)(2).

This action satisfies Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class by denying WAP participants the full panoply of statutory ERISA protections for pension plan participants, thereby making appropriate final injunctive relief or corresponding declaratory relief regarding the class a whole. As a practical matter, (b)(2) certification is "appropriate where the relief sought is broad, because these actions involve 'uniform, group remedies.'" *Boos,* 252 F.R.D. at 325. As discussed above, each

member of the proposed class is or was a WAP participant and is legally entitled to his or her ERISA statutory rights and protections.

To justify their position, Defendants try to slip behind ERISA's top-hat exemption. This position has the same effect on both Tolbert and the Plaintiff Class—to deprive these individuals of their full panoply of ERISA statutory rights. Accordingly, permanent injunctive relief or corresponding declaratory relief regarding the class as a whole is appropriate. Therefore, this action satisfies Rule 23(b)(2). *See Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 20 (W.D.N.Y. 1995) (certifying Rule 23(b)(2) class where claims involved the defendants' alleged unilateral reduction of benefits in violation of contractual agreements and ERISA).

### 3. This case satisfies Rule 23(b)(3).

Alternatively, this action satisfies Rule 23(b)(3) because there are questions of law or fact common to the members of the class that predominate over any questions affecting only individual members. Under these circumstances, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). But, if the Court determines that this action fulfills the requirements of one or more of the other options of Rule 23(b), it should order that the suit be maintained as a class action under Rules 23(b)(1) and/or (b)(2), rather than under (b)(3) because "a mandatory class action is seen as preferable because there is no risk that individual members will opt out of the class and pursue separate litigation that might prejudice other class members or the defendant." 5 Moore's Federal Practice ¶ 23.40[2] (3d ed. 1997).

#### (a) Common questions of law and fact predominate.

Resolving a dispute on a representative basis is justified where, as here, common issues represent a significant aspect of the case and can be resolved for all members of the class in a single adjudication. *See Boos*, 252 F.R.D. at 325. In this case, a single issue predominates —

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING BRIEF**    Page 12

2196476v.3

namely, whether the WAP is a lawful "top hat" plan. In evaluating the predominance of common questions, the court asks not whether the common issues outnumber the individual issues, but "whether common or individual questions will be the object of most of the efforts of the litigants in the court." *Republic National Bank*, 68 F.R.D. at 215. For example, a judgment in favor of the Plaintiff Class finding that the WAP is not a lawful "top-hat" plan will resolve this suit for Tolbert and all class members. All that will remain will be fashioning a remedy appropriate to the claims. Even then, the remedy will be the same for all class members. This is conclusive evidence that common issues predominate.

### (b) A class action is superior for fair and efficient adjudication.

The four factors this Court is to consider in determining "superiority" are: (1) the interest of class members in individually controlling the prosecution of their own suit; (2) the extent and nature of litigation concerning the same issues already begun by or against members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Durrett*, 150 F.R.D. at 559. All four factors support certification of the proposed Plaintiff Class.

First, there has been no expressed interest in individually controlling prosecution of this action aside from two cases that were filed and settled prior to the filing of this lawsuit. Bracken Decl. at ¶s 6, 8 (Case No. 4:10-cv-00320, styled *Lewis E. Brazelton v. RBC Capital Markets Corp., et al.,* in the United States District Court for the Southern District of Texas, Houston Division; Case No. CCV08-06090 FMC (AGRx), styled *Steven Benhayon v Royal Bank of Canada, et al.,* in the United States District Court for the Central District of California). A class action is also appropriate because many individual participants do not have the resources to assert their legally protected rights under the WAP. *See Boos,* 252 F.R.D. at 326 ("this Court is

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING BRIEF**     Page 13

2196476v.3

skeptical that all of the potential class members would undertake the time and expense to bring individual ERISA benefit claims."). Second, these claims—in the interest of judicial economy—should be determined in one case in a central location, rather than on a piecemeal basis in district courts across the country. Third, this Court has experience with complex litigation, is well-suited to resolve these claims, and is accessible to both witnesses and the production of evidence. Finally, although the parties acknowledge, of course, that class action suits present challenges in management and prosecution for both the court and the parties, there is nothing in this case to indicate that it would be unduly or inordinately difficult, especially in light of the overarching legal issue.

# VI. CONCLUSION

The circumstances of this case require that it be certified as a class action. All the requested relief is sought on behalf of the class as a whole. The issue at the heart of Tolbert's First Amended Complaint—the unlawful maintenance of the WAP—involves and affects the entire class. To maintain a class action, Tolbert need only satisfy Rule 23(a) and at least one of Rule 23(b)'s subsection. She has met this burden. Certification is appropriate and should be granted.

Respectfully submitted,

By: */s/ William G. Whitehill*
    William G. Whitehill
    State Bar No. 21356550
    Joe B. Harrison
    State Bar No. 09115500
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone: 214.999.4633
Facsimile: 214.999.3633

ATTORNEY-IN-CHARGE FOR
PLAINTIFF, BRENDA TOLBERT

OF COUNSEL:

Geoffrey H. Bracken
State Bar No. 02809750
J. Palmer Hutcheson
State Bar No. 10335500
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Telephone: 713.276.5739
Facsimile: 713.276.6739

## CERTIFICATE OF CONFERENCE

I certify that on at least three occasions, including the April 13th Rule 23(f) conference, Plaintiff's counsel asked Defendants' counsel whether Defendants would agree to the relief Plaintiff seeks in this motion. Defendants do not agree to preceding with this case as a class action.

*/s/ William G. Whitehill*
William G. Whitehill

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2011, a true and correct copy of this document has been forwarded to all counsel of record through the Court's CM/ECF system and by hand delivery to Ms. Gates on this 27th day of April, 2011.

Alison J. Gates
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suites 4200
Houston, Texas 77002

Christopher J. Boran
Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601

*/s/ Geoffrey H. Bracken*
Geoffrey H. Bracken
