IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-00107 |
| | § | |
| RBC CAPITAL MARKETS | § | |
| CORPORATION N/K/A RBC CAPITAL | § | |
| MARKETS, LLC; RBC CENTURA | § | |
| BANK N/K/A RBC BANK (USA); | § | |
| RBC U. S. INSURANCE SERVICES, INC. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND BRIEF

William G. Whitehill
State Bar No. 21356550
Joe B. Harrison
State Bar No. 09115500
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone: 214.999.4633
Facsimile: 214.999.3633

ATTORNEY-IN-CHARGE FOR
PLAINTIFF, BRENDA TOLBERT

OF COUNSEL:

Geoffrey H. Bracken
State Bar No. 02809750
J. Palmer Hutcheson
State Bar No. 10335500
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Telephone: 713.276.5739
Facsimile: 713.276.6739

# TABLE OF CONTENTS

I.      The Issue ....................................................................................................1

II.     Nature Of The Case And Procedural Background.................................1

III.    In Sum.......................................................................................................2

IV.     Factual Background ................................................................................3

V.      Argument and Authorities......................................................................5

        A.      Applicable Standards. ..................................................................5

                (1).    Courts rarely grant 12(b)(6) motions. ..........................5

                (2).    Exhaustion is an affirmative defense that Tolbert need not negate
                        in her FAC...................................................................6

        B.      Two distinct ERISA enforcement provisions are relevant to the
                Defendants' motion.....................................................................6

        C.      The exhaustion defense is inapplicable to Tolbert's declaratory judgment
                and equitable relief claims (Counts 1 and 2). ...........................7

                (1).    The exhaustion defense is inapplicable to illegal plans. ............................7

                (2).    Tolbert claims that the WAP is an illegal top hat plan. ............................9

        D.      The exhaustion defense does not apply to Tolbert's breach of fiduciary
                duty claims. ...............................................................................10

        E.      Defendants distort Tolbert's claims to make them something that they are
                not. ..............................................................................................11

        F.      That Tolbert may ultimately receive monetary compensation does not
                convert her § 1132(a)(3) claim for equitable relief into a § 1132(a)(1)(B)
                claim for benefits under the WAP's terms.................................13

        G.      The exhaustion defense's underlying rationale does not exist in this case............15

                (1).    Tolbert does not complain about any misconduct by the WAP, the
                        WAP is not a party, and the WAP is incapable of providing any
                        relief. .........................................................................15

                (2).    The prudential concerns underlying the exhaustion defense do not
                        exist here. ..................................................................16

DALLAS 2223916

H.    Defendants implicitly concede that Tolbert's alleged facts establish Defendants' hostility to and bias against her sufficient to meet a futility requirement. ..................................................................................................17

(1).    Applicable standards. .........................................................................17

(2).    Defendants are hostile to and biased against Tolbert. ...............................18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
--- U.S. ---, 129 S.Ct. 1937 (2009) .............................................................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................................5

*Bourgeois v. The Pension Plan for the Employees of Sante Fe Int'l Corps.,*
215 F.3d 475 (5th Cir. 2000) ..................................................................6, 17, 19

*Calhoun v. Hargrove,*
312 F.3d 730 (5th Cir. 2002) .......................................................................................5

*Carrabba v. Randalls Food Markets, Inc.,*
145 F.Supp.2d 763 (N.D. Tex. 2000), *aff'd,* 252 F.3d 721 (5th Cir.), *cert. denied,* 534 U.S. 995 (2001) ...............................................................................................13, 14

*CIGNA Corp., v. Amara,*
--- US---, 2011 WL 1832828 ..............................................................7, 13, 14

*Coop. Benefit Adm'rs, Inc. v. Ogden,*
367 F.3d 323 (5th Cir. 2004) .......................................................................................6

*Costantino v. TRW, Inc.,*
13 F.3d 969 (6th Cir. 1994) ..............................................................................10, 16

*Crowell v. Shell Oil Co.,*
481 F.Supp.2d 797 (S.D. Tex. 2007) .........................................................................8

*Cuvillier v. Taylor,*
503 F.3d 397 (5th Cir. 2007) .......................................................................................5

DALLAS 2223916

*Denton v. First Nat'l Bank,*
   765 F.2d 1295 (5th Cir. 1985) ...............................................................8, 16

*DePace v. Matsushita Elec. Corp. of Am.,*
   257 F.Supp.2d 543 (E.D.N.Y. 2003) ..................................................................8

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.,*
   No. 10-CV-1341, 2011 WL 899296 (E.D.N.Y. March 16, 2011) ...........................8

*Durand v. Hanover Ins. Group, Inc.,*
   560 F.3d 436 (6th Cir. 2008) .................................................................7, 10, 16

*Gosselink v. American Telephone & Telegraph, Inc.,*
   No. Civ. A. H-97-3854, 1999 WL 33737340 (S.D. Tex. Aug. 9, 1999) ................17

*Harris v. Trustmark Nat'l Bank,*
   287 Fed. Appx. 283 (5th Cir. 2008).....................................................................8

*Harrow v. Prudential Ins. Co. of Am.,*
   279 F.3d 244 (3d Cir. 2002)................................................................................8

*Hessbrook v. Lennon,*
   777 F.2d 999 (5th Cir. 1985) .............................................................................17

*Lormand v. U.S. Unwired, Inc.,*
   565 F.3d 228 (5th Cir. 2009) ...............................................................................5

*McGowin v. Manpower Int'l, Inc.,*
   363 F.3d 556 (5th Cir. 2004) ...............................................................................8

*North Cypress Medical Center Operating Co. v. Cigna Healthcare,*
   No. 4:09-cv-2556, 2011 WL 819490 (S.D. Tex. March 2, 2011) ......................6, 17

*Porter v. Atchison, Topeka, and Sante Fe Railway Co.,*
   768 F.Supp. 571 (N.D. Tex. 1991) .......................................................................6

*Radford v. Gen'l Dynamic Corp.,*
   151 F.3d 396 (5th Cir. 1998) ...............................................................................8

*Simmons v. Willcox,*
   911 F.2d 1077 (5th Cir. 1990) .............................................................................8

*Thompson v. Retirement Plan for Employers of S.C. Johnson & Sons, Inc.,*
   No. 07-CV-1047, 2008 WL 4964714 .............................................................8, 17

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996)....................................................................................13, 14

DALLAS 2223916

**STATUTES**

29 U.S.C. § 1051(2) ................................................................................................15

29 U.S.C. § 1081(a)(3) ...........................................................................................15

29 U.S.C. § 1101(a)(1) ...........................................................................................15

29 U.S.C. § 1132(a)(1)(B) ...............................................1, 2, 3, 4, 5, 6, 7, 8, 13, 14

29 U.S.C. § 1132(a)(3) ....................................................................................3, 7, 13

29 U.S.C. § 1132(a)(3) ..............................................................................................7

29 U.S.C. § 1140 ......................................................................................................15

**OTHER AUTHORITIES**

FED. R. CIV. P. 12(b)(6) ........................................................................................5, 6

iv

# I. THE ISSUE

The exhaustion of administrative remedies defense to a claim for benefits due under the terms of an ERISA plan is inapplicable to claims for "appropriate equitable relief" under ERISA where the plan itself is illegal. Plaintiff's First Amended Complaint (FAC) disavows a claim for benefits due under the plan's terms and rests solely on the basis that the plan at issue is an illegal top hat plan. Is Defendants' exhaustion defense legally relevant?

# II. NATURE OF THE CASE AND PROCEDURAL BACKGROUND

On January 11, 2011, Tolbert sued Defendants under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). On April 7, 2011, she filed her FAC based on the sole point that Defendants' Wealth Accumulation Plan ("WAP") is not a lawful top hat plan under ERISA. The FAC does not seek (i) benefits due her under the WAP, (ii) an interpretation of the WAP, or (iii) any relief from Defendants' failure to follow the WAP. Tolbert expressly disavowed any claim under § 1132(a)(1)(B) for benefits due under the WAP's terms. The WAP is not even a party to this lawsuit.

Instead, the FAC seeks a declaration that the WAP is not a valid top hat plan and requests appropriate equitable relief under § 1132(a)(3) flowing from that fact. Tolbert also alleges that Defendants breached their fiduciary duties by, among other things, failing to create the required separate trust to hold plan assets for WAP participants. She additionally seeks to recover her attorneys fees.

Tolbert filed her class certification motion on April 27, 2011. On May 12, 2011, Defendants filed their 12(b)(6) motion alleging that she failed to exhaust the WAP's administrative remedies.

The parties have exchanged their initial disclosures and made preliminary document exchanges. Defendants deposed Tolbert on May 25, 2011 for six-and-a-half hours.

### III.     IN SUM

Tolbert's FAC contains claims seeking only to protect statutory rights Congress provided for in ERISA and to recover appropriate equitable relief that she (and the class) are entitled to because the retirement plan at issue is an illegal top hat plan.  Notwithstanding Defendants' relentless efforts to transform her actual claims into a claim for benefits due under the WAP's terms, Tolbert's FAC rejects such a claim.  Nor does she ask the Court to interpret the WAP or to decide whether Defendants complied with the WAP.  Instead, she seeks a declaration from this Court that the WAP is not a valid top hat plan, she seeks redress for Defendants' resulting fiduciary breaches, and she requests appropriate equitable relief under § 1132(a)(3) to force Defendants' compliance with ERISA.

Defendants moved to dismiss the FAC rather than answer Tolbert's detailed and damning allegations against them.  Defendants ignore the undisputed fact that there are no benefits due Tolbert under the WAP's terms (FAC ¶ 112) and instead ask the Court to dismiss a mythical claim that exists nowhere in the FAC—a claim under 29 U.S.C. § 1132(a)(1)(B) for benefits due under the WAP's terms.  To that end, Defendants' motion fails to acknowledge the fundamental issue in this case, which is stated throughout the FAC—"whether at all relevant times the WAP has been a lawful top hat plan."  FAC ¶¶ 33, 115; *see id.*, ¶¶ 27-34, 111-112, 116.

The Court should deny Defendants' motion based solely on an alleged exhaustion defense for the simple reason that such defense does not apply where, as here, the claim is that the plan itself is illegal instead of being a claim for benefits due under the plan's terms.

The Court should also deny Defendants' motion because:

1.      The exhaustion defense does not apply to claims that Defendants breached their fiduciary duties by, among other things,  failing to maintain and fund a separate trust, forfeiting vested benefits.

2.      Defendants misstate the nature of Tolbert's claims in a failed effort to subject them to an exhaustion defense.

3.      That Tolbert may ultimately receive monetary compensation does not convert her claim for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) into a claim for benefits due under the WAP's terms under 29 U.S.C. § 1132(a)(1)(B).

4.      Requiring administrative exhaustion in this case would not further the defense's underlying purposes and rationale, because (1) Tolbert does not complain about any conduct by the WAP itself; (2) the WAP is incapable of providing any relief; (3) the WAP is not a party; and (4) because whether the WAP is a valid top hat plan is a legal question for the Court based on a *de novo* review.

5.      Tolbert nonetheless, out of an abundance of caution, plead facts showing that she pursued an administrative claim and that Defendants' hostility to and bias against her rendered her efforts futile.  Defendants wholly ignored her factual allegations and offered no suggestion, let alone argument, that such facts would not establish futility if she were required to do so.

## IV.      FACTUAL BACKGROUND

According to the FAC, Defendants created the WAP as an alleged "top hat" plan.  FAC, ¶¶ 19-21.  A top hat plan is an unfunded plan that is maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.[1]  Tolbert was (and under ERISA still is) a WAP participant.  *Id.* ¶ 22.  She never served in a managerial capacity, never had authority to hire or fire anybody, never was in a position to negotiate a change to the WAP, and never was highly compensated compared to the financial consultants or brokers in the office who made much more money than she ever did.  *Id.*

---

[1] Top hat plans are excluded from certain ERISA requirements, including vesting, accrual, and funding requirements, because Congress considers "top-level" management, unlike most employees, capable of protecting their own pension expectations.  *See* FAC ¶¶ 45-66 and the authorities cited therein.

¶ 24.  In fact, Defendants maintained the WAP as a large, pre-packaged retirement plan in which thousands of different employees, covering an extraordinarily broad range of jobs and compensation, participated.  *Id.* ¶ 67.

Tolbert worked as a secretary and administrative assistant for Defendants.  *Id.* ¶ 24.  For approximately thirty years, she worked directly for one broker and they were an inseparable team.  *Id.* ¶ 114 n. 39.  As discussed throughout that paragraph, Defendants started pressuring Tolbert's boss to retire and turn his successful book of business over to younger brokers. Tolbert's boss disagreed with them.  Thus, Defendants changed the way that Tolbert and her boss did business by making their long-time approved practices no longer acceptable. Ultimately, Defendants placed Tolbert's boss under a "heightened supervisory memorandum."

In early August 2009, Tolbert made a non-regulatory, non-monetary technical error that allegedly violated her boss's technical supervisory memo.  Tolbert corrected her mistake and notified the appropriate persons before the market opened for business.  There was no impact to the customer or Defendants.  Nevertheless, Defendants fired her the next day based on the apparent belief that her departure would cause her boss to retire as Defendants had been urging him to do for a long time.  Tolbert's boss left Defendants and began working for a competitor, where Tolbert joined him.  The vast majority of his customers soon followed them there.

Tolbert made a written request (and several calls) to Defendants for her vested WAP benefits in installments as she had previously designated.  After approximately five months of ignoring her requests, Defendants finally told Tolbert that her employer contributions and related earnings thereon had been forfeited.

Tolbert sued Defendants claiming that the WAP is an illegal top hat plan. In at least two prior cases, plaintiffs have sued Defendants for the same reason. *Id.* ¶ 113. Each time, Defendants adamantly defended their conduct alleging that the WAP is a lawful plan. *Id.*

## V.    ARGUMENT AND AUTHORITIES

### A.    Applicable Standards.

#### (1).    Courts rarely grant 12(b)(6) motions.

A 12(b)(6) motion challenges whether a complaint fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009). In ruling on a 12(b)(6) motion, the court must accept well-plead facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). "A complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) quoting *Twombly*, 550 U.S. at 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* citing *Twombly*, 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

Oddly, Defendants do not challenge whether the FAC adequately pleads facts supporting Tolbert's actual claims.

**(2).** **Exhaustion is an affirmative defense that Tolbert need not negate in her FAC.**

Generally, "claimants seeking benefits due *under an ERISA plan's terms* must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004) (emphasis added) quoting *Bourgeois v. The Pension Plan for the Employees of Sante Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). However, "The decision as to whether to require a claimant to exhaust administrative remedies prior to bringing suit is a matter within the trial court's discretion." *Porter v. Atchinson, Topeka, and Sante Fe Railway Co.*, 768 F.Supp. 571, 575 (N.D. Tex. 1991).

Additionally, exhaustion of administrative remedies is an affirmative defense. *North Cypress Medical Center Operating Co. v. Cigna Healthcare*, No. 4:09-cv-2556, 2011 WL 819490, at *7 (S.D. Tex. March 2, 2011). "A complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id.* (dismissal for failure to allege exhaustion of administrative remedies is not appropriate on a motion to dismiss under 12(b)(6)), citing *Hall v. Hodgkins*, 305 Fed. Appx. 224, 228 n. 1 (5th Cir. 2008). Thus, Tolbert was not required to negate the exhaustion defense in the FAC.

Nonetheless, the FAC's allegations show that the defense is inapplicable in this case.

**B.**    **Two distinct ERISA enforcement provisions are relevant to the Defendants' motion.**

By way of background, §§ 1132(a)(1)(B) and 1132(a)(3) are two distinct ERISA remedy provisions that bear on the resolution of Defendants' motion to dismiss. Section 1132(a)(1)(B) provides that: "A civil action may be brought by a participant or beneficiary—to recover benefits due him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B)

(emphasis added).  The obvious emphasis is relief based on the plan's actual terms.  Relief under § 1132(a)(1)(B) is thus akin to a breach of contract claim based on the plan's terms.  *CIGNA Corp., v. Amara*, --- US---, 2011 WL 1832828, at * 10 (U.S. May 16, 2011).  That statute says nothing about providing a remedy for maintaining an illegal top hat plan.  Because Tolbert is not entitled to any additional benefits under the WAP's terms, she is not entitled to and does not seek any relief under this subsection.  *See id.* * at 11.

Conversely, § 1132(a)(3) provides that:  "A civil action may be brought—by a participant … (A) to enjoin any act or practice which violates *any provision of [ERISA]* or the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce *any provisions of [ERISA]* or the terms of the plan."  29 U.S.C. § 1132(a)(3) (emphasis added).  The expansive remedies available under § 1132(a)(3) include traditional equitable remedies that existed when courts of law and equity merged.  *See CIGNA Corp.*, 2011 WL 1832828, at * 10. Tolbert invokes the Court's equitable powers under § 1132(a)(3) to redress Defendants' ERISA violations (maintaining an illegal top hat plan, failing to create and fund the required separate trust for participants' benefits, illegally forfeiting vested accrued benefits, etc.).

Tolbert seeks relief under the latter and not the former.  As discussed below, the difference is important and the exhaustion defense does not apply to her claims.[2]

## C.    The exhaustion defense is inapplicable to Tolbert's declaratory judgment and equitable relief claims (Counts 1 and 2).

### (1).    The exhaustion defense is inapplicable to illegal plans.

FAC Count One seeks a declaratory judgment that the WAP is an illegal top hat plan that contravenes ERISA.  Count Two seeks appropriate equitable relief to remedy the WAP's illegality.  The exhaustion defense does not apply when a claim is directed to the plan's legality.

---

[2] Relief under 29 U.S.C. § 1132(a)(2) is also at issue in this case.

*See Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 439-42 (6th Cir. 2008) (exhaustion not required to challenge the legality of a plan's methodology); *Thompson v. Retirement Plan for Employers of S.C. Johnson & Sons, Inc.*, No. 07-CV-1047, 2008 WL 4964714, at * 5 (E.D. Wis. Nov. 14, 2008) (plaintiff class alleging that the plan terms violated ERISA not required to exhaust administrative remedies); *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, No. 10-CV-1341, 2011 WL 899296, at *29 (E.D.N.Y. March 16, 2011) (exhaustion not required when claims are statutory based rather than plan based, such as a violation of ERISA that arises separate and apart from the plan's terms); *DePace v. Matsushita Elec. Corp. of Am.*, 257 F.Supp.2d 543, 558-59 (E.D.N.Y. 2003) ("the issue is *not* an alleged violation of the terms of a pension plan, but an alleged violation of ERISA itself.").

Here, most of the cases Defendants rely upon involve instances where the plaintiff sued specifically under § 1132(a)(1)(B) to recover benefits due under the terms of those plans. *See* Defs. Mot. pp 7-9, citing *Denton v. First Nat'l Bank*, 765 F.2d 1295 (5th Cir. 1985); *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556 (5th Cir. 2004); *Harris v. Trustmark Nat'l Bank*, 287 Fed. Appx. 283 (5th Cir. 2008); *Simmons v. Willcox*, 911 F.2d 1077 (5th Cir. 1990).

In Defendants' other cases, the plaintiffs attempted to allege fiduciary breaches, but factually their claims were that the plans failed to pay them benefits due under the respective plans. The courts thus analyzed the claims as § 1132(a)(1)(B) claims for benefits due under the plans' terms. *See* Defs. Mot. pp. 8-9, citing *Radford v. Gen'l Dynamic Corp.*, 151 F.3d 396, 400 (5th Cir. 1998); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244 (3d Cir. 2002); *McGowin*, 363 F.3d 556; *Simmons*, 911 F.2d 1077.

Furthermore, Defendants' reliance on *Crowell v. Shell Oil Co.*, 481 F.Supp.2d 797 (S.D. Tex. 2007) as a purported example of a court applying the exhaustion defense in a top hat case is

misplaced, because the issue there was whether the plaintiff had received all of the benefits to which he was entitled under a plan that happened to be a top hat plan—not whether that plan was a lawful top hat plan.

Defendants cited **no** cases in which a court applied the exhaustion defense where the plaintiffs claim was for equitable relief under § 1132(a)(3) arising from a defendant's violation of ERISA's statutory duties.

### (2). Tolbert claims that the WAP is an illegal top hat plan.

Defendants argue that Tolbert is required to exhaust the WAP's administrative process for "claims for benefits."[3]  This lawsuit, however, is not a typical ERISA benefits denial case like Defendants try to portray it and like the cases they cite.  (*See* Defs. Mot. at 6-12).  Unlike those cases, Tolbert is not seeking benefits due under the WAP's terms.  She does not challenge Defendants' calculation of benefits under the WAP's terms, their interpretation of the WAP, or their factual determination that she was (allegedly) fired for cause.  In fact, she agrees that she is not entitled to any additional benefits under the WAP's terms and Defendants' decision to fire her for cause (regardless of whether that decision was justified).  Instead, Tolbert challenges the legality of the WAP's clause that permits the forfeiture of vested benefits if the participant is fired for cause.  That clause is legal if the WAP is a lawful top hat plan, and it is illegal if the WAP is not a valid top hat plan.

Tolbert's primary claim, which Defendants ignore, seeks a declaratory judgment that "the WAP has not been a lawful top hat plan."  FAC ¶ 115.  The remaining claims all stem from that basic point.  *See* FAC ¶¶ 116-121.  As stated in the FAC, "the heart of her claim is whether the WAP is an illegal ERISA pension plan."  FAC ¶ 30.

---

[3] The Plan's administrative procedure is for claimants who are "in disagreement with any determination that has been made for payment under this Plan, . . ."  WAP, § 7.2.

Tolbert's case is similar to *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 439-42 (6th Cir. 2008). There, the plaintiff brought a putative class action against her employer alleging that its methodology for calculating lump-sum distributions under a defined-benefit pension plan violated ERISA. The Sixth Circuit held that the plaintiff's claim was not subject to ERISA's administrative exhaustion requirement since her claim was directed to the plan's legality. *Id.* at 443. The court held:

> We routinely enforce the exhaustion requirement when an ERISA plaintiff contends that his benefits were improperly calculated under the terms of a plan. [citation omitted]. ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator in the first instance. Administrators, not courts, are the experts in plan administration.
>
> But the same is not true of an across-the-board challenge to the *legality* of a plan's methodology. In those cases, the claimant typically concedes that her benefit was properly calculated under the terms of the plan as written, but argues that the plan itself is illegal in some respect. [citation omitted]. And *that* question – legality – is one within the expertise of the courts. Sending such a claimant back to the administrative process, to recalculate a benefit she concedes was already properly calculated under the terms of the plan as written, misses the point of the dispute. In that situation, exhaustion wastes resources rather than conserves them. Consequently, we have held that, in an ERISA case, when the plaintiff's "suit [i]s directed to the *legality* of [a plan], not to a mere *interpretation* of it[,]" exhaustion of the plan's administrative remedies would be futile. *Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994) (emphasis in original).

*Id.* at 439-40. Thus, "no amount of administrative review would alter the calculation of benefits under the current terms of the plan."

Accordingly, Defendants miss the point, and their motion is meritless.

**D.      The exhaustion defense does not apply to Tolbert's breach of fiduciary duty claims.**

As Defendants concede (Defs. Mot. at 8), the exhaustion defense also does not apply to breach of fiduciary duty claims. *Milofsky v. American Airlines, Inc.* 442 F.3d 311, 313 (5th Cir. 2006)(en banc) (district court erred in holding that plaintiffs' breach of fiduciary duty claims

were disguised benefit denial claims and subject to exhaustion defense).  Defendants owed Tolbert the fiduciary duty to ignore plan terms that violate ERISA.  29 U.S.C. § 1104(D).

Here, the FAC alleges that Defendants violated their fiduciary duties by failing to create and fund the required separate trust, by complying with ERISA's vesting requirements, and illegally forfeiting vested benefits, among others. notwithstanding the WAP's terms stating that the WAP is an unfunded top hat plan and that vested benefits may be forfeited.  FAC ¶¶ 103-06, 109, 112, 116-19.  Notwithstanding Defendants' contrary protestations (Defs. Mot. at 10-12), failure to create, fund, and maintain the statutorily required trust in which the promised retirement benefits are secured form Defendants' creditors is unquestionably a fiduciary breach and an injury to the plan.  29 U.S.C. § 1104(D).  Defendants did not dispute this point.

Tolbert requests injunctive and other equitable relief, among other things, to require Defendants to create and fund a separate trust holding plan assets for the participants' benefit as ERISA requires.  FAC ¶¶ 10(b) & (d), 32, 34, 109, 116-120, and "Prayer for Relief."  Failure to segregate assets that are to be held in trust from non-trust assets when those steps are required is undoubtedly a basic form of fiduciary breach.  *See, e.g, Eaton v. Husted,* 172 S.W.2d 493, 498-99 (Tex. 1943); 29 U.S.C. § 1104(D).  Thus, Defendants' suggestion that Tolbert does not allege a viable breach of fiduciary duty claim (Defs. Mot. at 10) is wrong.  *See* 29 U.S.C. § 1132(a)(2). Moreover, it is beyond debate that Tolbert can assert a claim for appropriate equitable relief under 29 U.S.C. 1132(a)(3) to remedy Defendants' fiduciary breaches.  *E.g., Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996).

The exhaustion defense is, therefore, inapplicable to Tolbert's fiduciary breach claims.

**E.**     **Defendants distort Tolbert's claims to make them something that they are not.**

Implicitly recognizing that the exhaustion defense does not apply to a claim under ERISA to rectify their statutory violations and fiduciary breaches, Defendants repeatedly distort

Tolbert's actual claims.  For example, Defendants' motion says:  "no less than a half-dozen paragraphs in the Amended Complaint expressly state that this case is being brought to recover WAP benefits.  *See, e.g.,* Am. Cmpl. ¶¶ 10(c), 11, 23, 27, 28 and 117,"  Def. Mot., p. 9.  In truth, however, the FAC alleges that Defendants illegally failed to comply with ERISA's statutory requirements based on the false premise that the WAP's putative top hat status exempts them from having to do so.

Specifically, ¶ 10(c) refers to Defendants' violation of ERISA's statutory protections by forfeiting vested benefits—conduct that violates ERISA, not the WAP's terms.

Similarly, the misconduct to which ¶ 11 refers is Defendants' statutory ERISA violations instead of any breaches of the WAP's terms.

Likewise, ¶ 23 complains of illegal conduct that violates ERISA, because the WAP is not a valid top hat plan.

Furthermore, ¶¶ 27 and 28 are the lead paragraphs to an entire section captioned, "The Fundamental Issue."  That section is dedicated to stating clearly that Tolbert is seeking to enforce her ERISA rights instead of seeking to recover benefits due under the WAP's terms, which if legal would justify Defendants' conduct.  That Defendants mistook these allegations as seeking benefits due under the WAP's terms is a mystery.

Finally, Defendants erroneously cite FAC ¶ 117 several times for their theory that Tolbert's claim for equitable relief is really a claim for benefits "under the terms of the WAP." (Defs. Mot., pp. 3, 6, 8-10, 12).  Tolbert's claim for equitable relief is, however, as follows:

### Claim for Equitable Relief Because The WAP Is Not A Lawful Top Hat Plan

116.    Based on the foregoing facts, because the WAP was not a lawful top hat plan, it was subject to all of ERISA's requirements, including without limitation its funding, vesting, accrual, and reporting requirements.

117.    Accordingly, pursuant to 29 U.S.C. § 1132(a)(3), Tolbert, for herself and on behalf of the Plaintiff Class, seeks appropriate equitable relief requiring Defendants to, among other things, establish, fund, and maintain a separate trust to hold and protect all vested accrued WAP benefits, to restore any illegally forfeited benefits, to provide WAP participants with the required reporting information, to pay all appropriate penalties for not complying with ERISA, and for such other relief as the Court finds proper to fully protect Tolbert's and the Plaintiff Class's rights.

FAC ¶¶ 116 and 117.  Nowhere here, or elsewhere in the FAC, does Tolbert say she is seeking

benefits "under the terms of the WAP."

## F.    That Tolbert may ultimately receive monetary compensation does not convert her § 1132(a)(3) claim for equitable relief into a § 1132(a)(1)(B) claim for benefits under the WAP's terms.

The unstable foundation on which Defendants' motion sits is that Tolbert is necessarily

seeking to recover benefits due under the WAP's terms under § 1132(a)(1)(B) (*see* Defs. Mot at

10-12), to which the exhaustion defense could apply, instead of being what she actually asserts—

a claim for equitable relief under §1132(a)(3), to which exhaustion does not apply.  As discussed

below, however, Defendants' premise is contrary to at least two U.S. Supreme Court cases and

holdings in the Fifth Circuit and the Northern District of Texas.  *See  CIGNA Corp., v. Amara*, ---US---, 2011 WL 1832828, at * 13 (U.S. May 16, 2011); *Varity Corp. v. Howe*, 516 U.S. 489,

510 (1996); *Carraba v. Randalls Food Markets, Inc.*, 145 F.Supp.2d 763, 770 (N.D. Tex.

2000), *aff'd*, 252 F.3d 721 (5th Cir.) (per curium, based on the district court's "conscientious,

well-reasoned opinions, which will be published"), *cert. denied,* 534 U.S. 995 (2001).

In *CIGNA*, the Supreme Court this month held that §1132(a)(3) permits a broad range of

equitable remedies for statutory ERISA violations, including "the power to provide monetary

'compensation' for a loss resulting from a [plan administrator's] breach of duty, or to prevent the

trustee's unjust enrichment," where there are no benefits due under the plan's terms.  *CIGNA*

further rejected Defendants' premise by holding that receipt of monetary compensation under a

plan reformed to comply with ERISA does not convert that relief to an award of benefits due under the plans' terms pursuant § 1132(a)(1)(B). *See* 2011 WL 1832828 * 13. According to the Supreme Court, the language of § 1132(a)(1)(B) "speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *Id.* at 10. As such, a § 1132(a)(1)(B) claim for benefits due under the terms of a plan is akin to a breach of contract claim, as opposed to a claim for traditional equitable relief. *Id.*

In *Varity*, the Supreme Court held that § 1132(a)(3) supports equitable relief where the participants are not entitled to any relief under the terms of the plan. 516 U.S. at 515.

*Carrabba* is very similar to the present case and reached the same result as the Supreme Court did in *CIGNA* and *Varity*. There, the defendant maintained an illegal top hat plan. After holding that the defendant illegally forfeited some or all of the participants' vested accrued benefits, the district court fashioned an equitable remedy by which the class received monetary compensation representing the benefits the court found they would have received had the defendant maintained a lawful ERISA retirement plan. *See* 145 F.Supp.2d at 770-71. In so doing, the courts held that the class's remedy was exclusively appropriate equitable relief under § 1132(a)(3), because under the plan's illegal forfeiture clause, the class was not entitled to any further benefits under the plan's terms. *Id.* Consistent with the Supreme Court's holding in *CIGNA*, the *Carrabba* courts rejected the idea that the plaintiffs were entitled to any relief under the terms of the plan or § 1132(a)(1)(B). *Id.* The courts' holdings in the above cases directly refute Defendants' notion (Defs. Mot. at 11-12) that Tolbert is not entitled to relief under 29 U.S.C. § 1132(a)(3).

The *CIGNA, Varity,* and *Carrabba* holdings and rationale apply equally well here. Although Tolbert received all of the benefits she is entitled to under the WAP's terms, she is

entitled to receive what ultimately will result in monetary compensation as an equitable remedy when this Court exercises its equitable powers to force Defendants' compliance with ERISA.[4]

**G.    The exhaustion defense's underlying rationale does not exist in this case.**

**(1).    Tolbert does not complain about any misconduct by the WAP, the WAP is not a party, and the WAP is incapable of providing any relief.**

In *Chailand v. Brown & Root, Inc.*, the Fifth Circuit held that the exhaustion requirement does not apply where a participant sues her employer for interference with benefits under 29 U.S.C. § 1140.  45 F.3d 947, 950-51 (5th Cir. 1995).  In reaching that result, the court held that:

> Our cases applying this common law exhaustion requirement presuppose that the grievance upon which the lawsuit is based arises from some action of a plan covered by ERISA, and that the plan is capable of providing the relief sought by the plaintiff.

*Id.* at 950.  The court further held that, due to the prudential concerns underlying the defense, the exhaustion defense is personal to only the plan.  *Id.*

*Chailand* is analogous to the present case for three reasons:  One, Tolbert does not complain about any conduct by the WAP.  It was Defendants, not the WAP, that maintained an illegal top hat plan that violated ERISA.  It was Defendants, not the WAP, that failed to create and fund a separate trust to hold plan assets.  FAC ¶¶ 103-106.

Two, the WAP cannot provide any relief in this case.  Top hat plans must be unfunded. 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1);  *see* FAC ¶ 46.  It is undisputed that the WAP is an unfunded plan.  FAC ¶ 105, Defs. Mot. at 13.  The WAP itself thus cannot provide the requested relief.  It cannot create or fund the separate trust.  It has no assets at all.

---

[4] Defendants point to a statement in Tolbert's class certification motion that she will vigorously pursue [under § 1132(a)(3)] the recovery of retirement benefits that are owed to her and to class members as some form of alleged admission that Tolbert is asserting a § 1132(a)(1)(B) claim to recover benefits due her under the WAP's terms. Defs. Mot. at 9.  That premise lacks merit under the *CIGNA, Varity,* and *Carrabba* holdings discussed in the text. Moreover, injunctive and other equitable relief requiring Defendants to fund a trust to protect those benefits (or to distribute their cash equivalent today) will protect those participants' benefits.

Three, for reasons one and two, the WAP is not a party to this case. Defendants' motion does not argue that the WAP is a proper, let alone a necessary, party to this case, and thus implicitly concedes that the WAP is properly not a party. Furthermore, Defendants did not suggest in the Joint Discovery/Case Management Plan the parties filed on April 21, 2011 that there is the slightest chance that the WAP should be a party.

Accordingly, the personal defense that could belong to the WAP, if Tolbert were asserting a claim against the WAP for benefits due under the WAP's terms, is inapplicable here.

### (2). The prudential concerns underlying the exhaustion defense do not exist here.

Courts may disregard the exhaustion requirement, if the purposes of administrative exhaustion are not being furthered. *See Chailand*, 45 F.3d at 950-51; *Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994) ("If the purposes of administrative exhaustion are not being furthered then there is 'no sense in exhausting administrative remedies.'"); *see also Durand*, 560 F.3d at 440 (when the claim is that the plan is illegal, "[a]llowing the administrative process to go forward would . . . do little to vindicate the purposes of the exhaustion requirement."). The primary purposes of exhaustion are to (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*. *Denton v. First Nat'l Bank at Waco, Tx*, 765 F.2d 1295, 1300 (5th Cir. 1985).

The purposes for exhaustion do not apply here because the issues presented in this case do not require the Court to review the administrative committee's interpretation of the WAP or its factual determination as to whether Tolbert is entitled to additional benefits under the WAP's terms. Thus, there is no deference to be given to the administrative committee's presumed expertise regarding matters such as those. There is no deference to an arbitrary and capricious

standard of review, and the Court is not restricted to an administrative record. *See Thompson v. Retirment Plan for Employees of S.C. Johnson & Sons, Inc.*, 2008 WL 4964714, at *6 (E.D. Wis. 2008) (not reported) ("an administrative record is of little use in the instant case" where the claim is that the plan's terms violate ERISA). Defendants have no discretion to wrongly decide whether they complied with ERISA, and if so, whether their failure to do so breached their fiduciary duties. That is a decision for this Court. *See Durand*, 560 F.3d at 440 (the employer "has neither discretion to determine the legality of its own Plan nor special expertise in interpreting the statute."); Scheduling and Docket Control Order at § 9 [Dkt. #40]; part V(C)(1) above.

**H. Defendants implicitly concede that Tolbert's alleged facts establish Defendants' hostility to and bias against her sufficient to meet a futility requirement.**

    **(1). Applicable standards.**

Exceptions to the exhaustion requirement apply "where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be a patently futile course of action." *North Cypress Medical Center Operating Co.*, 2011 WL 819490, at * 8; citing *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985). Futility may only be shown when the plan administrator is hostile or biased against the claimant. *Bourgeois v. The Pension Plan for the Employees of Sante Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).

Defendants contend that Tolbert must show they harbored "hostility or bias" against her to establish the futility exception. (Defs. Mot., pp. 12-15). Although failure to exhaust administrative remedies is an affirmative defense and Tolbert was not required to plead facts showing that it would have been futile for her to complete the administrative process, she in fact

plead facts showing "hostility or bias" to her that Defendants never even mention, much less try to refute, in their motion to dismiss.

### (2). Defendants are hostile to and biased against Tolbert.

As described in detail in the FAC, Defendants fired Tolbert. FAC, ¶ 114 n. 39. As further plead in footnote 39, she thereafter requested in writing a distribution of her vested WAP benefits in installments as she had previously designated. Defendants ignored her request for months despite her interim calls asking when she would receive her benefits. Five months later, Defendants finally told her that all of her employer contributions and related earnings were forfeited because she (allegedly) had been fired for cause. (Defendants' statements that Tolbert did not submit a claim and that she "never attempted to exhaust the administrative remedies (Defs. Mot. at 6, 8, and 12) are thus false.) The reality, however, is that her firing was an integral part of Defendants' ongoing plan to force her boss of approximately thirty years to retire and to relinquish his very successful book of business to younger brokers.

Tolbert and her boss were an inseparable team. He brought in the business, and she handled the mechanics of getting it done. Although her boss was very active and successful, Defendants determined that it was time for him to go and that he needed to turn his customers over to younger brokers. Her boss, however, disagreed with Defendants' plan. Defendants thus began a scheme to irritate and intimidate Tolbert and her boss by changing the way they did their business (which had been approved by a host of RBC managers in the past) in ways that made their long-time approved practices no longer acceptable. Over time, Defendants' efforts caused substantial friction between Defendants on one hand and Tolbert and her boss on the other hand.

Ultimately, Defendants placed Tolbert's boss, but not Tolbert, under a "heightened supervisory memorandum." In early August 2009, at the end of a day, Tolbert made a technical error by not filling out a form (of a non-regulatory and a non-monetary nature) respecting only

one of the ten trades made that day that violated her boss's technical supervisory memo. The next morning, Tolbert saw her mistake and immediately notified the appropriate persons and corrected the error before the market opened for business. There was no impact to the customer or to Defendants. Nonetheless, Defendants seized the opportunity to immediately fire Tolbert based on the apparent belief that firing her would cause her boss to retire and transition his book of business to younger brokers, as Defendants had been urging him to do for an extended time period. Defendants' plan worked, in part, but did not produce the results that Defendants desired. Tolbert's boss left, became employed by a competitor, and Tolbert joined him there with virtually his entire book of business.

Defendants' decision to forfeit $27,000 of vested pension benefits for a nearly forty year employee under these circumstances can only be characterized as punitive and hostile. There was no way Defendants were giving Tolbert any benefits under the WAP, especially since she and her boss now worked for a competitor and virtually all of their customers left Defendants and followed her boss to his new employer.

Defendants' failure to challenge the adequacy of these facts to show their hostility to and bias against her, to the extent such issues are even relevant, is telling. Defendants did not miss footnote 39, they discussed it in their motion. Defs. Mot. p. 14. It's not like they were not focused on the hostility or bias issue, their motion discusses that concept at length. *Id.* pp. 12-15. If they had a decent argument that these facts do not establish sufficient hostility or bias to show the futility of any efforts by Tolbert to further pursue her claim administratively, they would have said so. After all, this is the thrust of their motion. Defendants' failure to address these facts shows their motion's futility.

Moreover Defendants have a pattern of defending their actions based on the WAP's alleged top hat status and requiring claimants to file suit to obtain any relief. FAC ¶ 113; Defs. Mot. p. 13 n. 4. There was no point in Tolbert pursuing an administrative claim further.

**WHEREFORE,** Tolbert asks the Court to deny Defendants' motion to dismiss.

Respectfully submitted,

/s/ William G. Whitehill
    William G. Whitehill
    State Bar No. 21356550
    Joe B. Harrison
    State Bar No. 09115500
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone: 214.999.4633
Facsimile: 214.999.3633

ATTORNEY-IN-CHARGE FOR
PLAINTIFF, BRENDA TOLBERT

OF COUNSEL:

Geoffrey H. Bracken
State Bar No. 02809750
J. Palmer Hutcheson
State Bar No. 10335500
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Telephone: 713.276.5739
Facsimile: 713.276.6739

## Certificate Of Service

I certify that a true and correct copy of the above Response to Motion to Extend Time to Respond to Plaintiff's First Amended Complaint was served on Defendants' counsel via the Court's electronic filing system and by first class mail this 31st day of May, 2011.

Alison J. Gates
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4200
Houston, Texas 77002
713-890-5157 (telephone)
713-890-5001 (facsimile)

Sari M. Alamuddin
Christopher J. Boran
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
312-324-1000 (telephone)
312-324-1001 (facsimile)

ATTORNEYS FOR DEFENDANTS

_/s/ William G. Whitehill_
William G. Whitehill