UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRENDA TOLBERT, § <br> § <br> Plaintiff § <br> § No. 4:11-CV-107 <br> v. § <br> § The Honorable Keith P. Ellison <br> RBC CAPITAL MARKETS § <br> CORPORATION n/k/a RBC CAPITAL § <br> MARKETS, LLC, ET AL., § <br> § <br> Defendants. § | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Sari M. Alamuddin (*pro hac vice*)
Ill. State Bar No. 6215689
Christopher J. Boran (*pro hac vice*)
Ill. State Bar No. 6282552
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
T: 312.324.1000 (Telephone)
F: 312.323.1001 (Facsimile)
cboran@morganlewis.com

Alison J. Gates
TX State Bar No.24055535
Federal ID No. 706309
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4200
Houston, Texas 77002
T: 713.890.5157
F. 713.890.5001

*Attorneys for Defendants*

## INTRODUCTION

Plaintiff's response brief boils down to three core arguments: (1) she brings fiduciary breach claims under ERISA Sections 502(a)(2)-(3), 29 U.S.C. § 1132(a)(2)-(3), rather than a claim for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) the administrative exhaustion requirement does not apply to her claims; and (3) administrative exhaustion would have been futile in any event. None of these arguments has merit.

First, the mere fact that Plaintiff has "challenge[d] the legality of the WAP's [forfeiture] clause," Pl. Br. at 9, does not change the fact that her claim for accrued WAP benefits arises under § 1132(a)(1)(B) only. Because plan administrators (and courts) are required to interpret plan provisions in accordance with ERISA's statutory requirements, courts have held that challenges to a plan's alleged failure to comply with ERISA's "top hat" exemptions appropriately arise under § 1132(a)(1)(B), and not under §§ 1132(a)(2) or (a)(3). *See Fenwick v. Merrill Lynch & Co.,* 570 F. Supp. 2d 366, 373-75 (D. Conn. 2008) (a "top hat" case), *upheld on reconsideration*, 2009 WL 426464, at *1 (D. Conn. Feb. 20, 2009); *Daft v. Advest, Inc.,* 2010 WL 271421, at *3-4 (N.D. Ohio Jan. 15, 2010) (same); *cf. West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 484 F.3d 395, 405-06 (6th Cir. 2007) (holding that challenge to the legality of benefits calculation formula arose under § 1132(a)(1)(B) and not § 1132(a)(3)).

Second, the principles underlying the administrative exhaustion rule apply fully here. In contrast to the cases she cites, Plaintiff is challenging conduct by the plan administrator, who had the ability to address fully Plaintiff's claim for benefits. *See infra* at 7-9. Moreover, courts have rejected plaintiffs' attempts to "attach a 'statutory violation' sticker to his or her claim and then to use that label as an asserted justification for a total failure to pursue the congressionally mandated internal appeal procedures." *Diaz v. United Agric. Employee Welfare Ben. Plan*, 50

F.3d 1478, 1484 (9th Cir. 1995) (affirming dismissal based on failure to exhaust plan remedies); *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 254-55 (3d Cir. 2002).

Finally, exhaustion would not have been futile. To establish futility, Plaintiff must show that the *plan administrator* – here, the WAP Committee – "harbored hostility or bias" against her. *See, e.g., McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). However, Plaintiff merely alleges that some *unidentified* individual(s) at RBC terminated her as part of a supposed scheme to "force her boss of approximately thirty years to retire[.]." Am. Cmpl. pp. 27-28 n. 39. Because there are no allegations linking the members of the WAP Committee to this supposed scheme, much less an explanation of how denying any post-termination claim for benefits would further it, there is no plausible basis for a futility finding. Thus, Defendants' motion to dismiss should be granted.

## ARGUMENT

I. **Plaintiff's Claims Properly Arise Under ERISA Section 502(a)(1)(B) Only.**

   A. **A Challenge to the Validity of the WAP's Forfeiture Provisions Does Not Remove Plaintiff's Claims for "Accrued WAP Benefits" from the Ambit of ERISA Section 502(a)(1)(B).**

That Plaintiff has couched her claims as a "challenge[] [to] the legality of the WAP's [forfeiture] clause[,]" Pl. Br. at 9, does not remove her claims for WAP benefits from the ambit of § 1132(a)(1)(B).[1] *See, e.g., Fenwick*, 570 F. Supp. 2d at 373-75 (claim challenging the "top hat" status of the relevant plan properly arose under § 1132(a)(1)(B) and *not* §§ 1132(a)(2) or (a)(3)); *Daft,* 2010 WL 271421, at *3-4 (claim challenging plan's "top hat" status sought "an award of 'the accrued benefits under the [plan] that have been improperly denied,'" and thus

---

[1] While Plaintiff alleges separate claims for declaratory relief (Count I) and fiduciary breach (Counts II and III), the predicate of each is her contention that the WAP's forfeiture provisions are invalid because the WAP allegedly failed to comply with ERISA's "top hat" exemptions (*see* 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1101(a)(1)). Thus, as demonstrated in Defendants' opening brief and in this reply, Plaintiff's claims arise under § 1132(a)(1)(B).

arose under § 1132(a)(1)(B) *not* (a)(3)). As the *Fenwick* court later explained:

> Under ERISA, plan fiduciaries must interpret and apply plan documents in compliance with ERISA. 29 U.S.C. § 1104(a)(1)(D). Courts must also interpret plans to adhere to ERISA requirements. *See Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 742 (2004); *see also Norfolk & W. Ry. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated into its terms."). Section 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996). *Thus, a claim for benefits requiring a determination of a plan's ERISA compliance is a claim for benefits under the plan pursuant to Section 502(a)(1)(B).*

2009 WL 426464, at *1 (emphasis added).

Likewise, numerous courts have held that analogous claims seeking to recover benefits that would be owed but for allegedly illegal plan provisions arise under § 1132(a)(1)(B). *See e.g., West*, 484 F.3d at 405-06 (claim that benefits computation violated ERISA arose under § 1132(a)(1)(B) and collecting cases holding likewise); *Frommert v. Conkright*, 433 F.3d 254, 268-70 (2d Cir. 2006) (holding that claim seeking to recover benefits that would be owed absent illegal plan amendment arose under § 1132(a)(1)(B), *not* under § 1132(a)(3)); *Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 812-14 (N.D. Ill. 2009) (same and collecting cases); *Calder v. SBC Pension Benefit Plan*, 549 F. Supp. 2d 824, 833, 835-36 (W.D. Tex. 2008) (plaintiffs' claim was "most appropriately viewed as a claim for benefits primarily under § 1132(a)(1)(B)," because it "[sought] a declaration that [certain plan provisions were] invalid . . . under ERISA § 204(h) and [sought] the recovery . . . of benefits Plaintiffs were due under the Plan absent [the challenged provisions]") (citing *Frommert*).

The fundamental principle underlying these decisions is simple: § 1132(a)(1)(B) requires courts to interpret and apply the terms of a plan in accordance with ERISA. *Cf. Norfolk & W. Ry.*, 499 U.S. at 130 ("Laws which subsist at the time and place of the making of a contract, and

where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated into its terms."). Contrary to Plaintiff's apparent belief (*see* Pl. Br. at 13-14), this principle is reflected in the Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011). First, both the majority and concurring opinions cited favorably the Second Circuit's decision in *Frommert*, 433 F.3d at 268-70 (finding that claim for benefits that would have been due but for allegedly invalid plan provisions arose under § 1132(a)(1)(B)). 131 S. Ct. at 1875 and 1884. Second, the Court expressly recognized that § 1132(a)(1)(B) "allows a court to look outside the plan's written language in deciding what those terms are," including to governing laws and regulations. *Id.* at 1877 (citing *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 377-79 (1999)); *see also West*, 484 F.3d at 405 ("Although [appellee] has a point that §1132(a)(1)(B) offers redress only for the recovery of benefits, enforcement of rights, or clarification of rights to future benefits under the terms of the Plan, *those terms must nevertheless comply with ERISA*." (emphasis added)); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 438-39 (5th Cir. 2003) ("[A] claim seeking benefits premised on an ERISA plan read in conjunction with state law falls within § 1132(a)(1)(B).") (citing *UNUM*).[2]

In sum, the mere fact that Plaintiff seeks to recover accrued company contributions on the ground that the WAP's forfeiture provisions are invalid under ERISA makes no difference. Her claims still arise under § 1132(a)(1)(B). *See Fenwick*, 2009 WL 426464, at *1; *Fenwick*, 570 F. Supp. 2d at 373-75; *Daft,* 2010 WL 271421, at *3-4; *see also West*, 484 F.3d at 405-06.

---

[2] In *Cigna*, the district court went far beyond *Frommert* and engrafted on to the plan substantive provisions intended to make it accord with the misleading SPDs provided to plan participants. *See Cigna*, 131 S. Ct. at 1874-75 and 1882-83. Thus, the Supreme Court held that the lower court had improperly gone beyond merely interpreting and applying a plan in light of relevant statutory requirements. *See id*. at 1877 (citing *UNUM*).

### B. Plaintiff's Claims Cannot be Maintained Under ERISA Sections 502(a)(2) or 502(a)(3).

In casting her top hat challenge as a fiduciary breach action under §§ 1132(a)(2) and (a)(3), Plaintiff transparently seeks to avoid the exhaustion requirement "by recharacterizing claims for benefits as claims for breach of fiduciary duty." *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990). First, § 1132(a)(2) is unavailable because the fiduciary breach actions envisioned by that Section are intended to redress "losses to the plan," 29 U.S.C. § 1109(a); *see also* § 1132(a)(2), resulting from fiduciary mismanagement of plan assets. *See* Def. MTD at 11-12; *see also Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996). Plaintiff has not alleged any loss in the value of WAP assets; rather, she seeks to recover the accrued WAP benefits she would receive were the WAP's forfeiture provision deemed invalid. *See Fenwick*, 570 F. Supp. 2d at 375 (rejecting identical claim because "plaintiffs have not established that the [plan] sustained asset losses"). And her contention that Defendants "[f]ail[ed] to segregate assets that are to be held in trust," Pl. Br. at 11, does not cure this deficiency since it does not plausibly establish any "losses to the plan," §§ 1109(a) and 1132(a)(2).

Second, claims under § 1132(a)(3) are available *only* to the extent the relief being sought is not otherwise available under § 1132(a)(1)(B). *See* Def. MTD at 11-12; *Varity*, 516 U.S. at 512. Thus, because Plaintiff's claims appropriately arise under § 1132(a)(1)(B), *see supra* at 3-5, they may not be pursued under § 1132(a)(3). *See* Def. MTD at 11-12; *see also Varity*, 516 U.S. at 512 ("[§ 1132(a)(1)(B)] specifically provides a remedy for [alleged] breaches of fiduciary duty with respect to the . . . payment of claims"); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (when a plaintiff "has adequate relief available for the alleged improper denial of benefits through his right to sue [the plan administrator] directly under §1132(a)(1)," then "relief through the application of 1132(a)(3) would be inappropriate"); *Daft*, 2010 WL 271421, at *3-4

(challenge to plan's "top hat" status arose under § 1132(a)(1)(B), because "the heart of Plaintiffs' request for relief is an award of the accrued benefits [that were] improperly denied"); *Fenwick*, 570 F. Supp. 2d at 374 (same).

Plaintiff does not challenge this legal principle. Instead, she argues that claims for monetary damages can be maintained under § 1132(a)(3). Pl. Br. at 13-14. But this misses the point. Regardless of whether § 1132(a)(3) may sometimes permit monetary relief, that Section is inapplicable when the relief sought is otherwise available under § 1132(a)(1)(B), as it is here.[3]

## II. The Administrative Exhaustion Requirement Applies to Plaintiff's Claims.

Although Plaintiff devotes a section of her brief to the proposition that courts ordinarily will not address affirmative defenses on a motion to dismiss, she nevertheless acknowledges that the Amended Complaint has put the defense at issue. *See* Pl. Br. at 3, 6, 18-19. Thus, the Court may properly consider the defense at this stage of the proceedings. *See Am. Surgical Assts. Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) (courts may grant dismissal based on an affirmative defense where "plaintiff has alleged facts plainly indicating that [the] affirmative defense does apply").

### A. Plaintiff's Claim Arises from Action by the WAP Committee for which the Committee is Capable of Providing Relief.

Relying on *Chailand v. Brown & Root, Inc.*, 45 F.3d 947, 950-51 (5th Cir. 1995),

---

[3] Though it is unnecessary for the Court to reach this issue to grant Defendants' motion, it is far from clear that the relief Plaintiff seeks is available under § 1132(a)(3). *See, e.g., Amschwand v. Spherion Corp.*, 505 F.3d 342, 345-48 (5th Cir. 2007) (discussing the type of equitable relief available under § 1132(a)(3) and holding that recovery of lost insurance proceeds "is simply a form of make-whole damages" and thus did not qualify as traditional equitable relief available under § 1132(a)(3)). *Cigna*'s recent discussion of § 1132(a)(3) is "purely dicta" and thus reveals little about the type of relief that may be available here. 131 S. Ct. at 1884 (Scalia, J., concurring) ("The Court's discussion of the relief available under [§1132(a)(3)] . . . is purely dicta, binding upon neither us nor the District Court."). And while Plaintiff relies heavily on *Carrabba*, that decision contains virtually no analysis of the issue and fails to cite a single Supreme Court or Fifth Circuit decision on point. By contrast, the much more recent decision in *Fenwick*, 570 F. Supp. 2d at 373-75, considered the issue in detail and in light of applicable Supreme Court and Fifth Circuit (*Amschwand*) precedent. It held that because plaintiffs sought, as here, "the monetary compensation that is allegedly owed to them due to the invalid terms of the [plan]," their claims based on the alleged failure of the plan to qualify for ERISA's "top hat" exemptions could not be maintained under § 1132(a)(3). *Id.*

Plaintiff argues that administrative exhaustion does not apply here. In *Chailand,* the plaintiff alleged that her employer had terminated her in order to prevent her from receiving certain plan benefits in violation of 29 U.S.C. § 1140. *See id.* at 948. The court explained that, because the plan administrator was not responsible for the alleged unlawful termination and had no authority to award back pay or front pay or to reinstate plaintiff's employment, there was no need for the plaintiff to file a claim under the plan's administrative scheme. *See id.* at 949-51.

Here, by contrast, Plaintiff's claims involve action that the WAP Committee had full authority to address and remedy. *See Diaz*, 50 F.3d at 1483-84 (distinguishing § 1140 cases like *Chailand* and holding that plaintiff's benefits claim arising from an alleged violation of ERISA was subject to exhaustion). First, Section 2.1(a) of the WAP, Am. Cmpl. Ex. A § 2.1, gives the WAP Committee authority to determine the WAP's eligibility requirements consistent with the Plan's stated purpose of providing "deferred compensation . . . [to] a select group of management or highly compensated employees[,]" *id.* § 1.1. Second, while the WAP Committee had no role in the decision to terminate Plaintiff's employment, it has "full discretionary authority to determine whether [she] was terminated for Cause[.]" *Id.* § 4.3.[4] Thus, contrary to Plaintiff's brief and the facts in *Chailand*, Plaintiff clearly brings a claim that "arises from some action of a plan" and for which "the plan is capable of providing relief[.]" Pl. Br. at 15 (quoting *Chailand*).

Plaintiff also argues that exhaustion was unnecessary because she seeks to challenge the

---

[4] Plaintiff's brief at 16 contends that her claims do "not require the Court to review the administrative committee's interpretation of the WAP or its factual determination as to whether Tolbert is entitled to additional benefits under the WAP's terms." But this contention ignores that, had Plaintiff properly submitted (or appealed) her WAP claim to the WAP Committee, it would have needed to consider substantial questions of Plan interpretation: (1) whether Plaintiff was terminated for "Cause"; and (2) whether the forfeiture provision could be applied consistently with ERISA. Although Plaintiff is correct that the latter question would be subject to *de novo* review in court that does not mean that the administrative review process can be jettisoned altogether. To the contrary, not only is administrative review of legal questions entirely appropriate, but courts routinely review such determinations. *See, e.g., Penn v. Howe-Baker Engineers, Inc.*, 898 F.2d 1096, 1099 (5th Cir. 1990) (evaluating plan administrators determination of whether plaintiff was an independent contractor under ERISA). Indeed, the very existence of a specific review standard for an administrator's legal determinations *presupposes* that such matters are subject to the administrative exhaustion requirement. *See id.*

legality of the WAP's forfeiture provision. Pl. Br. at 9. However, courts have rejected similar arguments:

> [M]any employee claims for plan benefits may implicate statutory requirements imposed by ERISA . . . . And when the administrative resolution of those claims is then presented for judicial review, courts may then be called upon to determine whether the plan administrators have construed or deal with those statutes in an appropriate manner. But that prospect does not give a claimant the license to attach a "statutory violation" sticker to his or her claim and then to use that label as an asserted justification for a total failure to [exhaust administrative remedies].

*Diaz*, 50 F.3d at 1484; *see also Harrow*, 279 F.3d at 254-55 (same).

The cases on which Plaintiff relies, *see* Pl. Br. at 8, address the legality of "whipsaw" calculations unique to ERISA cash balance plans and are inapposite. For example, the whipsaw calculation in *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436 (6th Cir. 2009), had repeatedly been declared unlawful, including by the DOL and four Circuit courts. *See id.* at 438-39 and 442-43. Yet, defendants had continued to maintain that their calculation was nonetheless perfectly lawful. *See id.* Under these unique circumstances, it is understandable that the court excused the exhaustion requirement.

But no such circumstances are present here. Not only did the WAP Committee have full authority to determine the WAP's eligibility requirements, *see* Am. Cmpl. Ex. A, § 2.1, but it adjusted those requirements in 2008, *see id.* ¶ 83 and Ex. B. Thus, there is no plausible basis for suggesting that, had Plaintiff followed the WAP's administrative process, a denial of her claim was the "certain[]" result (as to either to either the top hat issue or her "for Cause" termination). *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000). Moreover, regardless of its outcome, the administrative process would have furthered the purposes of the exhaustion requirement by "uphold[ing] Congress' desire that ERISA trustees be responsible for their actions . . . [and] provid[ing] a sufficiently clear record of administrative action[.]" *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300 (5th Cir. 1985).

### B. The Futility Exception is Not Available to Plaintiff.

Plaintiff correctly concedes that, in this Circuit, "[f]utility may *only* be shown when the *plan administrator* is hostile or biased against the claimant." Pl. Br. at 17 (emphasis added). However, her contention that footnote 39 of her Amended Complaint plausibly alleges such "hostil[ity] or bias[]" is wrong. There is not a single allegation that the *plan administrator* – here, the WAP Committee – harbored any hostility or bias against Plaintiff. To the contrary, Plaintiff has merely alleged that some *unidentified* individuals at RBC orchestrated her termination as part of a scheme to "force her boss of approximately thirty years to retire and to relinquish his very successful book of business to younger brokers." Am. Cmpl. pp. 27-28 n. 39. Not only are there no allegations linking the members of the WAP Committee to this supposed scheme (which allegedly arose from hostility not against plaintiff but against her boss), but there is no plausible basis for suggesting that denying Plaintiff's claim for benefits would have furthered that scheme.[5]

### CONCLUSION

For the reasons set forth in their opening brief and in this reply brief, Defendants respectfully request that the Court enter an order dismissing Plaintiff's First Amended Class Action Complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

RBC Capital Markets Corporation; RBC Capital Markets, LLC; RBC Centura Bank; and RBC U.S. Insurance Services, Inc.

---

[5] Plaintiff references a letter she sent in January 2010 inquiring about her WAP benefit. Pl. Br. at 18. Because that letter is incorporated by reference into the Amended Complaint (at n.39) Defendants have attached it for the Court's consideration. *See* Exhibit 1. A review of this letter clearly establishes two things. First, it was not submitted to the WAP Committee as required by Sections 7.2-7.4 of the WAP, Am. Cmpl., Ex. A §§ 7.2-7.4. Second, the letter does not contest any denial of benefits or make a claim for benefits. Thus, Plaintiff cannot plausibly maintain that any delay in responding to this letter establishes that exhaustion would have been futile.

by: s/ Christopher J. Boran

Sari M. Alamuddin (*admitted pro hac vice*)
Ill. State Bar No. 6215689
Christopher J. Boran (*admitted pro hac vice*)
Ill. State Bar No. 6282552
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
312.324.1000 (Telephone)
312.323.1001 (Facsimile)

Alison J. Gates
TX State Bar No.24055535
Federal ID No. 706309
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4200
Houston, Texas 77002
713.890.5157 (Telephone)
713.890.5001 (Facsimile)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Reply Brief in Support of Their Motion to Dismiss Plaintiff's First Amended Class Action Complaint has been sent to the following counsel of record through the Court's CM/ECF system, on this the 10th day of June, 2011:

>Mr. Geoffrey H. Bracken
>Gardere Wynne Sewell LLP
>1000 Louisiana, Suite 3400
>Houston, Texas 77002-5007
>
>Mr. William G. Whitehill
>Mr. Joe B. Harrison
>1601 Elm Street, Suite 3000
>Dallas, Texas 75201

<span style="margin-left:50%">s/ Christopher J. Boran</span>