IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 4:11-CV-00107 |
| | § | |
| RBC CAPITAL MARKETS | § | |
| CORPORATION n/k/a RBC CAPITAL | § | The Honorable Keith P. Ellison |
| MARKETS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Sari M. Alamuddin (*pro hac vice*)
Ill. State Bar No. 6215689
Christopher J. Boran (*pro hac vice*)
Ill. State Bar No. 6282552
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
T:  312.324.1000 (Telephone)
F:  312.323.1001 (Facsimile)
cboran@morganlewis.com

Alison J. Gates
TX State Bar No. 24055535
Federal ID No. 706309
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4200
Houston, Texas 77002
T:  713.890.5157
F.  713.890.5001

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

STATEMENT OF THE ISSUE PRESENTED ............................................................... 2

STATEMENT OF FACTS ............................................................................................. 2

    I.      The Plan was Designed and Operated as a "Top Hat" Plan. ................................ 2

    II.     The WAP's Eligibility Criteria Changed Significantly in 2009 and 2010, Rendering Plaintiff No Longer Eligible to Participate. .......................................... 2

    III.    Plaintiff Failed to Exhaust Her Administrative Remedies under the WAP. .......... 4

SUMMARY OF ARGUMENT ...................................................................................... 4

ARGUMENT ................................................................................................................. 6

    I.      The Rule 23 Standard of Review. ........................................................................ 6

    II.     Plaintiff Cannot Adequately Represent the Proposed Class. ................................ 6

            A.      Plaintiff Failed to Exhaust the WAP's Administrative Process. ................ 7

            B.      Plaintiff Lacks Standing to Pursue Claims Under the 2009-2011 WAPs, which Imposed New, More Restrictive Eligibility Requirements. ........................................................................................... 9

            C.      Plaintiff has Actual Conflicts with Class Members who Participated in the 2009-2011 WAPs. ...................................................... 10

    III.    The Proposed Class Definition is Improper. ...................................................... 12

            A.      The Proposed Four-Year Class Period is Improper. ................................ 13

            B.      Plaintiff's Purported Class Claims Cannot be Maintained as a Single Class. ............................................................................................... 17

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abdel v. U.S. Bancorp,*
   457 F.3d 877 (8th Cir. 2006) ............................................... 16

*Adamson v. Armco, Inc.,*
   44 F.3d 650 (8th Cir. 1995) ................................................ 16

*Allee v. Medrano,*
   416 U.S. 802 (1974) .......................................................... 10

*Babcock v. Computer Assocs. Int'l, Inc.,*
   212 F.R.D. 126 (E.D.N.Y. 2003) .......................................... 8

*Barnes v. AT&T Pension Benefit Plan,*
   270 F.R.D. 488 (N.D. Cal. 2010) .......................................... 8

*Bell v. Aerodex, Inc.,*
   473 F.2d 869 (5th Cir. 1973) ............................................... 14

*Berger v. AXA Network LLC,*
   459 F.3d 804 (7th Cir. 2006) ..................................... 13, 14, 15

*Berger v. Compaq Computer Corp.,*
   257 F.3d 475 (5th Cir. 2001) ..................................... 6, 7, 10

*Blair v. Page Aircraft Maint., Inc.,*
   467 F.2d 815 (5th Cir. 1972) ............................................... 14

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
   155 F.3d 331 (4th Cir. 1998) ............................................... 12

*Brown v. Sibley,*
   650 F.2d 760 (5th Cir. 1981) ............................................... 10

*Cavegn v. Twin City Pipe Trades Pension Plan,*
   223 F.3d 827 (8th Cir. 2000) ............................................... 16

*Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
   504 F.3d 229 (2d Cir. 2007) ............................................... 12

*Cf. Resolution Trust Corp. v. Northpark Joint Ventures,*
   958 F.2d 1313 (5th Cir. 1992) ............................................. 16

*Cobb v. Cent. States,*
   461 F.3d 632 (5th Cir. 2006) ............................................... 9

*Coleman v. Champion Int'l Corp.,*
   992 F.2d 530 (5th Cir. 1993) ............................................... 9

*Compare Whitt v. Stephens County,*
   529 F.3d 278 (5th Cir. 2008) ............................................... 14

# TABLE OF AUTHORITIES

**Page**

*Coriale v. Xerox Corp.*,
2011 WL 1327858, at *3-4 (W.D.N.Y. Apr. 6, 2011) ............................................................ 9

*Demery v. Extebank Deferred Comp. Plan*,
216 F.3d 283 (2d Cir. 2000) ............................................................ 11

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ............................................................ 9

*Forbush v. J.C. Penney Co., Inc.*,
994 F.2d 1101 (5th Cir. 1993) ............................................................ 10

*Gates v. Cook*,
376 F.3d 323 (5th Cir. 2004) ............................................................ 8

*Gluck v. Unisys Corp.*,
960 F.2d 1168 (3d Cir. 1992) ............................................................ 14, 15

*Gosselink v. AT&T, Inc.*,
1999 WL 33737340, at *5-6 (S.D. Tex. Aug. 9, 1999) ............................................................ 8

*Harris v. Trustmark Nat'l Bank*,
287 Fed. Appx. 283 (5th Cir. 2008) ............................................................ 8

*Hastings v. Wilson*,
516 F.3d 1055 (8th Cir. 2008) ............................................................ 9

*Hogan v. Kraft Foods*,
969 F.2d 142 (5th Cir. 1992) ............................................................ 13, 14, 17

*Humphrey v. United Way of Tex. Gulf Coast*,
2007 WL 2330933, at *12-13 (S.D. Tex. Aug. 14, 2007) ............................................................ 8

*In re Household Int'l Tax Reduction Plan*,
441 F.3d 500 (7th Cir. 2006) ............................................................ 8

*In re ING Groep, N.V. ERISA Litig.*,
749 F. Supp. 2d 1338 (N.D. Ga. 2010) ............................................................ 9

*Int'l Union, United Plant Guard Workers of Am. v. Johnson Controls World Servs.*,
100 F.3d 903 (11th Cir. 1996) ............................................................ 13

*Jackson v. Sears, Roebuck & Co.*,
648 F.2d 225 (5th Cir. 1981) ............................................................ 5, 9

*Jenkins v. Raymark Indus., Inc.*,
782 F.2d 468 (5th Cir. 1986); ............................................................ 10

*Langbecker v. Elec. Data Sys. Corp.*,
476 F.3d 299 (5th Cir. 2007) ............................................................ 6, 10, 12

*Lehocky v. Tidel Techs., Inc.*,
220 F.R.D. 491 (S.D. Tex. 2004) ............................................................ 18

# TABLE OF AUTHORITIES

**Page**

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*,
221 F.3d 1235 (11th Cir. 2000) ............................................................. 12

*McClain v. Lufkin Indus., Inc.*,
519 F.3d 264 (5th Cir. 2008) ................................................................. 8

*McGowin v. ManPower Int'l, Inc.*,
363 F.3d 556 (5th Cir. 2004) ................................................................. 7

*McGrew v. Tex. Bd. of Pardons & Paroles*,
47 F.3d 158 (5th Cir. 1995) ................................................................... 8

*McLaughlin v. Hoffman*,
547 F.2d 918 (5th Cir. 1977) ............................................................... 4, 8

*Payne v. Travenol Labs., Inc.*,
673 F.2d 798 (5th Cir. 1982) ................................................................. 18

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ................................................................. 12

*Stirman v. Exxon Corp.*,
280 F.3d 554 (5th Cir. 2002) ......................................................... 5, 6, 10

*Swanson v. Perry*,
69 Fed. Appx. 658 (5th Cir. 2003) .......................................................... 8

*Teitel v. Deloitte & Touche Pension Plan*,
2011 WL 1592026, at *1 (2d Cir. Apr. 28, 2011) ................................... 7

*Thomas v. SmithKline Beecham Corp.*,
201 F.R.D. 386 (E.D. Pa. 2001) ............................................................. 8

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ................................................................. 6

*Wang Labs., Inc. v. Kagan*,
990 F.2d 1126 (9th Cir. 1993) ..................................................... 13, 14, 15

*Wolf v. Coca-Cola Co.*,
200 F.3d 1337 (11th Cir. 2000) ............................................................. 9

*Young v. Verizon's Bell Atl. Cash Bal. Plan*,
615 F.3d 808 (7th Cir. 2010) ................................................................. 15

**Statutes**

29 U.S.C. § 1002 ...................................................................................... 9

29 U.S.C. § 1051 ...................................................................................... 1

29 U.S.C. § 1081 ...................................................................................... 1

29 U.S.C. § 1101 ...................................................................................... 1

# TABLE OF AUTHORITIES

**Page**

29 U.S.C. § 1113 ..................................................................................................... 6, 16, 17

29 U.S.C. § 1132 ........................................................................................................ passim

42 U.S.C. § 1983 ............................................................................................................. 14

50 U.S.C. § 459 ............................................................................................................... 14

Minn. Stat. § 541.07 ...................................................................................................... 6, 16

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 18

## NATURE AND STAGE OF PROCEEDINGS

On March 21, 2011, Plaintiff filed her First Amended Class Action Complaint (Doc. No. 22) alleging that Defendants had unlawfully deprived her of certain benefits she had accrued under the Royal Bank of Canada U.S. Wealth Accumulation Plan ("WAP" or "Plan"). *See* Am. Cmpl. ¶¶ 23, 27, 115-20. The Amended Complaint alleges that the forfeiture of Plaintiff's "accrued WAP benefits" upon her termination from employment was unlawful because the WAP failed to satisfy ERISA's "top hat" exemptions, codified at 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1101(a)(1). *See, e.g., id.* ¶¶ 23, 28-31, 82-87, 117.

On May 12, 2011, Defendants moved to dismiss the Amended Complaint on the grounds that Plaintiff's claims, while styled as claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and (a)(3), were really claims for benefits arising under § 1132(a)(1)(B). Consequently, because Plaintiff had failed to exhaust available administrative remedies under the WAP and because exhaustion was not "futile," Defendants argued that Plaintiff could not pursue her WAP claims in court. *See* Def. MTD Am. Cmpl., Doc. No. 37. That motion has since been fully briefed. *See* Pl. Resp. to Def. MTD, Doc. No. 41 and Def. Reply, Doc. No. 44.

Now before the Court is Plaintiff's motion for class certification, filed on April 27, 2011. *See* Doc. No. 31. Plaintiff seeks to represent a class of "[a]ll persons who—within the last four years—have or had at least five years of service with Defendants, are current or former employees of Defendants, and were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased[.]" Pl. Mot. Class Cert. at 5. For the reasons set forth below, Defendants oppose Plaintiff's request for class certification.

**STATEMENT OF THE ISSUE PRESENTED**

Whether (1) Plaintiff's motion for class certification should be denied because Plaintiff is an inadequate class representative, and (2) whether, in the event this case may proceed as a class action, Plaintiff's proposed class definition is improper because it encompasses a period longer than the applicable statute of limitations and combines into a single class participants in different versions of the WAP with conflicting interests. *See* Standard of Review *infra* at 6.

**STATEMENT OF FACTS**

**I.      The Plan was Designed and Operated as a "Top Hat" Plan.**

The WAP was designed to be, and has operated as, a nonqualified, deferred compensation plan that provides a select group of management or highly compensated employees the opportunity to defer some of their compensation. *See* Am. Cmpl. Ex. A § 1.1. It also provides for possible matching and/or discretionary contributions by the Defendants. *Id.* § 2.6. To the extent the WAP is deemed an ERISA-covered plan, it is designed to satisfy the so-called "top hat" exemptions from ERISA's vesting, funding and fiduciary requirements, which are codified at 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1101(a)(1), respectively. *See* Am. Cmpl. Ex. A § 5.11; *see also* Pl. Mot. Class Cert. at 2.

**II.     The WAP's Eligibility Criteria Changed Significantly in 2009 and 2010, Rendering Plaintiff No Longer Eligible to Participate.**

To ensure that the WAP remains available only to a select group of employees, the WAP delegates to the "WAP Committee" the duty of determining the Plan's eligibility criteria. Am. Cmpl. Ex. A § 2.1; *see also id.* Ex. B. The WAP Committee reviews and determines the eligibility criteria on an annual basis. *See, e.g., id.* Ex. B. Under the 2008 WAP and in all prior years, non-production based employees, like Plaintiff, were eligible to participate in the WAP if their total compensation for the prior year was at least $150,000, while production based

employees (e.g., Financial Consultants) were eligible if their prior year's production was at least $300,000. *See* Am. Cmpl. ¶ 74. Because Plaintiff's total compensation was greater than $150,000 in 2002-2007, she was eligible to participate, and indeed did participate, in the 2003 through 2008 versions of the WAP. *Id.* ¶¶ 27, 98.

In the fall of 2008, recognizing the need to ensure that the WAP remained top-hat compliant, the WAP Committee determined that the eligibility thresholds in place through the 2008 WAP should be increased. Am. Cmpl. Ex. B. Thus, beginning with the 2009 WAP, the eligibility threshold for non-production based employees (including Plaintiff) was increased from $150,000 to $350,000. *Id.*; *see also id.* ¶¶ 82-87. The eligibility threshold for production-based employees remained unchanged at $300,000 in production.

Plaintiff alleges that the "new eligibility requirements . . . dramatically shrank the number of eligible employees" from "almost 18% of the work force to 10.93% of the work force." *Id.* ¶ 83. She further alleges that "[n]ot only did the number of future WAP eligible employees plummet, but the eligibility changes in fact dramatically culled the number of existing actual participants." *Id.* ¶ 84; *see also id.* ¶ 85. According to Plaintiff, these changes show that, prior to 2009, "the WAP included non-top hat participants." *Id.* ¶ 86.

Under the 2010 WAP, the eligibility thresholds were again modified. While the eligibility threshold for non-production employees remained $350,000 in total compensation, the eligibility threshold for production based employees was increased to $400,000 in prior year's production. *See id.* ¶ 74.[1] Because Plaintiff's 2008 total compensation was nowhere near $350,000, she was not eligible to participate in the 2009 WAP, *see* Tolbert Dep., attached as Exhibit 1, at 116:7-17, 117:17-119:19, 188:23-189:4, and would not have been eligible to

---

[1] Eligibility requirements did not change under the 2011 WAP. Boran Decl. ¶ 2 and Ex. A.

participate in the 2010 WAP, even if she had not been terminated on August 6, 2009, *see* Boran Decl. ¶ 3 and Ex. B (showing that plaintiff's 2009 compensation was below $350,000).

### III.   Plaintiff Failed to Exhaust Her Administrative Remedies under the WAP.

Plaintiff's August 6, 2009 termination was a "for [c]ause" termination under the 2008 WAP. Am. Cmpl. ¶¶ 28-29 and Ex. A ¶ 4.3. Accordingly, while Plaintiff was entitled to receive her vested voluntary WAP contributions, all of her Company Contributions were automatically forfeited upon her termination. *See id.*

Section 7 of the WAP provided a detailed procedure for Plaintiff to challenge whether her termination was "for Cause" under section 4.3 of the WAP or otherwise contest her forfeiture of Company Contributions, including an initial claims process and an appeal mechanism. *Id.* Ex. A §§ 7.2-7.5. Although Plaintiff was aware of the WAP's claim procedures, Plaintiff admittedly did not take advantage of them. *See* Tolbert Dep. 160:11-161:20, 162:15, 163:8-164:13. Instead, she "just dropped" the matter based solely on her "interpretation of what would happen" to her claim given that the WAP Committee had denied one brought by her former boss, Lewis Brazelton. *Id.* 168:2, 189:15-20; *see also id.* 163:8-164:13, 165:10-13, 169:22-23, 189:9-190:2. However, Plaintiff admitted that: (1) she knew nothing about Brazelton's claim; (2) the basis for Brazelton's complaint did not matter to her; and (3) she would have felt the same way about her claim no matter how different his claim was from hers. *See id.* 166:10-11, 169:24-170:8.

### SUMMARY OF ARGUMENT

I.   Plaintiff's motion for class certification should be denied because she is an inadequate class representative under Federal Rule of Civil Procedure 23(a)(4). First, it is well-settled that a plaintiff cannot represent a purported class when she has failed to exhaust the administrative remedies available for the underlying claims. *See, e.g.*, *McLaughlin v. Hoffman*, 547 F.2d 918, 921 (5th Cir. 1977). Here, Plaintiff admittedly failed to exhaust the WAP's

administrative remedies, and her deposition testimony confirms that her failure cannot be excused under the narrow "futility" exception recognized in this Circuit. *See infra* at 7-8.

Second, Plaintiff was not eligible to participate in the 2009 WAP and would not have been eligible to participate in subsequent years. Therefore, she lacks standing to pursue such claims arising under the 2009-2011 WAPs. *See, e.g.*, *Jackson v. Sears, Roebuck & Co.*, 648 F.2d 225, 227-29 (5th Cir. 1981) (plaintiff who was ineligible for the plan at the time of her termination lacked standing).

Third, Plaintiff has actual conflicts with the putative class members who participated in the 2009-2011 WAPs. As her own allegations make clear, Plaintiff's primary focus is on her contention that the 2008 and prior WAPs, in which she *did* participate, failed to qualify as a "top hat" plan under ERISA, precisely because the eligibility criteria became much more selective starting in 2009. *See, e.g.,* Am. Cmpl. ¶¶ 74, 82-87. In short, Plaintiff seeks to further her own claim at the expense of participants in the later Plans. Because Plaintiff's interests in pursuing her claim arising under the 2008 and prior WAPs are not aligned with members of the class whose claims arise under the 2009-2011 WAPs, she cannot adequately represent the proposed class. *See, e.g., Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002) (vacating class certification because plaintiff had "no incentive to fully litigate those claims not applicable to her" and might have an incentive to litigate her claims over those whose claims arose under different agreements).

II.    To the extent Plaintiff can proceed with a class action at all, her proposed class definition is improper. To begin with, the proposed class period is overly broad insofar as it covers a period of four years prior to the filing of this action. If the Court agrees with Defendants that Plaintiff's claims arise under 29 U.S.C. § 1132(a)(1)(B), then under federal

choice of law principles, the appropriate statute of limitations is the two-year period prescribed under Minnesota law.  *See* Minn. Stat. § 541.07(5).  If the Court instead agrees with Plaintiff that her claims properly arise under § 1132(a)(2) and/or (a)(3), then the applicable limitations period is three years.  *See* 29 U.S.C. § 1113.  Either way, the proposed four-year class period is improper as it would cover claims that are time-barred.

The proposed class definition also is unworkable because it seeks to pursue, as a unified class, claims arising under three distinct versions (2008 and prior, 2009 and 2010-11) of the WAP, thus introducing substantial intra-class conflicts reflected in Plaintiff's own complaint. Accordingly, even were the Court inclined to certify Plaintiff's claims under Rule 23, it should create three separate subclasses dedicated to the 2008 and prior, 2009 and 2010-2011 WAPs.

## ARGUMENT

### I.    The Rule 23 Standard of Review.

As the party seeking class certification, Plaintiff bears the burden of establishing all of Rule 23's requirements.  *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007). Courts typically do not assess the merits of the case at the certification stage but "must evaluate with rigor 'the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues.'"  *Id.* (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)).  This analysis may require threshold legal rulings necessary to conclude whether a case may properly be maintained as a class action.  *Id.* at 307.  Applying the requisite rigorous analysis, the Court should deny Plaintiff's motion for class certification.

### II.   Plaintiff Cannot Adequately Represent the Proposed Class.

Under Rule 23(a)(4), Plaintiff must establish that she will fairly and adequately represent and protect the interests of the class.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001); *see also Stirman*, 280 F.3d at 563.  Courts must assess the class representative's

willingness and ability to take an active role in and control the litigation and, most importantly, to protect the interests of the absent class members. *Berger*, 257 F.3d at 479-80. As part of this analysis, courts also must consider whether potential antagonism or conflicts of interest exist between the named plaintiff and the class she seeks to represent. *Id.*

Here, Plaintiff is an inadequate class representative because she admittedly failed to exhaust the remedies prescribed by the WAP. Moreover, even were the Court to excuse that failure, Plaintiff cannot represent participants in 2009 and subsequent WAPs, because she lacks standing to seek relief once the eligibility criteria changed beginning with the 2009 WAP and her interests are at odds with absent class members who could.

### A.   Plaintiff Failed to Exhaust the WAP's Administrative Process.

In their motion to dismiss, Defendants argued that Plaintiff was required to exhaust her available Plan remedies before filing this action and could not avail herself of the narrow "futility" exception to the exhaustion requirement. *See* Def. MTD Am. Cmpl. at 7-14; Def. Reply at 7-10. *See also McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) ("A failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility."). Plaintiff's subsequent deposition testimony only reinforces Defendants' arguments. As set forth above, Plaintiff consciously decided not to avail herself of the WAP's claims and appeal procedures simply because the WAP Committee had denied an earlier claim by her former boss, Brazelton, even though she knew nothing about his claim, much less why the WAP Committee had denied it. *See supra* at 4. As a matter of law, Plaintiff's "interpretation of what would happen" with her claim, Tolbert Dep. at 189:15-16, does not excuse her failure to exhaust. *See* Def. MTD Am. Cmpl. at 14; *see also, e.g., Teitel v. Deloitte & Touche Pension Plan*, 2011 WL 1592026, at *1 (2d Cir. Apr. 28, 2011) (affirming Rule 12 dismissal for failure to exhaust and finding that "defendants' rejection of similar [benefits] claims made by two other

individuals does not . . . show that it would have been futile for [plaintiff] to pursue his own claims"); *Harris v. Trustmark Nat'l Bank*, 287 Fed. Appx. 283, 294-95 (5th Cir. 2008) (affirming dismissal and rejecting suggestion that exhaustion was futile based committee's denial of prior claims); *Gosselink v. AT&T, Inc.*, 1999 WL 33737340, at \*5-6 (S.D. Tex. Aug. 9, 1999) (rejecting futility argument based on committee's denial of prior claims).

Plaintiff's failure to exhaust the available remedies under the WAP renders her an inadequate class representative under Rule 23(a). *See, e.g.*, *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500 (7th Cir. 2006); *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 494, (N.D. Cal. 2010) ("[I]n ERISA suits, absent class members are not required to have exhausted their claims through a plan's internal review procedures so long as the named plaintiff has done so."); *Humphrey v. United Way of Tex. Gulf Coast*, 2007 WL 2330933, at \*12-13 (S.D. Tex. Aug. 14, 2007) (holding that a named plaintiff must exhaust her remedies to be an adequate class representative, but remaining class members need not do so individually); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 132 (E.D.N.Y. 2003) (noting that "only the individual named class plaintiff has to exhaust his administrative remedies"); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D. Pa. 2001) (same).[2]  Accordingly, Plaintiff's motion for class certification should be denied on this basis alone.

---

[2]  Although the Fifth Circuit has not directly addressed this issue in the ERISA context, it has reached the same conclusion in other contexts requiring exhaustion. *See, e.g.,* *Gates v. Cook*, 376 F.3d 323, 330, 332 (5th Cir. 2004) (involving a claim under Prison Litigation Reform Act); *McLaughlin*, 547 F.2d at 921 (Title VII plaintiff may maintain a class action "provided that he has exhausted his administrative remedies"); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008) (vacating a judgment on behalf of a purported class on Title VII claim because neither named plaintiff exhausted administrative remedies); *Swanson v. Perry*, 69 Fed. Appx. 658 (5th Cir. 2003) (per curiam) (affirming denial of class certification and grant of summary judgment in Title VII lawsuit where named plaintiffs did not exhaust administrative remedies); *McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 161-62 (5th Cir. 1995) (affirming

**B.    Plaintiff Lacks Standing to Pursue Claims Under the 2009-2011 WAPs, which Imposed New, More Restrictive Eligibility Requirements.**

A plaintiff has standing to sue under ERISA only if she is a plan participant, beneficiary or fiduciary.  29 U.S.C. § 1132(a); *see also Cobb v. Cent. States*, 461 F.3d 632, 634-35 (5th Cir. 2006); *Coleman v. Champion Int'l Corp.*, 992 F.2d 530, 533 (5th Cir. 1993).  A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ."  29 U.S.C. § 1002(7); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) (defining classes of participants under § 1002(7)).  The Fifth Circuit has consistently "hewed to a literal construction of [29 U.S.C.] § 1132(a)."  *Coleman*, 992 F.2d at 534 (quotations omitted).

Plaintiff admittedly was never eligible to participate in the 2009 WAP, nor would she have been eligible to participate in subsequent years.  *See supra* at 3-4.  Consequently, she lacks standing to pursue claims under those Plans on behalf of those who did participate in them.  *See, e.g.*, *Jackson*, 648 F.2d at 228-29 (holding that plaintiff who was not an eligible participant in plan at the time of her termination lacked standing to sue under a plan); *Hastings v. Wilson*, 516 F.3d 1055, 1060-61 (8th Cir. 2008) (holding that plaintiff in one plan lacked standing to bring claims based on terms of another plan); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1340-42 (11th Cir. 2000) (holding that employee lacked standing because she was not an eligible to participate under the terms of the plan); *Coriale v. Xerox Corp.*, 2011 WL 1327858, at *3-4 (W.D.N.Y. Apr. 6, 2011) (same); *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010) (same).

---

dismissal of § 1983 claim because, in part, named plaintiff failed to exhaust remedies and noting that "his ability to serve as an adequate representative of the class is dubious.").

Plaintiff's lack of standing, moreover, is not cured by the fact that some members of the proposed class could sue under the 2009- 2011 WAPs. "Standing cannot be acquired through the back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring); *see also Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) (same). Accordingly, Plaintiff's motion for class certification should be denied to the extent she seeks to represent participants in the 2009-2011 WAPs.[3]

## C. Plaintiff has Actual Conflicts with Class Members who Participated in the 2009-2011 WAPs.

Inherent in a class action lawsuit is that the class representative will litigate on behalf of—and conclusively bind—all absent class members. Therefore, courts are "especially vigilant" to ensure that all class members are "safeguarded through adequate representation at all times." *Berger*, 257 F.3d at 480. The Rule 23 adequacy inquiry is designed to "uncover[] conflicts of interest between the named plaintiffs and the class they seek to represent," *Langbecker*, 476 F.3d at 314 (quotations omitted), and a class representative should not have "an insufficient stake in the outcome or interests antagonistic to the unnamed members," *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986); *see also Stirman*, 280 F.3d at 563 n.7 (finding that named plaintiff had "no incentive to fully litigate those claims not applicable to her" and might have an incentive to litigate her claims over those of others).

---

[3]   *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993), does not suggest a contrary result. There, the court determined that plaintiff's challenge to the benefits calculation methodology used across four of the employer's benefits plans was appropriate for class treatment, even though the named plaintiff participated in only one of the plans. *See id.* at 1106. Here, by contrast, the critical terms of the 2009, 2010 and 2011 WAPs—i.e., the eligibility requirements—were, in Plaintiff's words, "dramatically" different from the ones governing the 2008 WAP (and prior versions). *See supra* at 3 and *infra* at 11. Thus, because Plaintiff is not challenging uniform provisions that applied across all three versions of the WAP, but rather is challenging substantively different provisions governing each, the analysis in *Forbush* (which did not address standing) is inapposite.

Plaintiff's core claim is that the forfeiture of her Company Contributions was unlawful because the WAP was not maintained for a sufficiently "select group" of "highly compensated" employees and thus did not qualify as a "top hat" plan under ERISA. *See* Am. Cmpl. ¶¶ 10, 67, 115-20. In support, Plaintiff alleges that, in 2008, "almost 18% of [Defendants'] work force" were WAP eligible, Am. Cmpl. ¶ 83, which is greater than the 15% courts typically recognize as supporting a finding that a plan satisfies ERISA's top hat exemptions, *see id.* at p. 12 n. 29 (citing *Demery v. Extebank Deferred Comp. Plan*, 216 F.3d 283, 288 (2d Cir. 2000)). Plaintiff further alleges that, in contrast to the 2008 WAP, only "10.93% of the work force" was WAP eligible under the 2009 WAP. Am. Cmpl. ¶ 83. According to Plaintiff, these facts show that, prior to 2009, "the WAP included numerous non-top hat participants." *Id.* ¶ 87.

In other words, Plaintiff seeks to further her own claim arising under the 2008 WAP—in which she was eligible to participate—by emphasizing the "dramatic" changes in eligibility requirements that rendered the 2009 and subsequent WAPs—in which she was not eligible to participate—much more "select" in nature. *See, e.g., id.* ¶¶ 82 ("Defendants decided to drastically reduce the number of participants"), 83 (Defendants "imposed new eligibility requirements that drastically shrank the number of eligible employees") and 85 (following the 2009 amendments the number of eligible participants "plummet[ed]" and the number of actual participants was "dramatically culled"). Plaintiff is therefore advancing her claims at the expense of those class members whose claims, if any, arise under the 2009, 2010 and 2011 WAPs. Not surprisingly, Plaintiff could not explain how she could adequately represent the interests of those participants. *See* Tolbert Dep. 184:17-185:18.

In sum, because Plaintiff has actual conflicts with members of the proposed class who, unlike her, were actually eligible for and participated in the 2009-2011 WAPs, she cannot

adequately represent their interests as required under Rule 23(a)(4). Her class motion should be denied on this additional basis. *See, e.g., Langbecker*, 476 F.3d at 314-16 (vacating class certification of ERISA claims for breach of fiduciary duty based in part based on the incongruous effect of defendant's conduct on different class members); *Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011) (finding that proposed class failed both the typicality and adequacy requirements where class included many plan participants who never held any interest in either of the two funds in dispute); *Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245-46 (2d Cir. 2007) (finding named plaintiff's interest antagonistic to those of the other class members where relief was sought on behalf of two different plans); *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (named plaintiff who participated in a defined benefits plan in years prior to an amendment to ERISA was an inadequate representative for class members whose claims were governed by the amended statute). *See also Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337-40 (4th Cir. 1998) (reversing certification of franchisees who were subject to different versions of franchise agreement).

## III. The Proposed Class Definition is Improper.

Plaintiff's proposed class definition includes: "All persons who—within the last four years—have or had at least five years of service with Defendants, are current or former employees of Defendants, and were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased[.]" Pl. Mot. Class Cert., at 5. This proposed definition is improper because it (a) encompasses a period longer than the applicable statute of limitations; and (b) combines into a single class individuals who participated in materially distinct versions of the WAP and whose interests are therefore not aligned.

## A. The Proposed Four-Year Class Period is Improper.

### 1. Assuming Plaintiff's Claims Arise Under § 1132(a)(1)(B), the Court Should Apply a Two-Year Limitations Period.

Defendants maintain that Plaintiff's purported breach of fiduciary duty claims are fundamentally claims for benefits arising under § 1132(a)(1)(B). *See* Def. MTD Am. Cmpl. at 7-12 and Def. Reply at 3-7. If Defendants are correct, then a two-year limitations period for analogous contract actions under Minnesota law applies and the Court should limit the scope of any purported class accordingly.

#### a. The Court Should Look to Minnesota Law for the Applicable Limitations Period.

Because ERISA does not provide a statute of limitations for claims seeking plan benefits under 29 U.S.C. § 1132(a)(1)(B), courts look to the most analogous state statute of limitations for such claims. *See Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992). The first step in determining the most analogous statute of limitations is to determine which state's law is the proper source for the analogy. This is an exercise to which federal choice-of-law principles apply. *See Berger v. AXA Network LLC*, 459 F.3d 804, 809-10 (7th Cir. 2006) ("In fashioning a choice of law rule to govern our quest for the most appropriate state limitations period, our task, when the underlying claim is a *federal* claim, is to fashion a *federal* choice of law rule."); *Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993) ("We decide as a matter of federal law which state statute of limitations is appropriate.").

The Fifth Circuit precedent on this issue is unclear. *See Int'l Union, United Plant Guard Workers of Am. v. Johnson Controls World Servs.*, 100 F.3d 903, 905 (11th Cir. 1996) (recognizing the inconsistent Fifth Circuit precedent on this issue). Some decisions hold that the law of the forum state should apply, while others indicate that the court should borrow from the state in which the controversy or claim arose. *Compare Whitt v. Stephens County*, 529 F.3d 278,

282 (5th Cir. 2008) (applying forum state's limitations law for a claim under 42 U.S.C. § 1983), *with Bell v. Aerodex, Inc.*, 473 F.2d 869, 871 (5th Cir. 1973) (for a claim under the Military Selective Service Act of 1967, 50 U.S.C. § 459, "federal courts must look to the statutes of limitations of the state in which the controversy arose"), *and Blair v. Page Aircraft Maint., Inc.*, 467 F.2d 815, 818 (5th Cir. 1972) (for a claim under 50 U.S.C. § 459, "the federal court must rely on the limitation period prescribed by the state where the controversy originated"). Insofar as ERISA claims are concerned, while the Fifth Circuit has applied forum state law in the context of single plaintiff claims for benefits, it has not had occasion to address choice of law principles in the context of a purported nationwide class action involving a plan created and administered in another state (as here). *See, e.g., Hogan*, 969 F.2d at 145 (applying forum state's statute of limitations to a single plaintiff action under § 1132(a)(1)(B)).

By contrast, the Third, Seventh and Ninth Circuits have developed clear principles for determining which state's law supplies the governing limitations period in cases like this one. *See Berger*, 459 F.3d at 813; *Wang Labs.*, 990 F.2d at 1128; *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992). In *Berger*, 459 F.3d at 809-14, the Seventh Circuit began by rejecting a choice of law analysis that would automatically apply the law of the forum in which the action is pending. As the court explained, an important federal policy underlying ERISA is to ensure uniformity of treatment among ERISA participants or beneficiaries; if the only connection a plaintiff has to the forum state is his or her residence, a class action could become "governed by a 'crazy quilt' of limitations periods and the federal interest in uniformity would be rendered nugatory." *Id.* at 814. Indeed, reflexive application of the forum state's statute of limitations to *all* class members could lead to inconsistent treatment from one lawsuit to the next and could encourage forum shopping. Such a result is untenable: "Federal law is no judicial

chameleon, changing complexion to match that of each state wherever lawsuits happen to be commenced." *Id.* at 811 (quotations omitted).

Thus, the Third, Seventh and Ninth Circuits have adopted a choice of law rule that "selects a statute of limitations from the forum state's law *unless* another state has more significant contacts with the dispute." *Id.* at 813 (emphasis added); *see also Wang Labs.*, 990 F.2d at 1128; *Gluck*, 960 F.2d at 1179. Applying this test, the *Berger* court concluded that a non-forum state (New York) had a more significant relationship to the dispute than the forum state (Illinois), and thus New York law should apply for borrowing the statute of limitations. First, because the dispute involved corporate decisions made and documented in New York, the court concluded that "Illinois is simply a spoke rather than the hub of this lawsuit." *Berger*, 459 F.3d at 813. Second, the court found "strong evidence of the parties' justified expectations that New York law would fill in the necessary gaps in federal ERISA law," based on a choice of law provision contained in the governing plan document. *Id.* (citations and quotations omitted); *see also Wang Labs.*, 990 F.2d at 1128 (applying non-forum state's choice of law because that was where the ERISA plan was drafted, where most class members resided and was the forum identified in the plan's choice of law provision); *Young v. Verizon's Bell Atl. Cash Bal. Plan*, 615 F.3d 808, 815-16 (7th Cir. 2010) (same).

In the absence of clear guidance from the Fifth Circuit, Defendants submit that this Court should employ the choice of law analysis adopted in *Berger* and *Wang*. Under that analysis, Minnesota law provides the "borrowing" source for the most analogous statute of limitations. First, Plaintiff seeks to represent "thousands of participants spread around the country" and covering a "wide geographic dispersal." Pl. Mot. Class Cert. at 6-7 (Doc. No. 31). Second, Defendants are headquartered in Minnesota and that is where the WAP was created and where it

has been administered for nearly a decade.  *See, e.g.,* Tolbert Dep. at 128:22-129:3 and Ex. 14 at

p. 1 (noting that the WAP Committee is in Minneapolis, Minnesota) and Am. Cmpl. Ex. A ¶ 8.7

(stating that the WAP was created in Minnesota).  Third, the WAP contains a clear choice of law

provision stating that it was "executed and delivered in the State of Minnesota and has been

drawn in conformity to the laws of that state to the extent not preempted by federal law and will

be construed and enforced in accordance with the laws of the State of Minnesota."  Am. Cmpl.

Ex. A § 8.7.  *Cf. Resolution Trust Corp. v. Northpark Joint Ventures*, 958 F.2d 1313, 1318 (5th

Cir. 1992) ("Under the Texas rules, in those contract cases in which the parties have agreed to an

enforceable choice of law clause, the law of the chosen state must be applied.")

> **b.**     **Minnesota Law Prescribes a Two-Year Limitations Period.**

In Minnesota, a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is typically

characterized as a contract action for statute of limitations purposes.  *See Adamson v. Armco,

Inc.*, 44 F.3d 650, 652 (8th Cir. 1995).  So characterized, the Eighth Circuit has repeatedly

concluded that the applicable limitations period governing benefits claims under ERISA is the

two-year period prescribed in Minnesota Statutes § 541.07(5).  *Id.* at 652-53; *see also Abdel v.

U.S. Bancorp*, 457 F.3d 877, 880 (8th Cir. 2006); *Cavegn v. Twin City Pipe Trades Pension

Plan*, 223 F.3d 827, 829-30 (8th Cir. 2000).  This Court should adopt the Eighth Circuit's

analysis and on that basis limit any potential class arising under § 1132(a)(1)(B) to the period of

January 11, 2009, through the present.

> **2.**     **Even if Plaintiff's Claims were Appropriately Brought under Sections
> 1132(a)(2) or (a)(3), Only a Three-Year Limitations Period Applies.**

Unlike claims under § 1132(a)(1)(B), ERISA expressly establishes a statute of limitations

governing claims for "a fiduciary's breach of any responsibility, duty, or obligation" under Part 4

of ERISA.  *See* 29 U.S.C. § 1113.  The limitations period for such actions is the earlier of six

years after the date of the last action that constituted a part of the breach or violation, or three years after the earliest date on which plaintiff had actual knowledge of the breach or violation. *Id.*; *see also Hogan*, 969 F.2d at 145 (holding that the limitations period set forth in § 1113 applies to claims under § 1132(a)(2) and (a)(3)). Because there is no dispute that Plaintiff had actual knowledge of the fiduciary breaches alleged in the Amended Complaint at some point after her August 2009 termination, her claims are subject to a three-year limitations period.

Accordingly, Plaintiff's purported class definition is improper. Any certified class regarding her purported claims under § 1132(a)(2) and/or (a)(3) can cover a period no earlier than January 11, 2008, three years prior to the filing of Plaintiff's original complaint.

**B.     Plaintiff's Purported Class Claims Cannot be Maintained as a Single Class.**

As described above and in the Amended Complaint, participation in the 2009 and 2010-2011 WAPs was predicated on substantially different eligibility requirements than in 2008 and prior years. Plaintiff contends that these amendments were "dramatic" and fundamentally altered the character of the WAP. *See* Am. Cmpl. ¶¶ 74, 83-87. As such, there is really no dispute that each of the WAPs should be evaluated on its own merits when considering whether it satisfied ERISA's requirements for top hat status.

Moreover, as discussed above, Plaintiff's claims (and those of other putative class members who failed to meet the enhanced eligibility requirements under the 2009, 2010 and 2011 WAPs) arise under the 2008 WAP only and fundamentally conflict with the interests of putative class members whose claims, if any, arise under the 2009 and subsequent WAPs. *See supra* at 10-12. Therefore, if the court determines that these conflicts or the other arguments set forth above do not merit denial of Plaintiff's motion for class certification entirely, the proposed class should (1) be limited to a two or three year period preceding the filing of the original complaint, *see supra* at 13-17, and (2) "be divided into subclasses that are each treated as a class

under this rule." Fed. R. Civ. P. 23(c)(5); *see also Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 812 (5th Cir. 1982) (recognizing that subclasses are appropriate where there is a conflict or other reason that a unified class may not proceed); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 499 (S.D. Tex. 2004) ("[I]t is well-settled that subclasses are only necessary when a class is divided between conflicting claimants or divergent elements of proof requiring a division into homogenous subclasses." (quotations and alterations omitted)).[4]

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court enter an order denying Plaintiff's Motion for Class Certification. In the alternative, Defendants request that the Court limit any certified class to claims arising under the 2008 WAP. As a final alternative, Defendants request that the Court break the proposed class into three sub-classes covering (1) the 2008 WAP (and prior years), (2) the 2009 WAP, and (3) the 2010-2011 WAPs, for a period no longer than is permitted under the applicable statute of limitations.

Respectfully submitted,

RBC Capital Markets Corporation; RBC Capital Markets, LLC; RBC Centura Bank; and RBC U.S. Insurance Services, Inc.

by: _s/ Christopher J. Boran_

Sari M. Alamuddin (*admitted pro hac vice*)
Ill. State Bar No. 6215689
Christopher J. Boran (*admitted pro hac vice*)
Ill. State Bar No. 6282552
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor

---

[4]  Because "each subclass must be headed by a person who claims the same injury as the subclass, but who lacks the fatal conflict," *Payne*, 673 F.3d at 812, the Court presumably would have to certify the two subclasses related to the 2009 and 2010-2011 WAPs on a conditional basis pending the identification of a suitable class representative for each.

Chicago, Illinois 60601
312.324.1000 (Telephone)
312.323.1001 (Facsimile)

Alison J. Gates
TX State Bar No. 24055535
Federal ID No. 706309
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4200
Houston, Texas 77002
713.890.5157 (Telephone)
713.890.5001 (Facsimile)

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification has been sent to the following counsel of record through the Court's CM/ECF system, on this the 17th day of June, 2011:

> Mr. Geoffrey H. Bracken
> Gardere Wynne Sewell LLP
> 1000 Louisiana, Suite 3400
> Houston, Texas 77002-5007
>
> Mr. William G. Whitehill
> Mr. Joe B. Harrison
> 1601 Elm Street, Suite 3000
> Dallas, Texas 75201

<u>s/ Christopher J. Boran</u>