RBC Wealth Management

Todd Schnell
Vice President -
Senior Associate General Counsel
RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402-4422

Direct:  612-371-7263
Fax:    866-947-4603
todd.schnell@rbc.com

May 25, 2012

VIA E-MAIL (gbracken@gardere.com)
Mr. Geoffrey H. Bracken
Gardere Wynn Sewell
1000 Louisiana, Suite 3400
Houston, TX 77002-5011

Re:   Mr. Joseph Rice Neuhaus, Jr./ Mr. Lawrence Gift, Jr. Claims
      Amended and Restated Royal Bank of Canada US Wealth Accumulation Plan ("Plan")

Dear Mr. Bracken:

On behalf of the WAP Committee (the "Committee"), I am responding to the claims filed by you on behalf of Mr. Joseph Rice Neuhaus, Jr. and Mr. Lawrence Gift by letters dated November 29, 2011 and December 5, 2011, respectively (the "Claims"). As you know, by letter of February 27, 2012, I advised you that the Committee required additional time to review the Claims and provide a final response, due to special circumstances created by the complicated legal and factual nature of the Claims. The Committee has now had an opportunity to review the Claims, and as this letter explains in greater detail, the Committee has decided to deny the Claims.

Under Section 4.6 of the Plan, a Participant who incurs a "Separation" prior to the date upon which his Company Contributions have vested under the terms of the Plan will forfeit those contributions and related deemed investment returns. Messrs. Neuhaus and Gift each incurred a "Separation" as defined in Section 1.2 of the Plan when they voluntarily resigned from their employment with RBC on November 18, 2011 and September 29, 2011, respectively. Therefore, it is clear that the forfeitures of their unvested Company Contributions and the related earnings were proper under the terms of the Plan.

The Claims do not appear to contest this conclusion. Rather, the Claims allege that the Plan's vesting requirements violate the minimum vesting standards under Section 203 of ERISA. As explained in more detail below, the Committee does not agree that the ERISA minimum vesting standards apply to the Plan.

The Claims first assert that the Plan is an ERISA pension plan and, as such, would be subject to ERISA's minimum vesting standards, absent an applicable exception. The Committee does not agree that the Plan meets the requirements for being a pension plan as defined in Section 3(2) of ERISA. Rather, as stated in Section 5.10 of the Plan, and as is apparent from its design, it is primarily intended to attract and retain valuable employees by providing for deferral of bonuses and other compensation until specified payment dates that will occur, absent an affirmative contrary election, during a participant's active employment, and it is not intended to provide a retirement benefit or to systematically defer the receipt of compensation beyond the termination of employment. However, the Committee determined, without any concession on this point, that it would proceed as if the Plan were an ERISA pension plan, and that it would consider the second issue raised in the Claims, namely whether the Plan would be a "top-hat plan" exempt from ERISA's minimum vesting standards.

Section 201(2) of ERISA provides that a plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees" is exempt from the requirements of Title I, Part 2 of ERISA, including the minimum

RBC Wealth Management, a division of RBC Capital Markets, LLC, Member NYSE/FINRA/SIPC.

**EXHIBIT A**

Mr. Geoffrey H. Bracken
May 25, 2012
Page 2 of 3

vesting requirements under ERISA Section 203. The Claims do not appear to contest that the Plan is "unfunded." Rather, the Claims assert that the Plan does not meet the requirement that it be "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." The Claims state that "based upon the employees who are and who have been authorized to participate in the Plan," the Plan fails to limit participation to a "select group of management or highly compensated employees." The Committee does not agree.

First, Section 5.10 of the Plan makes clear that the intent of RBC, as the settlor of the Plan, was that the Plan, if considered a pension plan, would be deemed a top-hat plan. That section provides that if the Plan is deemed an ERISA pension plan, "the Company believes that it constitutes an unfunded plan of deferred compensation maintained for a select group of management or highly compensated employees and, therefore, [is] exempt from many ERISA requirements." The Committee believes that the intent of the settlor should be given significant weight in determining whether the Plan is a top-hat plan.

Second, the Committee considered whether the underlying facts concerning the Plan's coverage support the conclusion that the Plan is a top-hat plan. Specifically, the Committee reviewed the following conclusions made by an expert retained by RBC to review the coverage of the WAP in connection with the pending Tolbert litigation:

- Between 2004 and 2010, the percentage of all RBC employees who were eligible to participate in the WAP ranged from 1.97% to 3.31%, annually.
- Considering the U.S. workforce only, the percentage of RBC employees eligible to participate in the WAP between 2003 and 2010 ranged from 6.99% (2003) to 17.11% (2006).
- Between 2004 and 2010, the median compensation of WAP eligible employees was between 5.2 and 7.2 times (on average 6.2 times) greater than that of all RBC employees. In addition, the median compensation of WAP eligible employees was greater than the compensation of at least 94% of RBC employees during the years analyzed.
- Considering the U.S. workforce only, the median compensation of WAP eligible employees between 2003 and 2010 was between 3.2 and 5.2 times (on average 4.3 times) greater than that of all U.S. employees. In addition, the median compensation of WAP eligible employees was greater than the compensation of at least 87% of all U.S. RBC employees during the years analyzed.
- Between 2004 and 2010, the average compensation of WAP eligible employees was between 4.0 and 5.5 times greater than that of all RBC employees, and the average compensation of WAP eligible employees was greater than the compensation of at least 96% of all RBC employees during the years analyzed.
- Considering the U.S. workforce only, the average compensation of WAP eligible employees between 2003 and 2010 was between 2.2 and 3.7 times greater than that of all U.S. employees, and the average compensation of WAP eligible employees was greater than the compensation of at least 93% of all U.S. employees during the years analyzed.
- Between 2004 and 2010, the median compensation of WAP eligible employees was between 5.3 and 7.4 times (on average 6.3 times) greater than that of all non-eligible RBC employees.
- Considering the U.S. workforce only, the median compensation of WAP eligible employees between 2003 and 2010 was between 3.7 and 6.4 times greater than that of non-eligible U.S. employees.

The Committee believes that this factual evidence clearly supports the conclusion that the Plan covers only a "select group of management or highly compensated employees."

Finally, the Committee noted that in the Tolbert case, the named plaintiff sought discovery of certain documents that included attorney-client communications, asserting that because the Plan is not a top-hat plan, the

Mr. Geoffrey H. Bracken
May 25, 2012
Page 3 of 3

documents were discoverable under the "fiduciary exception" to the attorney-client privilege under ERISA. The Court ruled on March 28, 2012 that the documents sought were privileged and not discoverable, holding that "Defendants' pleadings and exhibits sufficiently show, for the limited purpose of this discovery dispute only, that the [Plan] is a top hat ERISA plan." In the Committee's view, the Court's holding that the Plan met the requirements for being a top-hat plan for purposes of the discovery dispute supports the Committee's conclusion on this issue.

In sum, for all of the reasons, and based on all of the authorities, listed above, the Committee has determined to deny the Claims.

Messrs. Neuhaus and Gift, or their authorized representative, may submit a written appeal to the Committee within 60 days of the date this letter is received. The written appeal should be mailed to the undersigned. As part of the appeal, copies of any further evidence that would indicate that they are entitled to an additional Plan benefit should be submitted. We note that no single item is dispositive. Examples of documents that may be helpful would include any documents or other evidence that would support the argument that the Plan is an ERISA retirement plan and that it does not meet the requirements for the top-hat plan exception.

If an appeal is not filed within this 60-day period, Mr. Neuhaus and/or Mr. Gift (as applicable) shall have no further right to appeal. The appeal must include any additional documentation in support of the claim. The Committee will review comments, documents, records and other information submitted relating to the appeal, without regard to whether such information was submitted or considered in the initial claim determination. A copy of this letter must be included with the appeal. Messrs. Neuhaus and Gift will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claims. The Committee will respond to the appeal within 60 days after its receipt, unless special circumstances require additional time to consider the appeal, in which case they will be notified in writing within such 60-day period. In no event will the appeal be finally decided more than 120 days after the appeal is received.

If an appeal is filed with the Committee and the appeal is fully or partially denied, then Messrs. Neuhaus and Gift would have the right to bring a civil action under Section 502(a) of ERISA (subject to a determination that the Plan is not a pension plan subject to ERISA).

Sincerely,

*Todd Schnell /LES*

Todd W. Schnell

cc: RBC US Wealth Accumulation Plan Committee



*attorneys and counselors* ▪ *www.gardere.com*

Direct: 713-276-5739
Direct Fax: 713-276-6739
gbracken@gardere.com

May 30, 2012

*Via E-mail (todd.schnell@rbc.com)*
Mr. Todd Schnell
Vice President – Senior Associate General Counsel
RBC Wealth Management
RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402-4422

RE:   Mr. Joseph Rice Neuhaus, Jr. / Mr. Lawrence Gift, Jr. Claims
      *Amended and Restated Royal Bank of Canada US Wealth Accumulation Plan ("Plan")*; Our File No. 136702.01

Dear Todd:

  Thank you for your letter on behalf of the WAP Committee, dated May 25, 2012, denying the claims of my clients, Joseph Rice Neuhaus, Jr. and Lawrence Gift, Jr. The response is not unexpected in light of the Committee's prior treatment of the Brazelton claim, the established futility of the administrative process, and the lack of "a full and fair review of their claims." Along those lines, I note with interest that the Committee only considered the "conclusions made by an expert retained by RBC," but apparently was either not provided or did not consider the additional supplemental information generated by Tolbert's expert, which was provided early on in this matter. A copy of my December 2, 2011 letter is attached hereto as Exhibit 1. Apparently, none of the pleadings in *Tolbert* were shared with the Committee either.

  Along those lines, kindly provide to me copies of all documents furnished to and/or provided by the Committee incident to its determination of the Neuhaus and Gift claims, as well as all meeting minutes discussing or referring to such claims.

  Further to my April 2, 2012 letter, my clients will have, under protest and subject to the strictures contained in my prior correspondence, satisfied the Plan's administrative procedures as of Monday, June 4, 2012. I look forward to receiving RBC's response, if any, on or before that date.

1150299v.1

GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400, Houston, Texas 77002-5011 ▪ 713.276.5500 Phone ▪ 713.276.5555 Fax
Austin ▪ Dallas ▪ Houston ▪ Mexico City

May 30, 2012
Page 2

Thank you for your anticipated cooperation.

Sincerely,

Geoffrey H. Bracken

GHB:klt
Enclosure

1150299v.1



Writer's Direct Dial Number:
713-276-5739
Direct Fax: 713-276-6739
gbracken@gardere.com

December 2, 2011

VIA EMAIL - todd.schnell@rbc.com

Mr. Todd W. Schnell
Vice President – Senior Associate General Counsel
Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402-4422

    Re:    Mr. Joseph Rice Neuhaus, Jr. and his account held under the Amended and Restated Royal Bank of Canada US Wealth Accumulation Plan dated November 1, 2008 (the "*Plan*")

Dear Todd:

    Further to my prior letter to you, dated November 29, 2011, please let this request and information supplement the same. I trust that you will forward it on to the appropriate persons, be they on the WAP Committee, RBC's Executive/Operating Committee, or otherwise. Along those lines, I have included a copy of the expert report recently provided in the *Tolbert* matter. I believe that the same clearly shows that the Plan is not a top hat plan, and that as a result and in accordance with ERISA, Mr. Neuhaus is entitled to full vesting of all amounts held in his account under the Plan, including those amounts that may not have "vested" pursuant to the terms of the Plan.

    In addition, my client indicates that he received certain loyalty and productivity bonuses, including Chairman's Club recognition, which had accrued as of the end of October, 2011. Please confirm the amount of said bonuses and that the same will be paid forthwith.

    Thank you for your cooperation and assistance, and I will look forward to your response.

                              Sincerely,

                              Geoffrey H. Bracken

GHB:pak
Enclosure

**EXHIBIT 1**

HOUSTON 1132973v.1
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400, Houston, Texas 77002-5011 ▪ 713.276.5500 Phone ▪ 713.276.5555 Fax
Austin ▪ Dallas ▪ Houston ▪ Mexico City