1  LINDA CLAXTON, State Bar No. 125729
   linda.claxton@ogletreedeakins.com
2  CHRISTOPHER W. DECKER, State Bar No. 229426
   christopher.decker@ogletreedeakins.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  633 West Fifth Street, 53rd Floor
   Los Angeles, California 90071
5  Telephone:  (213) 239-9800
   Facsimile:   (213) 239-9045
6

7  Attorneys for Defendants
   ROYAL BANK OF CANADA, RBC CAPITAL MARKETS
8  CORPORATION (incorrectly named and sued as "RBC WEALTH
   MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER,
9  INC."), and THE ROYAL BANK OF CANADA US WEALTH
   ACCUMULATION PLAN
10

11            **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13

14  STEVEN BENHAYON,                    Case No. CV08-06090 FMC(AGRx)

15            Plaintiff,                **REPLY MEMORANDUM IN**
                                        **SUPPORT OF DEFENDANTS'**
16        v.                            **MOTION FOR PARTIAL**
                                        **SUMMARY JUDGMENT ON**
17  ROYAL BANK OF CANADA, a            **PLAINTIFF'S CLAIM FOR**
    Canadian company, business form    **BENEFITS UNDER THE ROYAL**
18  unknown; RBC WEALTH                **BANK OF CANADA US WEALTH**
    MANAGEMENT COMPANY, formerly       **ACCUMULATION PLAN**
19  RBC DAIN RAUSCHER, INC.,
    business form unknown; THE ROYAL    Date:      not applicable
20  BANK OF CANADA US WEALTH           Time:      not applicable
    ACCUMULATION PLAN, formerly        DJ:        Florence-Marie Cooper
21  known as RBC Dain Rauscher Wealth  Courtroom: (Roybal) 750
    Accumulation Plan; and, DOES 1     MJ:        Alicia G. Rosenberg
22  through 20,                        Courtroom: (Spring) 23

23            Defendants.              Trial Date:  February 16, 2010

24

25

26

27                    **Exhibit 2**              Plaintiff's Supp.
                                                     Exh. 31
28

                                          CASE NO. CV08-06090 FMC(AGRx)

7579563_3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ..................................................................................... 1
II.     FACTUAL BACKGROUND ................................................................... 2
III.    STANDARD FOR SUMMARY JUDGMENT ........................................ 2
IV.    ARGUMENT .......................................................................................... 2
    A.     The WAP's Status as a Top Hat Plan is Irrelevant to Plaintiff's Claim for Benefits. .......................................................................... 2
    B.     The WAP Satisfies The Requirements Of A Top Hat Plan. ............... 3
        1.     The WAP Limits Participation to a Select Group. .................. 3
        2.     The WAP Limits Participation to Management And/Or Highly-Compensated Employees. ........................................... 5
        3.     Plaintiff's Assertion that WAP Participants Lacked Bargaining Power is Meritless. .............................................. 6
        4.     The WAP Is Unfunded. .......................................................... 7
    C.     Plaintiff's Suggestion of a Conflict of Interest is Meritless. ............. 9
    D.     Plaintiff's Forfeitures Were Consistent with the Terms of the WAP. ............................................................................................ 10
    E.     The Determination that Plaintiff's Termination Resulted from a Restructuring Benefitted Plaintiff. ............................................... 13
    F.     The Absence of an Integration Clause is Irrelevant. ....................... 14
V.     CONCLUSION ..................................................................................... 15

CASE NO. CV08-06090 FMC(AGRx)
REPLY MEMORANDUM ISO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

7579563_3

## TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*Abatie v. Alta Health & Life Ins. Co.,*
   458 F.3d 955 (9th Cir. 2006) ............................................................... 9, 10

*Alexander v. Brigham and Women's Physician's Organization, Inc.,*
   467 F. Supp. 2d 136 (D. Mass. 2006) *aff'd* 513 F.3d 37 (1st Cir. 2008) .....passim

*Belka v. Rowe,*
   571 F. Supp. 1249 (D. Md. 1983)............................................... 4, 6, 8

*Carraba v. Randalls Food Markets, Inc.,*
   38 F. Supp. 2d 468 (N.D. Tex. 1999)........................................... 6, 7

*Demery v. Extebank Deferred Comp. Plan (B),*
   216 F.3d 283 (2d Cir. 2000) .................................................2, 3, 4, 5

*Dependahl v. Falstaff Brewing Co.,*
   653 F.2d 1208 (8th Cir. 1981), cert. denied, 454 U.S. 968 (1981) ..................... 8

*Duggan v. Hobbs,*
   99 F.3d 307 (9th Cir. 1996) ....................................................3, 4, 5, 6

*Firestone Tire & Rubber Co. v. Bruch,*
   489 U.S. 101 (1989) ..................................................................... 9, 13

*In re Battram,*
   214 B.R. 621 (Bankr. C.D. Cal. 1997) ................................................. 4

*Satchwell v. Long John Silvers, Inc.,*
   1992 U.S. App. LEXIS 9519 ........................................................... 14


**STATUTES**

29 U.S.C. § 1051(2)................................................................................3, 5

29 U.S.C. § 1144(a) ............................................................................... 14

§ 414(q)(1)(B) of the Internal Revenue Code ........................................... 6

7579563_3

1

**OTHER AUTHORITIES**

2

DOL Advisory Op. 81-11A (Jan. 15, 1981) ...................................................... 8

3

DOL Advisory Op. 90-14A (May 8, 1990) ...................................................... 8

4

Fed. R. Civ. P. 56(c) ........................................................................................ 2

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7579563_3

## I.   **INTRODUCTION**

Plaintiff Steven Benhayon's ("Plaintiff") Opening Brief Re: 1) Non-Applicability Of ERISA's Top Hat Exemption To The U.S. Wealth Accumulation Plan; And 2) Defendants' Execution Of The U.S. Wealth Accumulation Plan In Bad Faith ("Opening Brief") fails to establish any claim under ERISA. For the reasons set forth in Defendants' Memorandum of Points and Authorities In Support Of Its Motion For Partial Summary Judgment, and as amplified herein, there is no genuine dispute with respect to any material fact relating to Plaintiff's claim for benefits under the Royal Bank of Canada US Wealth Accumulation Plan (the "WAP" or the "Plan") and Defendants are entitled to judgment on this claim as a matter of law. Plaintiff has not, and cannot, establish that the WAP's Plan Administrator, the WAP Committee, abused its discretion in denying his claim for benefits.

It is undisputed that Plaintiff received a distribution of $1,161,876.79 from the WAP shortly before he was terminated in connection with a reduction in force and that the only amounts which remained credited to his WAP account at termination represented unvested employer contributions. Plaintiff's argument that the WAP is not a "top hat" plan is irrelevant to whether Plaintiff is entitled to benefits under the Plan. The only relevance of top hat status is that it exempts the plan from ERISA's minimum vesting provisions. However, Plaintiff has not alleged in his complaint or Opening Brief that the WAP violates ERISA's minimum vesting provisions.

Even if this status were relevant, the WAP satisfies the requirements of a top hat plan. As such, even if subject to ERISA, it is exempt from many of the requirements imposed ERISA plans, including but not limited to the vesting, participation, and fiduciary mandates. For these reasons, as described more fully below, Defendants should be granted summary judgment on Plaintiff's claim for benefits under the WAP.

CASE NO. CV08-06090 FMC(AGRx)

REPLY MEMORANDUM ISO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

7579563_3

## II.   FACTUAL BACKGROUND

The factual background underlying this case, including Plaintiff's employment and participation history in the WAP and the relevant provisions of the WAP Plan Document are set forth at pages 2 through 8 of Defendants' Memorandum of Points and Authorities filed on July 22, 2009.  In the interest of brevity, those passages are incorporated by reference as if fully set forth herein.

## III.   STANDARD FOR SUMMARY JUDGMENT.

Summary judgment should be granted where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Plaintiff does not dispute that entry of summary judgment is appropriate in this case.  As set forth in Defendants' Memorandum In Support Of Its Motion for Partial Summary Judgment, and as amplified herein, entry of judgment in favor of Defendants and against Plaintiff is appropriate with respect to Plaintiff's claim for benefits under the WAP.

## IV.   ARGUMENT

### A.   The WAP's Status as a Top Hat Plan is Irrelevant to Plaintiff's Claim for Benefits.

Plaintiff's only reference to the potential relevance of the WAP's status as a top hat plan is found at page 7 of his Opening Brief where he asserts that non-top hat plans are subject to "a stringent set of statutory rules and attendant fiduciary duties under ERISA."  However, he does not identify which, if any, of those rules or duties were allegedly violated or implicated in the denial of Plaintiff's request for benefits, much less establish that the rule allegedly violated is one to which non-top hat plans are subject while top hat plans are not.  Top hat plans are exempt only from ERISA's participation, vesting, funding, and fiduciary provisions. *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000) (citing 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)).  The only such issue even indirectly alleged by Plaintiff is that he is entitled to benefits that had not yet vested as of the date of his

7579563_3

1  termination.  However, he does not allege in his complaint, or argue in his Opening

2  Brief, that the WAP violates ERISA's minimum vesting provisions.  Absent such an

3  argument, whether the WAP is a top hat plan bears no relevance to his claims, and

4  there is no need for the Court to decide this issue.

5      **B.     The WAP Satisfies The Requirements Of A Top Hat Plan.**

6          Even if the WAP's status as a top hat plan were relevant, Plaintiff's argument

7  fails because the WAP meets the requirements of a top hat plan.  ERISA defines a

8  top hat plan as a plan that is "unfunded and is maintained by an employer primarily

9  for the purpose of providing deferred compensation for a select group of

10  management or highly compensated employees."  29 U.S.C. § 1051(2).  Top hat

11  plans are exempt from ERISA's participation, vesting, funding, and fiduciary

12  provisions.  *Demery*, 216 F.3d at (citing 29 U.S.C. §§ 1051(2), 1081(a)(3),

13  1101(a)(1)).  Plaintiff advances a number of arguments he claims warrant a finding

14  that the WAP did not qualify as a top hat plan.  The undisputed facts, and the

15  applicable law, however, foreclose his contention.

16      **1.     The WAP Limits Participation to a Select Group.**

17          Plaintiff contends that the WAP is not a top hat plan, because (as Dain

18  Rauscher represented to the Department of Labor when submitting the WAP's top

19  hat exemption notice), approximately 1200 employees were participating in the

20  WAP, which is more than the number permissible to constitute a "select group."

21  Opening Brief at 2.  This argument is devoid of factual or legal support.

22          Initially, *Duggan v. Hobbs*, the very case on which Plaintiff relies, makes clear

23  that the relevant test is not *how many* employees participate in the plan but whether

24  eligibility "is limited to a small *percentage* of the employer's entire work force."

25  *Duggan v. Hobbs*, 99 F.3d 307, 312 (9th Cir. 1996) (emphasis added).  Moreover,

26  "there is no existing authority that establishes when a plan is too large to be deemed

27  select." *Alexander v. Brigham and Women's Physician's Organization, Inc.*, 467 F.

28  Supp. 2d 136, 143 (D. Mass. 2006) (internal quotation marks omitted) *aff'd* 513 F.3d

3

1    37 (1st Cir. 2008).  Plaintiff's only authority on the issue is *Darden v. Nationwide*

2    *Mut. Ins. Co.*, a district court opinion which merely holds that a group comprising

3    18.7% of the employer's total workforce was too large to be considered "select" for

4    purposes of the top hat exemption.  *Darden v. Nationwide Mut. Ins. Co.*, 717 F.

5    Supp. 388, 397 (E.D.N.C. 1989) *aff'd* 922 F.2d 203 (4th Cir. 1991) *rev'd on other*

6    *grounds*, 503 U.S. 318 (1992).  However, the Second Circuit subsequently held that

7    a plan which covered 15.34% was not too broad to qualify as a top hat plan, so long

8    as the other requirements of the test were satisfied. *Demery*, 216 F.3d at 289.  The

9    *Demery* court distinguished *Darden* on the grounds that the group there was both

10   larger and not limited to management or highly compensated employees.

11   Specifically, in *Darden*, the average income of participating employees was

12   comparable to that of other employees in the company at large.  *Id.* at 288.

13        Plaintiff has not made any showing regarding the *percentage* of RBC's

14   employees who are eligible to participate in the WAP, other than her argument that it

15   must be more than one percent of the company's workforce.  Opening Brief at 14:23-

16   15:3.  The argument is both speculative and irrelevant, since numerous courts have

17   found the "select group" requirement satisfied by much larger groups.  *See, e.g.,*

18   *Alexander v. Brigham and Women's Physician's Organization, Inc.*, 513 F.3d 37, 46

19   (1st Cir. 2008) (8.7% of company's workforce was a "select group"); *Belka v. Rowe*,

20   571 F. Supp. 1249, 1252 (D. Md. 1983) (up to 4.6%); *Duggan*, 99 F.3d at 312

21   (4.3%); *In re Battram*, 214 B.R. 621, 625 (Bankr. C.D. Cal. 1997) (3.1%).  In fact,

22   During Plan years 2003 through 2007, only 7.11 to 14.91% of RBC's workforce was

23   eligible to participate in the WAP. [Second Sikich Decl.[1] ¶ 6, p. 1:19-24.]  Thus, at

24   all relevant times, the group of WAP-eligible employees was below the threshold

25   which *Demery* found acceptable, and in several years, below the thresholds found

26

27   _____
     [1] "Second  Sikich Decl." refers to the Second Declaration of Gabriela Sikich
     In Support Of Defendants' Motion For Partial Summary Judgment On Plaintiff's
28   Claim For Benefits Under the Royal Bank of Canada US Wealth Accumulation Plan,
     filed concurrently herewith.

1    acceptable in other cases as well.  Accordingly, there is no support for Plaintiff's

2    argument that the WAP fails to qualify as a top hat plan because it is not limited to a

3    "select group."

4              **2.**    **The WAP Limits Participation to Management And/Or**

5                   **Highly-Compensated Employees.**

6        Plaintiff further argues that the WAP does not meet the requirements of a top

7    hat plan because participation was not limited to executives, but rather extended to

8    the company's sales force, in his words "the working nuts and bolts of the RBC

9    system." Opening Brief at 17:21-24.  Once again, however, Plaintiff misses the

10   mark.  A plan qualifies as a top hat plan if it is limited to a select group of

11   "management *or* highly compensated employees." 29 U.S.C. § 1051(2)  (emphasis

12   added).  Where the participants qualify as "highly compensated employees," the

13   positions they hold are irrelevant for determining whether the plan qualifies for top

14   hat status. *See Duggan*, 99 F.3d at 312 (top hat requirements satisfied where plaintiff

15   did not dispute that he was highly compensated); *Alexander*, 513 F.3d at 46 (plan for

16   highest earning surgeons in medical group was top hat plan).

17        It is beyond reasonable dispute that all of the employees who are (or were)

18   eligible to participate in the WAP were "highly compensated."  The average

19   earnings of all WAP-eligible employees from 2003 through 2007 were between

20   $269,156 and $345,307 per year.  [Second Sikich Decl. ¶ 7, p. 1:25-27.]  Thus, in

21   2003 through 2007, WAP-eligible employees earned at least 3 times as much as the

22   general workforce of WAP-participating subsidiaries, and in one year, earned 4.5

23   times as much. Id. ¶ 8, p. 1:28-2:3.  Accordingly, WAP-eligible employees were

24   highly compensated. *See Alexander*, 513 F.3d at 46 (plan contributors were highly

25   compensated where they earned five times the income of the workforce); *Demery*,

26   216 F.3d at 289 (plan-eligible employees were highly compensated where they

27   earned more than twice the average workforce earnings).

28

7579563_3

1    The fact that the WAP participants were highly compensated is further

2    supported by the definition of highly compensated taken by the Internal Revenue

3    Service during the relevant time period. *See Belka*, 571 F. Supp. at 1253

4    (considering IRS standard for "highly compensated" in determining that plan

5    participants were within a "select group"). In 2007, the Internal Revenue Service

6    (IRS) defined the Highly Compensated Employee Limitation ("HCE") under

7    §414(q)(1)(B) of the Internal Revenue Code of 1986 using an earnings threshold of

8    $100,000 per year. See IR-2008-118. The WAP-eligible employees have always

9    easily exceeded this standard.

10
11   **3.    Plaintiff's Assertion that WAP Participants Lacked**
         **Bargaining Power is Meritless.**

12   Plaintiff further contends that the WAP fails to qualify as a top hat plan

13   because WAP participants did not have the bargaining power to affect the terms and

14   conditions of the WAP. Open Br. 15:4-18:5. However, nothing in the statutory

15   definition of a top hat plan creates such a requirement. Indeed, Plaintiff's entire

16   argument rests on a single district court opinion from outside this circuit, *Carraba v.*

17   *Randalls Food Markets, Inc.*, 38 F. Supp. 2d 468 (N.D. Tex. 1999), which, in turn,

18   relies on an opinion letter from the Department of Labor stating *its* views as to

19   Congress' reasons for exempting top hat plans from many of ERISA's

20   requirements.[2] *See Carraba*, 38 F. Supp. 2d at 477. Such opinions hardly provide

21   authoritative grounds to depart from the plain language of the statute and add

22   additional requirements to those enacted by Congress. Not surprisingly, the *Carraba*

23   holding has come under heavy criticism. *See Alexander*, 513 F.3d at 46-48.

24

25   [2] Plaintiff incorrectly asserts that *Carraba* "relied heavily on the Ninth
     Circuit's reasoning in *Duggan*," suggesting that it was nothing more than a logical
26   extension of that opinion. Opening Brief at 15:20-22. In fact, *Carraba* does not
     even cite to *Duggan*. Moreover, while *Duggan* suggests that a participant's ability to
27   affect the terms and operation of the plan through negotiation may be a relevant
     factor in determining top hat status, it nowhere holds that such power is required.
28   Indeed, the *Duggan* court had no occasion to reach the issue, as it found that the
     plaintiff there did have such power. *Duggan*, 99 F.3d at 312-13.

REPLY MEMORANDUM ISO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

7579563_3

1        The *Alexander* court rejected *Carraba*'s (and Plaintiff's) position that a plan

2    does not qualify as a top hat plan unless its participants have bargaining power to

3    influence the terms and operation of the plan on multiple grounds.  First, the court

4    noted, the DOL opinion letter did not present itself as an interpretation of the

5    relevant statute or purport to define the requirements for top hat status under the

6    statute.  *Id.* at 47, 48.   Thus, by its own terms, it did not support the conclusion

7    which *Carraba* derived from it.  *Id.*   Second, neither the language of the statute nor

8    its legislative history "contains the slightest hint that courts would consider

9    employees' ability to bargain over the terms of their deferred compensation plans" in

10    determining top hat status.  *Id.* at 48.   To the contrary, the tests contained in the

11    statute seemed reasonably designed to effectuate the purpose ascribed to Congress by

12    the opinion letter.  *Id.* at 47.  For all the reasons, the *Alexander* court declined to

13    follow *Carraba*, as this Court should as well.  *Id.* at 47-48

14        Even if this Court rejects the better-reasoned opinion in *Alexander* and follows

15    *Carraba*, Plaintiff's argument would still fail because he provides no evidence to

16    support his assertion that WAP participants lacked bargaining power, arguing instead

17    that the fact of this lawsuit proves that *he* lacked such bargaining power.  However, it

18    could just as easily show that he did have power, but now regrets the deal that he

19    struck.  Since he offers no evidence to support his position, Plaintiff's argument

20    should be rejected.

21              **4.**    **The WAP Is Unfunded.**

22        On pages 18 through 20 of his Opening Brief, Plaintiff argues that the WAP is

23    not "unfunded" under ERISA, and that it therefore does not meet the definition of a

24    "top hat plan."  The lynchpin of Plaintiff's argument is that, "[a]s the WAP clearly

25    comprises Plaintiff's own contributions, RBC cannot claim that the WAP was

26    completely "unfunded' and thus top hat exempted."  Opening Brief at 19.   This

27    argument represents a material misrepresentation of the operation of the WAP and a

28    fundamental misunderstanding of the law.

CASE NO. CV08-06090 FMC(AGRx)

REPLY MEMORANDUM ISO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

7579563_3

1    ERISA does not define the circumstances under which a plan is "unfunded."
2  In examining that issue, the concept of funding a plan implies the existence of assets
3  held separately from the general assets of the employer.  A plan is unfunded where
4  there is no res (or property) separate from the general assets of the company.
5  *Dependahl v. Falstaff Brewing Co.*, 653 F.2d 1208, 1214 (8th Cir. 1981), cert.
6  denied, 454 U.S. 968 (1981).  See also *Belka*, 571 F. Supp. at 1251-52; DOL
7  Advisory Op. 81-11A (Jan. 15, 1981).  In this case, the undisputed evidence is that
8  the benefits under the WAP are paid from the general assets of the Company.
9  [Sikich Decl.,[3] ¶ 8, Exh. G, pp. 25 & 35-36 (2007 Plan Document §§ 2.4 & 8.2).]
10  Plaintiff has come forward with no evidence whatsoever of the existence of a
11  separate trust that would somehow cause the WAP to be considered funded under
12  ERISA.  Plaintiff's assertions to the contrary are meritless.

13    Furthermore, contrary to the implication Plaintiff asks the Court to draw,
14  Plaintiff did not contribute one red cent of his own money to the WAP.  What
15  Plaintiff and other participants did was agree, at a point before they became entitled
16  to payment, to opt to forego the future receipt of a portion of their compensation.
17  [Sikich Decl., ¶ 8, Ex. G, page 25, (2007 WAP Plan Document § 2.2)]  While
18  Plaintiff could have taken payment of these amounts, he chose instead to defer
19  receipt until a future date (hence the term "deferred compensation"), subject to a
20  potential return on investment in the interim.

21    This structure of deferred compensation is a well established model for top hat
22  plans. Top hat plans do not fail to be "unfunded" solely because their terms permit
23  employee-participants to elect to defer percentage of their compensation.  DOL
24  Advisory Op. 90-14A (May 8, 1990).  Plaintiff's assertion that the WAP is not a top
25  hat plan, because it is not unfunded, based on the fact that some of the balance in the

26

27  _____
28  [3] "Sikich Decl." refers to the Declaration of Gabriela Sikich In Support Of Defendants' Motion For Partial Summary Judgment On Plaintiff's Claim For Benefits Under the Royal Bank of Canada US Wealth Accumulation Plan, filed concurrently with Defendant's moving papers in support of this motion.

7579563_3

1   participants' accounts is derived from their deferred compensation is simply not the

2   law.  Defendants are entitled to judgment as a matter of law on this issue.

3       **C.**   **Plaintiff's Suggestion of a Conflict of Interest is Meritless.**

4       In his Opening Brief, Plaintiff insinuates the existence of some sort of conflict

5   of interest based on the administration of the WAP by the WAP Committee and

6   asserts that, as a result, "there were no checks and balances in place to ensure the just

7   enforcement of the WAP."  See Opening Brief at 22-23.  However, under ERISA's

8   statutory scheme, the "checks and balances" Plaintiff seeks are provided by the

9   judicial review of administrative determinations regarding benefits. *See Firestone*

10  *Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09 (1989) (explaining ERISA's

11  remedial provisions, including judicial review of adverse benefit determinations).

12  Thus, Plaintiff's argument that there should be "checks and balances" and RBC's

13  administration scheme is somehow deficient find no support in ERISA or the case

14  law interpreting it.

15      As explained in Defendant's Memorandum of Points and Authorities in

16  support of this motion, that review is conducted under an abuse of discretion

17  standard where, as here, the plan grants the Plan Administrator discretion to make

18  determinations regarding benefits.  Thus, the alleged conflict of interest is relevant

19  only insofar as it might impact the level of deference owed to that decision. *Abatie*

20  *v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968-9 (9th Cir. 2006)  In fact, there was

21  no conflict of interest here that would call for heightened scrutiny of the WAP

22  Committee's decision and, even if there was, that decision must still be affirmed

23  because no other interpretation of the WAP Plan provisions is possible.

24      Plaintiff is mistaken that the individuals who reviewed his claim for benefits

25  or his appeal had conflicting interests.  Under the terms of the WAP, Plaintiff's

26  benefits were payable by the Royal Bank of Canada because Plaintiff is a resident of

27  California. [Sikich Decl., ¶ 8 Ex. G, page 35 (2007 WAP Plan Document § 8.2(a)-

28  (b).] However, none the members of the WAP Committee who considered

7579563_3

1   Plaintiff's claim or appeal were employed by that entity.  [Second Sikich Decl. ¶ 9,

2   p. 2:4-13.]  Since there was no structural conflict of interest, Plaintiff must point to

3   other facts suggesting that the members of the WAP Committee were anything other

4   than disinterested, which he has not done, or that these conflicting interests

5   influenced their decision-making process.  To the contrary, as Defendants have

6   pointed out repeatedly, the decision to deny Plaintiff's claim is nothing more than a

7   straightforward application of the terms of the WAP.

8          In addition, even if Plaintiff could show that a conflict of interest existed and

9   affected the review of his claim, it would only mean that the Court would apply

10  heightened scrutiny to the WAP Committee's decision rejecting his claim.  *Abatie*,

11  458 F.3d at 968-9 (9th Cir. 2006)  However, given the clear terms of the WAP

12  regarding vesting and forfeiture, that decision must be upheld even under a *de novo*

13  standard of review.  Since the terms of the WAP permit only one conclusion, the

14  existence of any alleged conflict of interest is immaterial.

15          **D.    Plaintiff's Forfeitures Were Consistent with the Terms of the WAP.**

16          On pages 23 through 25 of his Opening Brief, Plaintiff argues that the WAP is

17  "completely silent" on the issue of vesting with respect to termination without cause,

18  and that this somehow renders the forfeiture of the unvested Company Contributions

19  in Plaintiff's account "wrongful."  Opening Brief at 24-25.   Plaintiff contends that a

20  critical issue in this case is whether "the WAP [Plan'] was set up so as to specifically

21  preclude benefit vesting and distributions to employees, like Plaintiff, who are

22  terminated without cause," asserting that the terms of the WAP are "completely

23  silent on the vesting and distribution of an employee's benefits when such an

24  employee is terminated without cause."  Opening Brief at 1.

25          This argument is specious.  The WAP Plan Document expressly provides that,

26  subject only to certain specifically enumerated exceptions, "all Company

27  Contributions and Mandatory Deferred Compensation that are not vested on the

28  participant's employment termination date shall be deemed forfeited, and such

                                                      10          CASE NO. CV08-06090 FMC(AGRx)

7579563_3

1    participant's account shall be appropriately reduced." [Sikich Decl., ¶ 8,  Exh. G, p.

2    29 (2007 WAP Plan Document § 4.5).]  Those exceptions are (i) termination on

3    account of death, disability or retirement, (ii) termination for cause, and (iii)

4    termination due to restructuring.  [Sikich Dec. ¶ 8, Ex. G, p. 28-29 (2007 WAP Plan

5    Document §§ 4.2 (i) (ii)) & 4.4).]  While the terms of the WAP impose more

6    stringent provisions regarding vesting in situations in which the participant's

7    termination is for cause, the general rule is that unvested Company Contributions are

8    forfeited in the event of termination.  [Sikich Decl., ¶ 8,  Exh. G, p. 29 (2007 WAP

9    Plan Document § 4.5).]  The undisputed facts in this case are that the unvested

10    Company Contributions in Plaintiff's account were forfeited in accordance with the

11    terms of the WAP upon his termination.  Plaintiff's claim for a distribution of those

12    amounts therefore fails as a matter of law.

13       Plaintiff's quotation of the relevant terms of the WAP is inaccurate in the

14    extreme.  At pages 7 and 8 of his Opening Brief, Plaintiff includes a long block

15    quotation not from the WAP plan document in effect at the time he presented his

16    claim for benefits, but a Summary Description and Prospectus from 2003.[4]  Even

17    setting aside whether this document is properly part of the administrative record, it

18    does far more to support Defendants' position than Plaintiff's.  Indeed, Plaintiff has

19    so altered and misquoted the text as to create the impression that it supports his

20    position when, in fact, it refutes it.  While the first paragraph of the block quotation

21    accurately repeats the text of the document, the very next paragraph of the text has

22    been omitted without any ellipses in the block quotation to signal its omission.  That

23    paragraph, moreover, directly contradicts the argument for which Plaintiff cites the

24    document, stating:

25

26

27         [4] The relevant document is attached to Plaintiff's <u>Amended</u> Supplement To
The Administrative Record, filed on July 31, 2009.  Plaintiff cites this document as

28    "SAA 62," which, he explains refers to the page bearing bates-stamp no. 62 in the
"Plaintiff's Supplement to the Administrative Record."  *See* Opening Brief at p.
4:23-26 (footnote 6).

1
2     **Distributions that are made prior to the date on which Matching**
3     **Contributions, Mandatory Deferred Compensation or Special**
4     **Deferred Compensation are vested will, in general, result in the**
5     **forfeiture of such contributions.**
6     [Pl.'s Amended Suppl. To The Admin. Record, [dkt. # 37], filed July 31,
7     2009, at 00062 (2003 Summary Description and Prospectus p. 7).]
8 The next two paragraphs of the block quotation repeat some of the text of the
9 following paragraph in the document, but again language has been added or omitted
10 without proper use of ellipses or brackets to signal alterations. [*Compare* Opening
11 Brief at 8:3-9 *with* Pl.'s Amended Suppl. To The Admin. Record, [dkt. # 37], filed
12 July 31, 2009, at 00062 (2003 Summary Description and Prospectus p. 7).]
13 Plaintiff's brazen misuse of this document is worthy of judicial admonition, if not
14 sanction.
15     Plaintiff's citation to the distribution provisions of the WAP Plan Document is
16 only slightly less misleading. At page 4 of his Opening Brief, Plaintiff points out
17 that the WAP provides special rules for distribution upon separation. Opening Brief
18 4:3-8. What Plaintiff glosses over, however, is that it is the "Account Balance"
19 which is subject to distribution. And Section 4.5 of the WAP provides in
20 unambiguous language that "[e]xcept as otherwise specifically set forth herein, all
21 Company Contributions . . . that are not vested on the participant's employment
22 termination date shall be deemed forfeited, *and such participant's account shall be*
23 *appropriately reduced.*" [Sikich Decl., ¶ 8, Exh. G , p. 29 (2007 WAP Plan
24 Document § 4.5).] Thus, after termination, any unvested Company Contributions are
25 no longer included in the "Account Balance" and the distribution provisions in
26 Section 5 of the WAP have no bearing on the treatment of these forfeited amounts.
27
28

7579563_3

E.     **The Determination that Plaintiff's Termination Resulted from a Restructuring Benefitted Plaintiff.**

At page 22 of his Opening Brief, Plaintiff attacks the fact that Plaintiff's termination was deemed by the Committee to have been the result of a restructuring.[5] Plaintiff points out that Section 4.4 of the 2007 WAP provides:

> In the event a participant ceases to be employed by the Company, any Participating Subsidiary and any other affiliate of the Company due to an organizational restructuring (as determined in the sole discretion of the Committee), all Mandatory Deferred Compensation in such participant's account shall become vested, but all unvested Company Contributions shall be forfeited.

[Sikich Dec. ¶ 8, Ex. G, p. 29 (2007 WAP Plan Document § 4.4).]

As Plaintiff notes, the Committee is vested with discretion to make the determination as to whether a participant's termination is the result of a restructuring. However Plaintiff has not shown that the Committee abused its discretion in characterizing the reduction in force which eliminated his position as a restructuring, only that he disagrees with that interpretation of the plan language.  The relevant inquiry, however, is whether the Committee's interpretation was so unreasonable as to amount to an abuse of discretion. *Firestone*, 489 U.S. at 114-15.  Short of that level, the Court must defer to the Committee's interpretation of the WAP Plan Document.

Moreover, even if Plaintiff were correct that section 4.4 does not apply to his termination, it would make no difference, since section 4.4 is more lenient than the general forfeiture provision in section 4.5.  Under section 4.4, any Mandatory Deferred Compensation in his account would have vested (it would not have

---

[5] Plaintiff inaccurately states that there is no record that the WAP Committee actually met and considered his initial request for accelerated vesting which he presented in November 2007.  In fact, the Committee considered and rejected the claim at its meeting on December 7, 2007, as reflected in the agenda of that meeting and the minutes entered subsequently.  These documents are attached to the Sikich Declaration filed on July 22, 2009 as Exhibits K and L, respectively.

1  otherwise) and only Company Contributions would be forfeited. [Sikich Dec. ¶ 8,

2  Ex. G, p. 29 (2007 WAP Plan Document § 4.4).]  However, the only amounts

3  remaining in Plaintiff's WAP account at the time of his termination were unvested

4  Company Contributions, which are forfeited upon termination under both sections

5  4.4 and 4.5.  Thus, whichever section governs, Plaintiff was not entitled to vesting of

6  the amounts he seeks by this lawsuit.

7        **F.**    **The Absence of an Integration Clause is Irrelevant.**

8            Finally, at page 25 of his Opening Brief, Plaintiff argues that the

9  absence of an integration clause means that the terms of the WAP do not represent

10  the entire agreement of the parties.  Opening Brief at 25.  This argument is absurd.

11  The interpretation of the terms of the Plan is vested in sole discretionary authority of

12  the WAP Committee.  [Sikich Decl., ¶ 8, Exh. G, p. 34 (2007 WAP Plan Document

13  § 7.1).]  The ability to amend the terms of that document is expressly limited to

14  action by either the Committee or the Board of Directors.  Plaintiff provides no

15  factual support for any potential modification of the terms of the WAP Plan

16  documents with respect to his participation therein.

17            Moreover, the only support Plaintiff provides for his argument consists of two

18  unreported decisions of the Ninth Circuit.  Such citation is, of course, improper for

19  the purpose for which Plaintiff offers these authorities.  See 9th Cir. R. 36.3.

20  Further, at least on of those relies on California law.  See *Satchwell v. Long John*

21  *Silvers, Inc.*, 1992 U.S. App. LEXIS 9519 *5 n.1 (9th Cir. April 9, 1992).  Subject to

22  certain exceptions not applicable in this case, Section 514(a) of ERISA provides that

23  "the provisions of [Title I and Title IV of ERISA] shall supersede any and all State

24  laws insofar as they may now or hereafter relate to any employee benefit plan." 29

25  U.S.C. § 1144(a).  Plaintiff's reliance on a state-law contract theory to support his

26  claim is contrary to the well-settled law in this area and should be rejected.

27  Defendants are entitled to judgment as a matter of law on Plaintiff's claim for

28  additional benefits under the WAP.

**V.    CONCLUSION**

Plaintiff's Opening Brief focuses on irrelevant arguments attacking, generally, the WAP and its administration.  Plaintiff fails to explain anywhere in his brief how these arguments relate to his claim for benefits under the Plan.  This may be because he must acknowledge that under the clear language of the Plan, he is not entitled to the benefits he claims.

Based on the provisions of the WAP, and the Administrative Record, it is clear that the Committee did not abuse its discretion in denying Plaintiff's claim for benefits.  Defendants are entitled to judgment as a matter of law.

DATED:  August 5, 2009                    OGLETREE, DEAKINS, NASH, SMOAK
                                          & STEWART, P.C.


                                          By: _____/s/ Linda Claxton_____
                                                      Linda Claxton
                                          Attorneys for Defendants
                                          ROYAL BANK OF CANADA, RBC
                                          CAPITAL MARKETS CORPORATION
                                          (incorrectly named and sued as "RBC
                                          WEALTH MANAGEMENT COMPANY,
                                          formerly RBC DAIN RAUSCHER,
                                          INC."), and THE ROYAL BANK OF
                                          CANADA US WEALTH
                                          ACCUMULATION PLAN

7579563_3

1  LINDA CLAXTON, State Bar No. 125729
2  linda.claxton@ogletreedeakins.com
   CHRISTOPHER W. DECKER, State Bar No. 229426
3  christopher.decker@ogletreedeakins.com
4  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
5  633 West Fifth Street, 53rd Floor
6  Los Angeles, California 90071
   Telephone:   (213) 239-9800
7  Facsimile:   (213) 239-9045

8  Attorneys for Defendants
9  ROYAL BANK OF CANADA, RBC CAPITAL MARKETS
   CORPORATION (incorrectly named and sued as "RBC WEALTH
10 MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER,
   INC."), and THE ROYAL BANK OF CANADA US WEALTH
11 ACCUMULATION PLAN

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16 STEVEN BENHAYON,                     Case No. CV08-06090 FMC(AGRx)

17            Plaintiff,               **DEFENDANTS' SUPPLEMENTAL
                                       REPLY BRIEF REGARDING
18       v.                            PLAINTIFF'S CLAIM FOR
                                       BENEFITS UNDER THE  ROYAL
19 ROYAL BANK OF CANADA, a             BANK OF CANADA US WEALTH
   Canadian company, business form    ACCUMULATION PLAN**
20 unknown; RBC WEALTH
   MANAGEMENT COMPANY, formerly        DJ:        Florence-Marie Cooper
21 RBC DAIN RAUSCHER, INC.,            Courtroom: (Roybal) 750
   business form unknown; THE ROYAL    MJ:        Alicia G. Rosenberg
22 BANK OF CANADA US WEALTH            Courtroom: (Spring) 23
   ACCUMULATION PLAN, formerly
23 known as RBC Dain Rauscher Wealth   Discovery Cut-Off:  September 30, 2009
   Accumulation Plan; and, DOES 1      Pre-trial Conference: January 25, 2010
24 through 20,                         Trial:               February 16, 2010

25            Defendants.

26                                      ┌─────────────────────┐
                                        │   Plaintiff's Supp.  │
27                                      │      Exh. 32         │
                                        └─────────────────────┘
28

7730619_2

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................. I

I.    PRELIMINARY STATEMENT ...................................................................1

II.   DEFENDANTS' STYLED THEIR OPENING BRIEF AS A MOTION
      FOR SUMMARY JUDGMENT OUT OF AN ABUNDANCE OF
      CAUTION AND TO AVOID ANY PREJUDICE TO PLAINTIFF..............1

III.  THE FURTHER DISCOVERY CONDUCTED BY PLAINTIFF
      AFTER THIS COURT'S AUGUST 10, 2009 ORDER DOES NOT
      AFFECT THE COURT'S RULING ON THE ERISA PORTION OF
      THE CASE. ..............................................................................................3

IV.   THE COURT SHOULD DISREGARD PLAINTIFF'S OBJECTIONS
      TO THE SECOND DECLARATION OF GABRIELA SIKICH...................6

V.    CONCURRENTLY HEREWITH, DEFENDANTS ARE FILING AN
      AMENDED SECOND DECLARATION OF GABRIELA SIKICH TO
      CORRECT A COMPUTATIONAL ERROR IN THE DOCUMENT
      PREVIOUSLY FILED WITH THE COURT. ...................................................8

VI.   CONCLUSION ........................................................................................8

7730619_2

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abatie v. Alta Life & Health Ins. Co.,*
    458 F.3d 955 (9th Cir. 2006) ...............................................................4, 5

*Aramony v. United Way Replacement Benefit Plan,*
    191 F.3d 140 (2d. Cir. 1999) ...................................................................4

*Carr v. First Nationwide Bank,*
    816 F.Supp. 1476 .....................................................................................4

*Kearney v. Standard Ins. Co.,*
    175 F.3d 1084 (9th Cir. 1999) ..................................................................3

*Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan,*
    ___ U.S. ___ 129 S.Ct. 865 (2009) ..................................................3, 4, 6

*Montour v. Hartford Life & Accident Ins. Co.,*
    ___ F.3d ___, 2009 WL 2914516 ..............................................................5

*Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan,*
    572 F.3d 727 (9th Cir. 2009) ................................................................5, 6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56 ............................................................2

Local Rules 56-1-56-4 .................................................................................2

## I.    PRELIMINARY STATEMENT

In accordance with this Court's August 10, 2009 Order On Plaintiff's Ex Parte Application And Amended Briefing Schedule, Defendants Royal Bank of Canada, RBC Capital Markets Corporation (incorrectly named and sued as "RBC Wealth Management Company, formerly RBC Dain Rauscher, Inc.."), and The Royal Bank of Canada US Wealth Accumulation Plan (collectively "Defendants") hereby submit their Supplemental Reply Brief in support of their Motion for Partial Summary Judgment On Plaintiff's Claim For Benefits Under The Royal Bank of Canada US Wealth Accumulation Plan (the "Motion").

Defendants previously filed a reply brief in support the Motion on August 5, 2009.  After that brief was filed, this Court issued its August 10, 2009 Order, which amended the briefing schedule for the ERISA portion of the case and provided that Defendants' reply brief would be due September 28, 2009, rather than August 5, 2009, as previously set by the Court.

Defendants' reply brief filed on August 5, 2009 addresses those matters raised in Plaintiff's Opening Brief filed on July 22, 2009.  To avoid needlessly expanding the record, this brief will be limited to addressing developments in this litigation since that brief was filed which may be relevant to the Court's decision on the Motion.  Defendants respectfully refer the Court to their prior submissions in support of the Motion for all matters not addressed herein.

## II.    DEFENDANTS' STYLED THEIR OPENING BRIEF AS A MOTION FOR SUMMARY JUDGMENT OUT OF AN ABUNDANCE OF CAUTION AND TO AVOID ANY PREJUDICE TO PLAINTIFF.

After Defendants filed their reply brief, this Court issued its August 10, 2009 Order stating that Defendants had ignored the Court's May 4, 2009 Minute Order by filing a motion for summary judgment rather than an Opening Brief on the question of ERISA benefits.  Defendants never intended to disregard this Court's directions and were in fact attempting to comply with those directions in good faith.  Based on the May 4, 2009 Minute Order, Defendants understood that the Court had requested

1

CASE NO. CV08-06090 FMC(AGRx)

DEFENDANTS' SUPPLEMENTAL REPLY BRIEF REGARDING PLAINTIFF'S CLAIM FOR BENEFITS UNDER THE ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN

7730619_2

1   briefing from the parties which would resolve "the ERISA portion of the case."

2   Defendants further believed that, if that portion of the case were resolved in their

3   favor, they would be entitled to judgment on Plaintiff's claim for benefits under the

4   Royal Bank of Canada U.S. Wealth Accumulation Plan (the "WAP") and wished to

5   make an affirmative request for such relief.  Arguably then, Defendants' opening

6   brief would be, in substance, a dispositive motion regarding that claim to which the

7   requirements of Federal Rule of Civil Procedure 56 and Local Rules 56-1 through

8   56-4 might conceivably apply.  Hence, out of an abundance of caution, and to avoid

9   any possible waiver of its right to judgment should the Court resolve the ERISA

10   portion of the case in its favor, Defendants styled their opening brief as a motion for

11   partial summary judgment and submitted the supporting documents required for the

12   Court to rule on such a motion.

13   Defendants viewed this approach as a conservative one which could not

14   possibly prejudice Plaintiff.  Styling their opening brief as a motion for partial

15   summary judgment would not require Plaintiff to meet any unanticipated legal issues

16   or evidence, since the Court had already announced that these briefs would fully

17   resolve the merits of Plaintiff's claim for benefits under the WAP.  Moreover, given

18   that these briefs were intended to resolve the ERISA portion of the case, Plaintiff

19   was already required to make the necessary showing to prevail on the merits, which

20   is more than the showing that would be required to defeat a motion for summary

21   judgment.  Additionally, since Plaintiff had already enjoyed more than four months

22   to conduct discovery, he had more than sufficient opportunity to develop whatever

23   evidence he felt he needed to make this showing.  Finally, the stipulated briefing

24   schedule allowed Plaintiff two weeks to prepare his responsive brief, more than the

25   time provided under the Federal Rules of Civil Procedure or the Local Rules of this

26   Court to oppose a motion for summary judgment.  Consequently, a motion for partial

27   summary judgment would not impose any burdens on Plaintiff that he was not

28   already required to meet and he would not be unduly prejudiced if Defendants

DEFENDANTS' SUPPLEMENTAL REPLY BRIEF REGARDING PLAINTIFF'S CLAIM FOR BENEFITS
UNDER THE  ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN

7730619_2

1  proceeded in this manner.

2      Based on the Court's August 10, 2009 Order, Defendants now understand that

3  the Court wished to resolve the ERISA portion of the case by way of briefing, but

4  without resort to the usual procedures for obtaining summary judgment. Defendants

5  apologize for any confusion they have created by their earlier misunderstanding and

6  have complied with the provisions of that Order. Moreover, Defendants have no

7  objection should the Court wish to conduct a court trial of Plaintiff's claim for

8  benefits under the WAP based on the existing court record, in the manner provided

9  in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999).

10  **III.   THE FURTHER DISCOVERY CONDUCTED BY PLAINTIFF AFTER**
11  **THIS COURT'S AUGUST 10, 2009 ORDER DOES NOT AFFECT THE**
    **COURT'S RULING ON THE ERISA PORTION OF THE CASE.**

12      In its August 10, 2009 Order, this Court granted Plaintiff leave to take the

13  deposition of Gabriela Sikich. Defendants complied and the deposition was

14  completed on August 28, 2009. At the deposition, Defendants also produced 290

15  pages of documents at the deposition, in response to various Requests for Production

16  included with the Notice of Deposition. During this period, Defendants also

17  responded to Plaintiff's Special Interrogatories (Set Two) and provided Plaintiff with

18  unredacted versions of 43 pages previously produced in redacted form. No other

19  discovery has taken place since the Court issued its August 10, 2009 Order.

20      While Plaintiff may offer some of the testimony, documents and/or responses

21  obtained from this discovery for the Court's consideration, none of it has any bearing

22  on the issues the Court must decide at this juncture. The ERISA portion of this case

23  is a straight-forward claim by Plaintiff that he was improperly denied benefits under

24  the WAP, which both sides have agreed to treat as a pension plan subject to ERISA

25  for purposes of this Motion. Whether an employee is entitled to benefits under an

26  ERISA plan "stands or falls by the terms of the plan." *Kennedy v. Plan Adm'r for*

27  *DuPont Sav. and Inv. Plan,* ___ U.S. ____129 S.Ct. 865, 875 (2009) (internal

28  quotation marks and citation omitted). Thus, if the provisions of the WAP are

7730619_2

1   unambiguous, which they are, then Plaintiff's claim must be rejected, and any

2   argument that those terms are somehow unreasonable or were set up "in bad faith" is

3   simply irrelevant. *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140,

4   149 (2d. Cir. 1999) ("As a general matter, unambiguous language in an ERISA plan

5   must be interpreted and enforced in accordance with its plain meaning"); *Carr v.*

6   *First Nationwide Bank*, 816 F.Supp. 1476, 1493 (N.D.Cal.,1993 (where plan

7   language is unambiguous, its natural meaning is conclusive).  Specifically, any

8   appeal to fiduciary duties misses the mark, since an ERISA plan administrator is

9   bound to pay benefits in accordance with the terms of the plan, and any departure

10  from those terms would constitute a breach the administrator's statutory duties.

11  *Kennedy*, ____ U.S. ____,129 S.Ct. at 875.  Hence, to adjudicate Plaintiff's claim,

12  this Court need only review the terms of the WAP plan document (specifically

13  Section 4), which is already in evidence, and apply them to the undisputed facts

14  concerning the date of Plaintiff's termination and the vested status of his WAP

15  benefits on that date.  Any further evidence Plaintiff may offer cannot change the

16  clear result that the benefits he seeks were forfeited because his employment with

17  Defendants ended before those benefits vested.

18          Any further evidence Plaintiff may offer is unavailing even if the Court finds

19  that the relevant terms of the WAP are ambiguous or that factual determinations are

20  required before those terms can be applied to Plaintiff's circumstances.  Since the

21  WAP confers discretion on the WAP Committee to administer claims – a point

22  Plaintiff does not dispute – its decision on these matters is reviewable in court only

23  for an abuse of discretion. *Abatie v. Alta Life & Health Ins. Co.*, 458 F.3d 955, 965

24  (9th Cir. 2006).  Such review, moreover, is limited to the administrative record which

25  the plan administrator had before it at the time the decision was made. *Id.* at 970.

26  That record has already been introduced into evidence and authenticated, and

27  nothing obtained in subsequent discovery alters its scope.  Thus, any additional

28  evidence Plaintiff may offer in connection with his reply brief would be evidence

7730619_2

1  that was not part of the administrative record, which this Court cannot consider to

2  determine Plaintiff's entitlement to the benefit he seeks.  *Id.*

3       Nor can Plaintiff escape the bar on evidence outside the administrative record

4  by suggesting that the evidence he has obtained is somehow relevant to demonstrate

5  that the WAP Committee acted under a conflict of interest.  While a court may

6  consider evidence outside the administrative record for this limited purpose, *see id.*,

7  the goal of such inquiry is only to determine "the degree to which the conflict

8  appears improperly to have influenced a plan administrator's decision."  *Montour v.*

9  *Hartford Life & Accident Ins. Co.*, ___ F.3d ___, 2009 WL 2914516 at *5.  Here,

10  however, there is no evidence of any such improper influence.  To the contrary, Ms.

11  Sikich testified both in her declaration submitted with Defendants' reply papers and

12  at deposition that none of the members of the WAP Committee responsible for

13  deciding Plaintiff's entitlement to benefits under the WAP (i) were employed by the

14  entity responsible for paying those benefits, or (ii) were aware of the financial

15  consequences of their decision.  (Second Decl. of G. Sikich In Support Of

16  Defendants' Motion for Partial Summary Judgment [dkt. # 39-2] at 2:4-13; Sikich

17  Depo.[1] at 45:17-47:22, 59:9-60:20 & 61:24-63:7.)  Discovery, moreover, has not

18  revealed any evidence that these decision-makers failed to follow established

19  procedures in considering Plaintiff's claim, disregarded or downplayed materials

20  submitted by Plaintiff, or gave undue weight to opposing evidence.  Thus, there are

21  no facts or circumstances suggesting that a conflict of interest tainted the

22  administrative decision-making process and no reason to conclude that an abuse of

23  discretion occurred.

24       Finally, any further evidence Plaintiff may offer pertaining to the WAP's top-

25  hat status is irrelevant since the same framework applies to the judicial review of a

26  claim for benefits "for all covered plans, top hat or otherwise."  *Sznewajs v. U.S.*

27  _____

[1] The relevant excerpts of the Deposition of Gabriela Sikich are attached as
28  Exhibit A to the Second Declaration of Christopher W. Decker In Support Of
Defendants' Motion For Partial Summary Judgment, filed concurrently herewith.

1    *Bancorp Amended and Restated Supplemental Benefits Plan*, 572 F.3d 727, 734 (9th

2    Cir. 2009).  Specifically, a participant's entitlement to benefits is determined solely

3    by the terms of the plan document and the plan administrator's decision is

4    reviewable only for an abuse of discretion.  *Id.* at passim.  Indeed, the only difference

5    between the two types of plans which Plaintiff has suggested may affect the outcome

6    of this litigation is that the administrators of ERISA plans (other than top-hat plans)

7    are subject to ERISA fiduciary duty rules.  However, as explained above, that

8    difference is immaterial here, since, in reviewing a claim for benefits, ERISA plan

9    administrators must exercise their fiduciary duties *in accordance with the terms of*

10   *the plan document.  See, e.g., Kennedy*, ___ U.S. ____,129 S.Ct. at 875.

11   Accordingly, in this instance, the analysis of Plaintiff's claim for benefits is the same

12   regardless of whether the WAP is a top-hat plan or not, and the Court need not even

13   resolve whether the WAP falls within the top-hat plan exemption.

14   **IV.   THE COURT SHOULD DISREGARD PLAINTIFF'S OBJECTIONS TO**
     **THE SECOND DECLARATION OF GABRIELA SIKICH.**

15           The Court's briefing schedule for the ERISA portion of the case provided that

16   the parties would submit *simultaneous* opening and reply briefs, which necessarily

17   forecloses either side from responding to the other's second submission.

18   Nonetheless, after Defendants filed their reply papers on August 5, 2009, which

19   included the Second Declaration of Gabriela Sikich In Support Of Defendant's

20   Motion For Partial Summary Judgment, Plaintiff filed evidentiary objections to that

21   declaration.  This Court should disregard the objections since they exceed the scope

22   of the briefing requested by the Court.

23           In any event, Plaintiff's objections are without merit.  Plaintiff objects that Ms.

24   Sikich is "wholly unqualified to render any testimony as to the administration,

25   management, or operation of the WAP Committee" because she is not a member of

26   that committee.  (Pl.'s Obj. to Second Decl. of G. Sikich [dkt. # 41] at 2:14-2:28.]

27   However, Ms. Sikich does not testify to any of these matters in her Second

28

6                CASE NO. CV08-06090 FMC(AGRx)

7730619_2

1   Declaration, but only provides information regarding the percentage of Defendants'

2   workforce eligible to participate in the WAP, the average compensation of those

3   eligible to participate and Defendant's workforce generally, and the membership of

4   the WAP Committee.  She further testifies in her declaration that this information is

5   based on her own personal knowledge or her review of Defendants' business records,

6   establishing the necessary foundation for that testimony and an exception to the

7   hearsay rule.  (Second Decl. of G. Sikich [dkt. # 39-2] at 1:5-8.)

8        Plaintiff further objects to paragraphs 6-8 of the Ms. Sikich's Second

9   Declaration on the grounds that her testimony regarding the contents of Defendants'

10  business records constitutes hearsay, violates the best evidence rule and is given

11  without adequate personal knowledge.  However, Ms. Sikich is not attempting to

12  establish the contents of those records, but is rather relying on them to establish

13  certain facts regarding the percentage of employees eligible to participate in the

14  WAP, their average compensation, and the average compensation of Defendants'

15  workforce generally.  Since those business records qualify for an exception to the

16  hearsay rule, Ms. Sikich may rely on them to establish the facts which they describe.

17  Her personal knowledge of the contents of these records is provided by her own

18  testimony in the declaration.  (Second Decl. of G. Sikich [dkt. # 39-2] at 1:12-18.)

19       Finally, Plaintiff objects that Ms. Sikich's Second Declaration improperly

20  introduces new evidence not presented at the time of Defendant's opening brief.

21  However, the facts in Ms. Sikich's Second Declaration respond directly to the

22  arguments advanced by Plaintiff in his opening brief, specifically that (i) the WAP is

23  not a top-hat plan because participation is not limited to a select group of

24  management or highly compensated employees, and (ii) the members of the WAP

25  Committee who decided Plaintiff's claim for benefits had a financial incentive to

26  deny that claim.  Accordingly, the declaration is proper as a rebuttal of the evidence

27  offered by Plaintiff in connection with his opening brief.

28

7730619_2

**V.   CONCURRENTLY HEREWITH, DEFENDANTS ARE FILING AN AMENDED SECOND DECLARATION OF GABRIELA SIKICH TO CORRECT A COMPUTATIONAL ERROR IN THE DOCUMENT PREVIOUSLY FILED WITH THE COURT.**

After completing their filing on August 5, 2009, Defendants became aware that the Second Declaration of Gabriela Sikich filed concurrently with Defendants' reply papers contained a computational error.  Specifically, the average annual compensation of WAP-eligible employees in WAP plan years 2003 through 2007 had been understated.  The corrected numbers are provided in the Amended Second Declaration of Gabriela Sikich In Support Of Defendants' Motion For Partial Summary Judgment On Plaintiff's Claim For Benefits Under The Royal Bank Of Canada U.S. Wealth Accumulation Plan, which is being filed concurrently herewith.

In its reply papers, Defendants relied on the incorrect data only to support their argument that WAP participants qualify as "highly-compensated employees" because they earn at least twice the average for Defendants' employees generally and in excess of $100,000 per year.  (Defs.' Reply Memo. [dkt. # 39] at 5:17-6:9.)  Since this is all the more true based on the corrected data, the error in the data previously provided is not material.

Defendants served the Amended Second Declaration of Gabriela Sikich on Plaintiff on August 25, 2009, in advance of the deposition of Ms. Sikich.  (See Amended Second Declaration of G. Sikich, filed concurrently herewith, at 2.)  Thus, Plaintiff has had a full opportunity to inspect the amended declaration and examine Ms. Sikich regarding its contents.  Consequently, Plaintiff has not been prejudiced by the error or subsequent correction.

**VI.   CONCLUSION**

For all foregoing reasons, in addition to those set forth in the papers previously filed by Defendants on July 22, 2009 and August 5, 2009, this Court should adjudicate Plaintiff's claim for benefits under the WAP in favor of Defendants and enter judgment accordingly.

DEFENDANTS' SUPPLEMENTAL REPLY BRIEF REGARDING PLAINTIFF'S CLAIM FOR BENEFITS UNDER THE ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN

7730619_2

1  DATED:  September 28, 2009          OGLETREE, DEAKINS, NASH, SMOAK
2                                      & STEWART, P.C.

3

4
                                       By:    /s/ Christopher W. Decker
5                                             Christopher W. Decker
6                                      Attorneys for Defendants
                                       ROYAL BANK OF CANADA, RBC
7                                      CAPITAL MARKETS CORPORATION
                                       (incorrectly named and sued as "RBC
8                                      WEALTH MANAGEMENT COMPANY,
                                       formerly RBC DAIN RAUSCHER,
9                                      INC."), and THE ROYAL BANK OF
                                       CANADA US WEALTH
10                                     ACCUMULATION PLAN

11

12

13  7730619.2 (OGLETREE)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7730619_2

1   LINDA CLAXTON, State Bar No. 125729
    linda.claxton@ogletreedeakins.com
2   CHRISTOPHER W. DECKER, State Bar No. 229426
    christopher.decker@ogletreedeakins.com
3   OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
4   633 West Fifth Street, 53rd Floor
    Los Angeles, California 90071
5   Telephone:  (213) 239-9800
    Facsimile:  (213) 239-9045
6
    Attorneys for Defendants
7   ROYAL BANK OF CANADA, RBC CAPITAL MARKETS
    CORPORATION (incorrectly named and sued as "RBC WEALTH
8   MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER,
    INC."), and THE ROYAL BANK OF CANADA US WEALTH
9   ACCUMULATION PLAN

10

11                    UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  STEVEN BENHAYON, | Case No. CV08-06090 FMC(AGRx) |
| 15               Plaintiff, | **SECOND DECLARATION OF GABRIELA SIKICH  IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR BENEFITS UNDER THE  ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN** |
| 16          v. | |
| 17  ROYAL BANK OF CANADA, a Canadian company, business form | |
| 18  unknown; RBC WEALTH MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER, INC., | |
| 19  business form unknown; THE ROYAL BANK OF CANADA US WEALTH | |
| 20  ACCUMULATION PLAN, formerly known as RBC Dain Rauscher Wealth | DJ:          Florence-Marie Cooper Courtroom: (Roybal) 750 |
| 21  Accumulation Plan; and, DOES 1 through 20, | MJ:          Alicia G. Rosenberg Courtroom: (Spring) 23 |
| 22               Defendants. | Trial Date: February 16, 2010 |
| 23 | |

24

25

26

27

28

# DECLARATION OF GABRIELA SIKICH

GABRIELA SIKICH declares:

1.    I am the US Defined Contribution Plan Manager for RBC Capital Markets Corporation, a defendant in this action.

2.    The facts stated in this declaration are true of my own knowledge or my review of the business records of the Royal Bank of Canada and/or its subsidiaries.

3.    If called as a witness, I could and would competently testify as to the truthfulness of the facts contained herein.

4.    From at least 2002 to the present, the Royal Bank of Canada has sponsored the Royal Bank of Canada US Wealth Accumulation Plan ("the WAP Plan").

5.    I am familiar with and have access to business records regarding the terms of the WAP, eligibility requirements for various employees to participate in the WAP, the number of employees who were eligible to participate in the WAP, and the election of certain benefits under the WAP. I also have access to business records reflecting the compensation earned by various employees of WAP-participating entities (which, at present, are RBC Capital Markets Corporation, RBC Bank, and RBC Insurance).

6.    Only a small percentage of the employees of WAP-participating entities are eligible to participate in the WAP. In 2003, only 7.11% of those employees were WAP-eligible. In 2004, only 13.08% of those employees were WAP-eligible. In 2005, only 13.06% of those employees were WAP-eligible. In 2006, only 14.40% of those employees were WAP-eligible. And in 2007, only 14.91% of those employees were WAP-eligible.

7.    The average annual compensation of WAP-eligible employees in WAP plan years 2003 through 2007 was as follows:  $269,156 in 2003; $310,908 in 2004; $315,494 in 2005; $327,348 in 2006; and $345,030 in 2007.

8.    The average annual compensation of the workforce of all

1  WAP¬participating entities in Plan years 2003 through 2007 was as follows:
2  $75,132 in 2003; $79,758 in 2004; $83,900 in 2005; $104,603 in 2006; and $106,416
3  in 2007.

4       9.    I am familiar with the membership of the WAP Committee during
5  calendar years 2007 and 2008.  The members of the WAP Committee present at the
6  December 7, 2007 meeting, and who participated in the consideration of the Mr.
7  Benhayon's request for accelerated vesting (following which the request was denied)
8  were:  Dan Szabo, Mary Zimmer, Jim Chapman, and Lisa Sorenson.  The same four
9  individuals were also the members of the WAP Committee present at the April 8,
10 2008 meeting, and who participated in the consideration of the Mr. Benhayon's
11 appeal of his denied request (following which the appeal was denied).  None of these
12 four individuals is employed by the Royal Bank of Canada.  All are employed by an
13 entity distinct from the Royal Bank of Canada.

14      I declare under penalty of perjury under the laws of the United States of
15 America that the foregoing is true and correct.

16

17      Executed this 5th day of August 2009 at Minneapolis, Minnesota.

18

19

20                                    Gabriela Sikich

21                                    Gabriela Sikich

22

23

24

25

26

27

28

Second Decl of G
Sikich ISO

                                    2                    CASE NO. CV08-06090 FMC(AGRx)
                          SECOND DECLARATION OF GABRIELA SIKICH