IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-00107 |
| | § | |
| RBC CAPITAL MARKETS | § | |
| CORPORATION N/K/A RBC CAPITAL | § | |
| MARKETS, LLC; RBC CENTURA | § | |
| BANK N/K/A RBC BANK (USA); | § | |
| RBC U. S. INSURANCE SERVICES, INC.; | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF
SUPPLEMENTAL AUTHORITY**

Plaintiffs, Brenda Tolbert, Joseph Neuhaus, Jr. and Lawrence Gift, Jr., respond to Defendants' Notice of Supplemental Authority in Support of Their Motion for Summary Judgment [Dkt. # 144]. RBC relies on *Tibble v. Edison International*, No. 10-56406 ____ F.3d _____ (9th Cir. March 21, 2013) and *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013) for the premise that all of Plaintiffs' fiduciary breach claims are barred by limitations. *See* Defendants' Notice of Supplemental Authority in Support of Their Motion for Summary Judgment [Dkt. # 144], p. 1. Neither case advances RBC's limitations defense.

**The Applicable Statute**

1. The broad statute applicable to fiduciary breach claims, 29 U.S.C. § 1113, has three different, potentially applicable rules: (a) a six year limitations period for affirmative fiduciary breaches that begins to run when the breach occurred; (b) a six year limitations period for fiduciary omissions that begins to run on the latest date on which the fiduciary could have cured the breach; and (c) a three year limitations period that begins to run on the earliest date that

the plaintiff had actual knowledge of the breach. 29 U.S.C. § 1113(1), (2). These scenarios, however, are subject to the rule that "in the case of fraud or concealment, such action may be commenced not later than six years after the date of the discovery of the breach or violation." *Id.*, § 1113. *See Tibble*, p. 9.

### *Tibble*

2. The *Tibble* plaintiffs participated in a 401(k) plan with participant-directed investment accounts. Their complaints concerned the fiduciaries' *inclusion* of certain "retail-class" mutual funds among the participants' investment choices. The defendants argued that a six year limitations period applied to the plaintiffs' claims. The court agreed that, under § 1113(1)(A), the six year "limitations period" applied to retail-class funds *purchased* more than six years before the plaintiffs sued. *Tibble*, p. 10. But, the court disagreed that the three year statute also applied absent proof that the plaintiffs had actual knowledge of the particular events about which they claimed. *Id.,* pp. 12-13.

3. *Tibble* also holds that "[i]n order to apply ERISA's limitations periods, the court "must first isolate and define the underlying violation." *Id.*, p. 12 (quoting *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 550-51 (9th Cir. 1990)). That is the point at which the six year limitations period under 29 U.S.C. § 1113(1)(A) begins to run for *affirmative* fiduciary breaches. *See id.*, p. 10. *Tibble*, however, also holds that fiduciary breaches by *omission* are subject to a continuing tort rule, and that fraudulent concealment tolls limitations for fiduciary breaches.

4. As discussed below, *Tibble* fails to help RBC (and supports Plaintiffs) because (1) the Plaintiffs in the case at bar filed their suits in less than a year from when RBC illegally forfeited their statutorily vested benefits; (2) failure to create and fund the required separate trust is a fiduciary breach by omission subject to the continuing tort rule; and (3) RBC continues to

fraudulently conceal its illegal conduct. Along those lines, the WAP either was never a valid top hat plan, and RBC misrepresented each time they said it was instead of telling the truth, or, it once was a top hat plan, and RBC falsely represented the true state of the WAP by allowing it to become non-selective enough to remain so without saying anything and continuing to state that it still was valid.

5. The main fiduciary breach about which Ms. Tolbert complains, the illegal forfeiture of her statutorily vested retirement benefits, occurred in June 14, 2010, less than seven months—not six years—before she sued RBC on January 11, 2011. RBC admitted as much in its response to Tolbert's initial class certification motion when RBC said, "Plaintiff's core claim is that the forfeiture of her Company Contributions was unlawful because the WAP was not maintained for a sufficiently 'select group' of 'highly compensated' employees and thus did not qualify as a 'top hat' plan under ERISA." Dkt. #45, p. 11; *see* Plaintiff's First Amended Class Action Complaint ¶¶ 10, 67, 115-20 [Dkt. #24].

6. Likewise, RBC illegally forfeited Plaintiff Gift's statutorily protected benefits in September 2011, and Plaintiff Neuhaus' accrued vested benefits in November 2011, both of which were less than six years before they joined the suit in 2012. Thus, to the extent this case is governed by § 1113(1)(A) applicable to *affirmative* fiduciary breaches, the claims would be well within any six year limitations period.

7. Assuming, without admitting, that Plaintiffs' causes of action accrued when the WAP ceased to be a valid top hat plan, and that Plaintiffs' claims were triggered by that event, RBC failed to prove when that event occurred and thus failed to prove when § 1113(1)(A) would

have begun to run, if that is the applicable limitations statute.[1] Indeed, RBC to this day still argues that the WAP is now and always has been a valid top hat plan. Thus, RBC has not carried its burden of proving that the WAP lost top hat status more than six years before Tolbert filed this suit and tolled limitations for the putative class members, like Gift and Neuhaus.

8. Furthermore, assuming without admitting, that § 1113(1)(A) applies and that the WAP busted its top hat status before January 11, 2005, the forfeiture of statutorily protected benefits would be a second breach which is an overt act of its own that restarts the limitations period. *Tibble*, p. 11. Under RBC's theory, every time a company sets up a top hat plan, a participant must sue at least once every six years to test whether it is truly a top hat plan or everyone thereafter will be forever barred from making that claim. That cannot be the law, and that is why the forfeiture of benefits is a second triggering event.

9. Additionally, there is ample evidence that RBC has fraudulently concealed its violations by steadfastly telling Plaintiffs and other employees that the WAP is now and always has been a valid top hat plan. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment and Reply in Support of its Motion for Partial Summary Judgment [Dkt. # 93], p. 56. In sum, (1) RBC has consistently (a) told WAP participants that the WAP is a valid top hat plan and (b) attempted to justify its illegal forfeitures of vested accrued benefits on that basis, as it did with Gift and Neuhaus just last year [*see* Dkt. ## 123, 139]; and (2) the evaluation of top hat status is so fact intensive that RBC had to hire outside consultants and lawyers to advise RBC on that issue and to generate a "defendable position,"

10. Moreover, RBC's fundamental fiduciary failure is that it did not create and fund a separate trust to hold assets sufficient to deliver the promised benefits as of when the WAP failed

---

[1] RBC could arguably put anything in the WAP it wanted. The fiduciary breach, however, was its failure to create and fund the separate trust when the WAP ceased to be a valid top hat plan (if it ever was one). *See* Plaintiff's First Amended Class Action Complaint [Dkt. #24], pp. 22-29; Plaintiff's Response [Dkt. #93], pp. 62-63.

4

6300593v.1

to be a valid top hat plan. *See* Plaintiff's First Amended Class Action Complaint [Dkt. # 24], Third Claim, p. 29. This is a fiduciary breach of *omission*. *Tibble* holds, as is obvious from the statute's terms, that § 1113(1)(B), which applies to fiduciary breaches by omission, adopts a continuing tort theory. *Id.*, p. 10. Because RBC has obviously never cured its breach by funding a separate trust to hold plan assets, as a matter of law, the six year limitations period has not been exhausted.

### *David*

11. RBC's reliance on *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013) is similarly misplaced for the same reasons. Counts I –III of the plaintiffs' complaint in *David* alleged violations of 29 U.S.C. § 1106 prohibited transactions, which provisions are not involved in the case at bar, and held that the plaintiffs' claims all stemmed from the active selection of certain investments and thus are governed by § 1113(1)(A)'s six year limitations period, which began to run from when the investments were made. *See id.* at 339-41. Likewise, Count IV involved a claim under § 1104 complaining about the selection of certain securities. The court unremarkably held that the six year limitations period under § 1113(1)(A) barred the plaintiffs' imprudent investment claims, because the selection was made more than six years before the plaintiffs sued. *Id.* at 341-43.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court deny Defendants' summary judgment motion respecting their limitations affirmative defense; address said defense after hearing all of the evidence at the scheduled April 15, 2013 bench trial of this matter; and for such other and further relief, either at law or in equity, general or special, to which Plaintiffs may be justly entitled.

6300593v.1

Respectfully submitted,

GARDERE WYNNE SEWELL LLP

By: */s/ Geoffrey H. Bracken*
    Geoffrey H. Bracken
    State Bar No. 02809750
    J. Palmer Hutcheson
    State Bar No. 10335500
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Telephone: 713.276.5739
Facsimile: 713.276.6739

By: */s/ William G. Whitehill*
    William G. Whitehill
    State Bar No. 21356550
    Joe B. Harrison
    State Bar No. 09115500
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone: 214.999.4633
Facsimile: 214.999.3633

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2013, a true and correct copy of this document has been forwarded to all counsel of record through the Court's CM/ECF system.

Alison J. Gates
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suites 4200
Houston, Texas 77002

Christopher J. Boran
Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601

    */s/ Geoffrey H. Bracken*
    Geoffrey H. Bracken

6