Case 4:11-cv-00107   Document 162-2   Filed in TXSD on 08/05/14   Page 1 of 7

Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)

2014 WL 2853720
Only the Westlaw citation is currently available.
United States Court of Appeals,
District of Columbia Circuit.

James C. STEPHENS and
Richard Mahoney, Appellants
v.
PENSION BENEFIT GUARANTY
CORPORATION, Appellee.

No. 13–5129.   |   Argued March 27, 2014.   |   Decided June 24, 2014.

**Synopsis**
**Background:** Former pilots brought putative class action suit against airline and their pension plan alleging that delay in paying lump sum retirement benefits and failure to pay interest on lump sum retirement benefits from date of retirement violated Employee Retirement Income Security Act (ERISA). The United States District Court for the Northern District of Ohio, Dan A. Polster, J., dismissed for lack of subject matter jurisdiction, and pilots appealed. After the airline filed bankruptcy, pension plan was terminated and successor trustee was appointed. The United States Court of Appeals for the Sixth Circuit, 464 F.3d 606, affirmed in part, reversed in part, and remanded. On remand, the United States District Court for the Northern District of Ohio transferred the action to the District Court for the District of Columbia. The United States District Court for the District of Columbia, 555 F.Supp.2d 112, dismissed action in part and then granted summary judgment on remaining claims, 696 F.Supp.2d 84. The Court of Appeals, Brown, Circuit Judge, 644 F.3d 437, affirmed in part and reversed and remanded in part. On remand, the pilots moved for certification of plaintiff class. The District Court, Rosemary M. Collyer, J., 908 F.Supp.2d 10, denied motion, on ground that exhaustion of administrative remedies by only the named representative rendered his claims atypical of those of class. Appeal was taken.

**Holdings:** The Court of Appeals, Brown, Circuit Judge, held that:

[1] named representative had standing to appeal denial of certification, despite fact that he had since settled his individual claim;

[2] as matter of first impression in the circuit, beneficiaries did not need to exhaust their administrative remedies prior to suing plan fiduciaries based on their alleged violation of duties imposed by ERISA; and

[3] fact that named representative alone had exhausted his administrative remedies did not render his claims atypical of retired pilot class.

Reversed.

West Headnotes (5)

[1]   **Federal Courts**
      **Particular Persons**
      Retired pilot suing to recover interest based on delay in payment of lump sum benefit that he had elected under terminated pension plan had standing to appeal district court's denial of his motion for certification of plaintiff class, notwithstanding that, following denial of motion for class certification, he settled his individual claim against the Pension Benefit Guaranty Corporation (PBGC); even after he settled his individual claim, retired pilot had continuing interest in spreading litigation costs among numerous litigants with similar claims, which would occur if counsel were paid out of class-wide recovery.

      Cases that cite this headnote

[2]   **Labor and Employment**
      **Exhaustion of Remedies**
      **Labor and Employment**
      **Exhaustion of Remedies**
      While beneficiaries of ERISA plan must exhaust internal plan remedies prior to bring suit to enforce rights and obligations under the plan, beneficiaries need not exhaust such remedies prior to suing plan fiduciaries based on their alleged violation of duties imposed by ERISA; while plan administrators may have particular expertise in interpreting the terms of pension plans that they administer, federal judges have

**Exhibit B**

Case 4:11-cv-00107   Document 162-2   Filed in TXSD on 08/05/14   Page 2 of 7

**Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)**

particular expertise in interpreting statutory terms, and consistent application of the law was best achieved by encouraging a unitary judicial interpretation of that law. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[3] **Labor and Employment**
 Exhaustion of Remedies

Exhaustion of administrative remedies requirement for suit by beneficiaries of ERISA plan enables plan administrators to apply their expertise and exercise their discretion to manage plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrators' actions, and also reduces number of frivolous lawsuits, promotes consistent treatment of claims for benefits, provides a nonadversarial method of claims settlement, and minimizes cost of claims settlement. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[4] **Labor and Employment**
 Exhaustion of Remedies

Retired pilots suing to recover interest based on delay in payment of lump sum benefits that they had elected under terminated pension plan, upon theory that not only did ERISA require that their lump sum benefits be actuarially equivalent to annuity benefits to which they were otherwise entitled as of time that these annuity benefits would have started, but also that they be paid the lost time value of lump sum benefits to extent that payment of lump sum benefits was delayed unreasonably past the annuity starting date, were asserting claims for violation of their statutory rights under ERISA, and not for violation of terms of pension plan, such that they did not have to exhaust their administrative remedies prior to bringing suit; because pilots asserted a right granted to them by ERISA regulations, i.e., the right to receive lump sum payment without unreasonable delay, they asserted a statutory claim not subject to exhaustion requirement. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[5] **Federal Civil Procedure**
Employees

Because there was no requirement that retired airline pilots first exhaust their administrative remedies prior to bringing suit to enforce a right granted by ERISA regulations, i.e., the right to receive lump sum retirement benefits that they had elected without unreasonable delay, fact that named representative alone had exhausted his administrative remedies did not render his claims atypical of retired pilot class, and did not foreclose certification of class as failing to satisfy "typicality" requirement. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

Cases that cite this headnote

Appeal from the United States District Court for the District of Columbia (No. 1:07–cv–01264).

**Attorneys and Law Firms**

Jacks C. Nickens Jr. argued the cause for appellants. With him on the briefs was Robert P. Trout.

Colin B. Albaugh, Attorney, Pension Benefit Guaranty Corporation, argued the cause for appellee. With him on the brief were Judith R. Starr, General Counsel, Israel Goldowitz, Chief Counsel, Stephanie Thomas, Assistant Chief Counsel, and Jean Marie Breen and Mark R. Snyder, Attorneys.

Before BROWN and PILLARD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

**Opinion**

Opinion for the Court filed by Circuit Judge BROWN.

Case 4:11-cv-00107   Document 162-2   Filed in TXSD on 08/05/14   Page 3 of 7

Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)

BROWN, Circuit Judge:

*1 When a group of U.S. Airways pilots hung up their wings over a decade ago, they expected prompt payment of their retirement benefits. When payment was delayed 45 days, Appellants filed a class action on behalf of themselves and similarly situated pilots seeking interest for the period of delay. The district court refused to certify a class, holding that James Stephens's claim is not typical of the claims of the rest of the putative class because only Stephens exhausted internal plan remedies before filing suit under the Employee Retirement Income Security Act (ERISA). Today we hold the class members were not required to exhaust internal remedies before bringing their claims in court because they seek enforcement of ERISA's substantive guarantees rather than contractual rights. We reverse the district court's judgment and remand for reconsideration of Appellants' motion to certify a class.

I

The U.S. Airways pension plan for pilots allowed retirees to choose between receiving their benefits as a lifetime monthly annuity or as an equivalent lump sum payment actuarially equivalent to the projected value of all annuity payments. For pilots who chose the annuity option, payments would commence on the first day of the month after the pilot retired.[1] For retirees who chose to receive their benefits as a lump sum, U.S. Airways calculated the amount of that benefit to be actuarially equivalent to the annuity benefit as of the annuity commencement date. But those pilots were not paid the lump sum until 45 days after the annuity starting date, and they were not paid interest accrued on their benefits during that time. U.S. Airways maintained this delay was administratively necessary to perform additional calculations and to ensure pilots were paid the correct amount.

James Stephens and Richard Mahoney retired from their jobs as U.S. Airways pilots in 1996 and 1999, respectively. They, like many other U.S. Airways pilots, chose to receive their retirement benefits as a lump sum. And, like the other retirees that chose the lump sum option, Stephens and Mahoney received their payments approximately 45 days after what would have been their annuity start date. Stephens received $488,477.22, and Mahoney received $672,162.79. If the plan had paid interest during the 45–day delay, Stephens and Mahoney would have received an extra $3,665.06 and $5,043.25, respectively.

In 1997, Stephens filed an administrative claim with U.S. Airways arguing the company was required to pay interest for the 45–day delay under both the terms of the retirement plan and ERISA, 29 U.S.C. § 1054(c)(3), which requires that any lump sum benefit be the "actuarial equivalent" of the annuity benefit. Stephens argued that ERISA's actuarial equivalence rule required not only that his lump sum benefit be calculated to be actuarially equivalent to the annuity benefit as of the time the annuity benefit would have started, but also that he be paid the lost time value of the lump sum benefit to the extent payment of the lump sum was delayed past the annuity starting date. When U.S. Airways denied his claim, Stephens appealed to the U.S. Airways Retirement Board, which rejected Stephens's claim in 1999. Neither Mahoney nor any other U.S. Airways pilot filed a similar claim with the airline or Retirement Board.

*2 In 2000, Appellants filed a complaint against the retirement plan and U.S. Airways in the U.S. District Court for the Northern District of Ohio. They sought to represent a class of similarly situated pilots whose lump sum benefits payments had been delayed. The district court dismissed the complaint for lack of subject matter jurisdiction, but the Sixth Circuit reversed. *See Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc. (Stephens I), 464 F.3d 606 (6th Cir.2006).* When the retirement plan subsequently terminated due to U.S. Airways's bankruptcy, Appellants substituted the Pension Benefit Guaranty Corporation (PBGC), a federal agency and the statutory trustee of the terminated plan, as the defendant. Consequently, the case was transferred to the U.S. District Court for the District of Columbia in 2007. Three years later, the district court granted summary judgment in PBGC's favor. *Stephens v. U.S. Airways Grp. (Stephens II), 696 F.Supp.2d 84 (D.D.C.2010).*

The pilots appealed, and a panel of this court affirmed in part and reversed in part.[2] Each of the panel's judges wrote a separate opinion. Judges Brown and Henderson, forming a majority of the court, concluded that, because "U.S. Airways accurately calculated [Appellants'] lump sums to be the actuarial equivalent of the annuity option as of the annuity start date, the lump sum payment does not violate § 1054(c)(3)." *Stephens v. U.S. Airways Grp. (Stephens II), 644 F.3d 437, 440 (D.C.Cir.2011); id.* at 444 (Henderson, J., dissenting in part).[3] But we held U.S. Airways was permitted only a "reasonable delay[ ]" in paying retirees their lump sum

Case 4:11-cv-00107 Document 162-2 Filed in TXSD on 08/05/14 Page 4 of 7

Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)

benefit, and the airline was required to pay interest on any additional delay. *Id.* at 440 (Brown, J., for the court). We identified this standard in an Internal Revenue Service (IRS) regulation providing that "[a] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefit amount if all payments are actually made." 26 C.F.R. § 1.401(a)–20 (Question & Answer 10(b)(3)); *Stephens III,* 644 F.3d at 440; *Stephens III,* 644 F.3d at 444 (Henderson, J., dissenting in part).

The panel was further split on the question of what portion of the delay in paying the lump sum benefit was reasonable. Judge Brown, writing only for herself in a controlling opinion,[4] held a 45–day delay was not reasonable. *Stephens III,* 644 F.3d at 440–41 (Brown, J., for the court). She suggested a delay of about thirty days may be reasonable. *See id.* at 440–41.[5] Concluding that the lump sum payments were unreasonably delayed, we remanded to the district court to determine the period of unreasonable delay and to calculate the corresponding amount of interest due Appellants.

On remand, Appellants moved to certify a class of plaintiffs consisting of all pension plan participants and beneficiaries who had retired between 1997 and 2003 and elected to receive their benefits as a lump sum. The district court denied the motion to certify the class, holding Stephens did not present a claim typical of the claims of the putative class. *Stephens v. U.S. Airways Grp. (Stephens IV),* 908 F.Supp.2d 10 (D.D.C.2012). The court noted that only Stephens had exhausted his internal remedies under the plan before bringing suit. *Id.* at 14. Although the court assumed without deciding that exhaustion is not required when a plaintiff alleges a violation of ERISA's substantive guarantees, the court held Appellants' claim did not fall within that exception because it implicated issues of plan administration, not merely statutory interpretation. *Id.* at 15–16. The district court also held putative class members were not excused from the exhaustion requirement under the futility exception. *Id.* at 16–18.

**\*3** After the district court denied Appellants' motion for class certification, and in order to obtain a final appealable judgment, Stephens settled his individual claim with PBGC. Mahoney, seeing the writing on the wall for his unexhausted claim, agreed to a dismissal without prejudice. Accordingly, the district court entered a final judgment dismissing the action on April 3, 2013. This appeal followed.

## II

[1] We begin, as we so often do, by assuring ourselves of our own jurisdiction. *See Floyd v. District of Columbia,* 129 F.3d 152, 155 (D.C.Cir.1997). Because Stephens settled his individual claim against PBGC and Mahoney agreed to a dismissal of his case without prejudice, Appellants' standing to bring this appeal may be subject to some doubt. *Cf. Calderon v. Moore,* 518 U.S. 149, 150, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996) ("[A]n appeal should ... be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant."). However, our precedent makes clear Stephens has standing to maintain this appeal because he has a continuing "interest in spreading the litigation costs among numerous litigants with similar claims." *Richards v. Delta Air Lines, Inc.,* 453 F.3d 525, 528–29 (D.C.Cir.2006). PBGC suggests *Richards* may not apply because, as we have previously held, *see Stephens III,* 644 F.3d at 441–42, Appellants are not entitled to recover attorney's fees from PBGC. Appellee's Br. at 11 & n. 41. But our holding in *Richards* did not depend on the ability of the class representative to recover attorney's fees from the defendant. Rather, the class representative has an interest in spreading the litigation costs among *other members of the plaintiff class*—a result that will be obtained if class counsel is paid out of a class-wide recovery. Because we conclude Stephens has standing to maintain this appeal, we need not consider whether Mahoney has standing. *See Comcast Corp. v. FCC,* 579 F.3d 1, 6 (D.C.Cir.2009); *Robinson–Reeder v. Am. Council on Educ.,* 571 F.3d 1333, 1336–40 (D.C.Cir.2009) (discussing whether a voluntary dismissal of unresolved claims makes a district court's judgment final and appealable).

## III

Appellants challenge the district court's denial of their motion for class certification. They argue the putative class members did not need to exhaust the retirement plan's internal remedies before they could challenge in court U.S. Airways's 45–day delay. Thus, the fact that only Stephens exhausted internal remedies is not legally material, and, Appellants argue, his claim is typical of the class's claims within the meaning of Federal Rule of Civil Procedure 23(a)(3). We agree with Appellants because (1) there is no exhaustion requirement for ERISA claims alleging statutory—rather

Case 4:11-cv-00107 Document 162-2 Filed in TXSD on 08/05/14 Page 5 of 7

Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)

than plan-based—violations, and (2) the class claims in this action assert statutory violations not subject to the exhaustion requirement. [6]

A

[2] [3] Although ERISA itself does not require a plan beneficiary to exhaust internal plan remedies before bringing suit, courts have universally applied the requirement as a matter of judicial discretion. *Commc'ns Workers of Am. v. AT & T,* 40 F.3d 426, 431–32 (D.C.Cir.1994). In doing so, courts have relied on the law's structure and history. *See Kross v. W. Elec. Co.,* 701 F.2d 1238, 1243–45 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980). The exhaustion doctrine effectuates Congress's purpose in requiring that benefit plans provide for administrative review procedures by ensuring those internal remedial procedures are utilized. *See* ERISA § 503, 29 U.S.C. § 1133 ("[E]very employee benefit plan shall ... afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."); *Amato,* 618 F.2d at 567 & n. 7. As we have previously noted, the requirement "enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrators' actions." *Commc'ns Workers of Am.,* 40 F.3d at 432. The exhaustion requirement also reduces the number of frivolous lawsuits, promotes the "consistent treatment of claims for benefits," provides a "nonadversarial method of claims settlement," and "minimize[s] the cost of claims settlement." *Amato,* 618 F.2d at 567. On the other hand, courts apply the exhaustion doctrine keeping in mind that, in enacting ERISA, "Congress intended that a body of Federal substantive law w[ould] be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Id.*

\*4 Despite the universal acceptance of the general exhaustion rule, the courts of appeal are split on the question of whether beneficiaries of an ERISA plan "must exhaust internal plan remedies before suing plan fiduciaries on the basis of an alleged violation of duties imposed by the statute." *Mason v. Cont'l Grp.,* 474 U.S. 1087, 1087, 106 S.Ct. 8633, 88 L.Ed.2d 902 (1986) (White, J., dissenting from denial of certiorari). We have not yet weighed in on the question, but this case requires us to do so.

The Third, Fourth, Fifth, Ninth, and Tenth Circuits have held exhaustion is not required when plaintiffs seek to enforce *statutory* ERISA rights rather than contractual rights created by the terms of a benefit plan. *See Zipf v. AT & T,* 799 F.2d 889, 891–94 (3d Cir.1986); *Smith v. Sydnor,* 184 F.3d 356, 364–65 (4th Cir.1999); *Galvan v. SBC Pension Benefit Plan,* 204 F. App'x 335, 338–39 (5th Cir.2006); *Amaro v. Cont'l Can Co.,* 724 F.2d 747, 751–52 (9th Cir.1984); *Held v. Mfrs. Hanover Leasing Corp.,* 912 F.2d 1197, 1204–05 (10th Cir.1990). In *Zipf,* the Third Circuit distinguished between actions brought "to enforce the terms of a plan" and those brought "to assert rights granted by the federal statute." 799 F.2d at 891. The court invoked ERISA's legislative history to show Congress intended statutory rights to be enforced by the courts, not by plan administrators. *Id.* at 892. Congress required plans to provide procedures to review claims for benefits, but did not require internal remedial procedures to embrace claims based on ERISA's substantive guarantees. *Id.* at 891–92; *see also* ERISA § 503, 29 U.S.C. § 1133 (requiring internal procedures to provide review for a participant "whose *claim for benefits* has been denied" (emphasis added)). Furthermore, while plan fiduciaries may have expertise in interpreting the terms of benefit plans, they have no similar expertise in interpreting statutory guarantees. *Zipf,* 799 F.2d at 893. Rather, statutory interpretation is a matter within the expertise of the judiciary. *Id.* Finally, judicial resolution of statutory claims will provide a consistent source of law for plan fiduciaries. *Id.; see also Amaro,* 724 F.2d at 751–52.

The Seventh and Eleventh Circuits, on the other hand, have held the exhaustion requirement applies even where plaintiffs assert statutory rights. *See Kross,* 701 F.2d at 1245; *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 649–50 (7th Cir.1996); *Mason v. Cont'l Grp.,* 763 F.2d 1219, 1226–27 (11th Cir.1985). In *Lindemann,* the Seventh Circuit noted that requiring parties to exhaust statutory claims would enable plan fiduciaries to assemble a factual record that would assist the court in reviewing their actions. 79 F.3d at 650. Additionally, even where plan beneficiaries seek to file statutory claims, the exhaustion requirement "minimize[s] the number of frivolous lawsuits, promote[s] a non-adversarial dispute resolution process, and decrease[s] the cost and time of claims settlement." *Id.*

\*5 We agree with the Third, Fourth, Fifth, Ninth, and Tenth Circuits. In determining the scope of the exhaustion doctrine, we are called upon to balance two competing interests recognized by ERISA. On the one hand, Congress intended

Case 4:11-cv-00107   Document 162-2   Filed in TXSD on 08/05/14   Page 6 of 7

Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)

for the courts to develop a body of federal substantive law that would address issues involving rights and obligations under pension plans. See *Amato,* 618 F.2d at 567. On the other hand, Congress intended that plan administrators have primary responsibility for adjudicating benefits claims to promote the consistent treatment of claims and to minimize the burden on the courts and all parties. See *id.* This balancing compels us to require claimants to exhaust internal remedies when they assert rights granted by a benefit plan. But it logically suggests direct resort to the federal courts where claimants assert statutory rights—a practice that better promotes Congress's intent to create minimum terms and conditions for pension plans.

While plan administrators may have particular expertise in interpreting their pension plans' terms, federal judges have particular expertise in interpreting statutory terms. And while consistent application of a pension plan's terms might best be achieved by allowing plan administrators to interpret those terms in the first instance, consistent application of the law is best achieved by encouraging a unitary judicial interpretation of that law. Federal district courts also have the expertise to create a factual record, should that be necessary, and to encourage settlement of disputes where appropriate. Finally, we are persuaded by *Zipf's* interpretation of ERISA's legislative history and by its conclusion that Section 503 of ERISA does not require pension plans to create internal remedial procedures to evaluate statutory claims. *Zipf,* 799 F.2d at 891–92; *see also Amaro,* 724 F.2d at 751 ("There is no internal appeal procedure either mandated or recommended by ERISA to hear ... claims [alleging violations of protections guaranteed by ERISA].").

Pension plan beneficiaries need not exhaust internal remedial procedures before proceeding to federal court when they assert violations of ERISA's substantive guarantees.[7] We must determine, therefore, whether Appellants in this action assert statutory or contractual rights.[8]

### B

**[4]** In light of our previous opinion in *Stephens III,* which partially decided the merits of Appellants' claim, we easily conclude Appellants have asserted a claim alleging a statutory violation. In *Stephens III,* we held U.S. Airways's 45–day delay in making retirees' lump sum payment was unreasonable. 644 F.3d at 440. We found this "reasonableness" standard in an IRS regulation, not in the terms of the pension plan. See *id.* at 440–41; *id.* at 444 (Henderson, J., dissenting in part).

We further held U.S. Airways did not violate the actuarial equivalence requirement of 29 U.S.C. § 1054(c)(3). *Id.* at 440 (Brown, J., for the court). But that does not mean the company did not violate other provisions of ERISA. In fact, we explicitly held the airline's practices ran afoul of federal law, stating "a pension plan *could not satisfy ERISA* by correctly calculating an actuarially equivalent lump sum, then delaying payment of that sum indefinitely." *Id.* (emphasis added). We thus found a violation not of the terms of the U.S. Airways pension plan, but rather of ERISA and the IRS regulations implementing that law.

**\*6** In the district court's view, the questions we directed that court to answer on remand—namely, how much of the 45–day delay was unreasonable—related to plan administration and not statutory interpretation. *Stephens IV,* 908 F.Supp.2d at 16. It is true we held U.S. Airways's *administration* of the plan violated the statute. But the relevant question is not what action Appellants challenge—here, the 45–day delay, which is a matter of plan administration. Rather, the relevant inquiry is what forms the basis of Appellants' right to relief: the contractual terms of the pension plan or the provisions of ERISA and its regulations. Because Appellants assert a right granted them by ERISA's regulations—the right to receive a lump sum payment without unreasonable delay—they assert a statutory claim not subject to the exhaustion requirement. In other words, Appellants assert a statutory claim because the district court on remand will have to evaluate the plan's administration under a reasonableness standard *created and defined by federal law.*[9]

### IV

**[5]** Thus, the district court's ruling on the typicality of the class representatives' claims was erroneous. We remand for the district court to reconsider Appellants' motion to certify a class.[10]

This case was originally filed more than fourteen years ago. When we decided *Stephens III* in 2011, we thought we had seen the last of this case. We definitively decided the issue of liability, and remanded to the district court to determine the extent of liability and the amount of damages. Three years later, this case is no closer to a final disposition. We hope the district court can make short work of the motion for

Case 4:11-cv-00107 Document 162-2 Filed in TXSD on 08/05/14 Page 7 of 7

Stephens v. Pension Ben. Guar. Corp., --- F.3d ---- (2014)

class certification and this action can move speedily to a final resolution.

The opinion and judgment of the district court are *Reversed*.

Footnotes

1. At all times relevant to this action, the mandatory retirement age for commercial pilots under federal law was 60.
2. We affirmed the district court's ruling that Appellants were not entitled to attorney's fees from PBGC. *Stephens v. U.S. Airways Grp.,* 644 F.3d 437, 441–42 (D.C.Cir.2011).
3. Judge Kavanaugh would have held U.S. Airways's practice of delaying payments violated the actuarial equivalence requirement of 29 U.S.C. § 1054(c)(3). *Stephens III,* 644 F.3d at 442–43 (Kavanaugh, J., concurring in the judgment). Therefore, he would have found PBGC liable for interest during the entire 45–day delay.
4. Judge Brown's opinion was controlling because it presented the narrowest grounds of the opinions forming a majority. *See Stephens III,* 644 F.3d at 442 n. 1 (Kavanaugh, J., concurring in the judgment).
5. Judge Henderson would have held the entire 45–day delay was reasonable, and thus that Appellants were not entitled to any interest for the delay. *Stephens III,* 644 F.3d at 444–45 (Henderson, J., dissenting in part).
6. Alternatively, Appellants would prevail if we found the putative class members were excused from the exhaustion requirement under the futility doctrine. *See Commc'ns Workers of Am. v. AT & T,* 40 F.3d 426, 431–32 (D.C.Cir.1994). Because we find the exhaustion requirement inapplicable to the claims at issue in this action, we do not reach the futility issue.
7. This exception to the exhaustion requirement does not embrace plan-based claims "artfully dressed in statutory clothing," such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty. *Drinkwater v. Metro. Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.1988). As discussed below, the claims here are accurately characterized as statutory.
8. Claims alleging a violation of ERISA's regulations fall within the category of claims not subject to the exhaustion requirement. Our discussion applies equally to all claims relying on federally-granted protections, whether they are found in ERISA or its implementing regulations.
9. Our opinion in *Stephens III* explained the nature of Appellants' claim and decided the merits of that claim in favor of Appellants. We remanded to the district court to determine the extent of liability (the extent of unreasonableness in U.S. Airways's delay) and the amount of damages. On remand, Appellants filed a Fourth Amended Class Action Complaint, asserting three separate counts and complicating the question we had remanded to the district court. The complaint both seeks "enforcement of the Plan, as written," J.A. 229–30, and alleges violations of statutory protections, *see* J.A. 230–31. We leave it to the district court on remand to clarify which of Appellants' claims are properly presented. Our decision here relates only to the claim we previously found Appellants successfully asserted—that U.S. Airways unreasonably delayed its lump sum payment under 26 C.F.R. § 1.401(a)–20 (Question & Answer 10(b)(3)). If, on remand, Appellants continue to assert other, plan-based claims, the district court might consider certifying a class only as to the statutory claims. *See* FED R. CIV. P. 23(c)(4).
10. After the district court made its initial ruling on the motion for class certification, Stephens settled his claims. The district court should consider on remand whether Stephens would be an adequate class representative. *See U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 405–06, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Nevertheless, we are confident that Mahoney or another class member could adequately represent the class even if Stephens cannot.

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.