IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-00107 |
| | § | |
| RBC CAPITAL MARKETS | § | |
| CORPORATION N/K/A RBC CAPITAL | § | |
| MARKETS, LLC; RBC CENTURA | § | |
| BANK N/K/A RBC BANK (USA); | § | |
| RBC U. S. INSURANCE SERVICES, INC.; | § | |
| | § | |
| Defendants. | § | |

## REQUEST FOR JUDICIAL NOTICE

Plaintiffs, Brenda Tolbert, Joseph Neuhaus, Jr. and Lawrence Gift, Jr., file this Request for Judicial Notice, pursuant to FED. R. EVID. 201, and for cause would show the following:

### I. Background

In addition to being unfunded, the statutory predicate for meeting the "top hat" plan exemption is that the plan is "maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Plaintiffs' summary judgment motion and brief asserts, among other points, that:

> The WAP fails the 'primary purpose' test, because the evidence conclusively proves that the WAP's primary purpose was to create a competitive tool to recruit, develop, and retain FCs, instead of being a plan to provide deferred compensation to the required select group of top echelon employees who did not need ERISA's protection. (Doc. 84, p. 29).

That is, Plaintiffs urge that, as a matter of law, RBC cannot meet the top hat exemption, because RBC judicially admits that providing "deferred compensation to a select group of

management or highly compensated employees" was not the WAP's primary purpose. RBC's and Amicus's statements on appeal admit and confirm Plaintiffs' point.

RBC's appellate admissions and the statements by the "Securities Industry and Financial Markets Association ("SIFMA") had not been made when Plaintiffs filed their summary judgment materials in this Court and thus could not have been included at that time. These admissions, however, bear on an important issue currently before this Court's consideration of the parties' summary judgment motions regarding whether the WAP qualifies as an exempt "top hat" plan -- Did RBC maintain the WAP primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees? Or, did RBC maintain the WAP primarily as a recruiting and retention tool for financial consultants, which are the "lifeblood" of RBC's business?

Accordingly, as Fed. R. Evid. 201 permits, Plaintiffs ask the Court to consider the following admissions by RBC when deciding those motions.

## II. RBC's Admissions on Appeal

RBC's Appellees' Brief (Case 13-20213 Document 00512408684 [RBC Br.]) made the following admissions:

"Financial consultants are, as plaintiffs put it, the 'lifeblood' of RBC's business." (RBC Br. 3).

"Given their importance, RBC designed and maintained the WAP in large part to 'attract and retain financial consultants.'" (RBC Br. 4).

"[T]he WAP not only incentivized increased production, but also helped retain valuable employees and served as an important recruiting tool." (RBC Br. 5).

6499291v.1

"The WAP thus helps RBC 'recruit [financial consultants] away from competitors [and] to keep the competitors from recruiting [financial consultants] away from RBC.]" (RBC Br. 5)([ ]'s original).

"As plaintiffs themselves highlighted below, the WAP 'indisputably' was 'created and maintained … *primarily* as a tool to recruit, develop, and retain' financial consultants and was 'rolled out … *purely* for compensation reasons, as it was common in the financial industry to have plans such as this one.'" (RBC Br. 17, citing Doc. 84 at 6 and adding emphasis).

"It is undisputed that the primary purpose of the WAP is … to attract and retain key employees by awarding bonuses and other compensation-based incentives." (RBC Br. 25-26).

"While the WAP does permit some participants to defer distributions until retirement or termination, such payments were 'incidental' to the WAP's 'primary thrust' of providing current compensation in a manner designed to attract and retain key employees." (RBC Br. 29).

"This [WAP] design was intended to maximize RBC's ability to attract and retain key employees amidst intense industry competition and to compete with comparable plans offered by RBC competitors." (RBC Br. 45).

"Not only is it undisputed that the WAP was 'created and maintained' to 'recruit, retain, and develop' valuable employees,…" (RBC Br. 53)

As discussed below, the Securities Industry And Financial Markets Association ("SIFMA"), acting for the entire financial services industry, confirms what Plaintiffs' evidence shows and what RBC admits.

### III. SIFMA Confirms What RBC Admits

In support of RBC's appellee brief, the financial services industry trade association confirms that the WAP, and similar plans in the industry, primary purpose is to recruit and retain

financial consultants, rather than to provide deferred compensation for a select group of management or highly compensated employees within the meaning of ERISA. According to SIFMA:

"The Purpose In The Financial Services Industry Of Deferred Compensation Plans Like The WAP Is … To Encourage Employee Retention." (Case 13-20213 Document 00512417373 [SIFMA Br.] 6).

"[T]he [WAP] plan's purpose has nothing to do with providing retirement benefits, and everything to do with employee retention, …." (SIFMA Br. 15).

"Here, the WAP was designed to increase employee retention, not to provide retirement income." (SIFMA Br. 15).

The Fifth Circuit got the picture.

The Fifth Circuit's Opinion Reflects These Admissions

The Fifth Circuit read RBC's and the SIFMA's briefs and acknowledged their point that WAP's primary purpose is to recruit and retain financial consultants/advisors:

"*Amicus* and RBC argue that financial services firms face a problem with retaining financial advisors and that plans such as the WAP are designed to combat that problem. *Amicus* further argues that subjecting plans such as the WAP to ERISA would 'eliminate a crucial employee-retention tool in the financial services industry.'" *Tolbert v. RBC Capital Markets Corporation*, 785 F.3d 619, 627 n. 6 (5th Cir. 2014) [Dkt. #164].

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court take judicial notice as requested, and for such other and further relief, either at law or in equity, general or special, to which they may show themselves justly entitled.

Respectfully submitted,

GARDERE WYNNE SEWELL LLP

By: */s/ Geoffrey H. Bracken*
    Geoffrey H. Bracken
    State Bar No. 02809750
    Rhonda Reed Weiner
    State Bar No. 24047732
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Telephone: 713.276.5739
Facsimile: 713.276.6739

By: */s/ William G. Whitehill*
    William G. Whitehill
    State Bar No. 21356550
    Joe B. Harrison
    State Bar No. 09115500
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone: 214.999.4633
Facsimile: 214.999.3633

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2014, a true and correct copy of this document has been forwarded to all counsel of record through the Court's CM/ECF system.

Alison J. Gates
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suites 4200
Houston, Texas 77002

Christopher J. Boran
Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601

    */s/ Geoffrey H. Bracken*
    Geoffrey H. Bracken

6499291v.1