IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. H-11-0107 |
| | § | |
| RBC CAPITAL MARKETS | § | |
| CORPORATION, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 84) and Defendants' Motion for Summary Judgment (Docket Entry No. 91) regarding the "top hat" issue. The parties filed various responses, replies, surreplies, and supplements to these pending motions.

Based on careful consideration of the motions, responses, replies, surreplies, supplements, summary judgment evidence, the record, and the applicable law, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment, **DENIES IN PART** Defendants' Motion for Summary Judgment, and **ORDERS** as follows.

## I.  BACKGROUND AND CLAIMS

The general background facts and respective claims of the parties have been adequately covered in prior memorandum opinions and orders of this Court and need not be restated here. *See Tolbert v. RBC Capital Markets Corp.*, 2013 WL 3503286 (Docket Entry

No. 146); *Id.*, 2012 WL 1067629 (Docket Entry No. 97). It having been determined that the Amended and Restated Wealth Accumulation Plan (the "WAP") is an employee pension benefit plan under 29 U.S.C. § 1002(2)(A)(ii) of the Employment Retirement Income Security Act ("ERISA"), the Court and parties now turn to the issue of whether the WAP is a "top hat plan" exempt from certain fiduciary, non-forfeiture, and related provisions under section 1101(a)(1) of ERISA.

An ERISA top hat plan is "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). If the WAP is indeed a top hat plan as a matter of law, then Defendants are entitled to summary judgment dismissal of Plaintiffs' claims. If the WAP cannot be so found or if genuine issues of material fact have been raised regarding such status, then this case must move forward and the remaining pretrial issues, such as exhaustion of administrative remedies, class certification, and limitations must be resolved.

Although the parties informed the Court at a recent hearing that there are no fact issues precluding summary judgment regarding the top hat issue, this Court is not bound by their proffering.[1]

---

[1]Indeed, in its earlier decision involving this case, the Fifth Circuit Court of Appeals declined to address the top hat issue, observing that "The resolution of the dispute over the 'top hat' exemption *may require factual determinations regarding, for example, selectivity and high compensation.* The district court is best equipped to decide this issue in the first instance." *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 627 (5th Cir. 2014) (emphasis added).

## II.  SUMMARY JUDGMENT STANDARDS

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the nonmoving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's claim.  *Id.*

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Id.*  The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Little*, 37 F.3d at 1075.  If no issue of fact is presented and if the movant is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party.  *Id.*

3

A party moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is not necessarily required to submit evidence in support of its motion. Instead, when the nonmoving party bears the burden of proof on an issue, the moving party can simply point out the absence of evidence creating a disputed issue of material fact. The burden then falls on the nonmoving party to produce evidence showing that there is such a disputed factual issue in the case. *Celotex Corp.*, 477 U.S. at 325. Where the nonmoving party fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is required under the plain language of Rule 56.

In moving for partial summary judgment here, Plaintiffs argue that Defendants cannot prove that the WAP was a top hat plan for every plan year between 2003–2010, and that Plaintiffs are entitled to summary judgment on the issue as a matter of law. (Docket Entry No. 84, p. 10.) Defendants respond that summary judgment in favor of Plaintiffs would be improper because Defendants have raised one or more genuine issues of material fact as to the WAP's top hat status. Moreover, Defendants argue that they have established as a matter of law that WAP is a top hat ERISA plan. (Docket Entry No. 91, p.12.)

As will be shown, neither party is entitled to summary judgment as to the top hat issue. Defendants have raised one or more genuine issues of material fact regarding the WAP's top hat status, thus defeating Plaintiffs' Motion for Partial Summary Judgment;

4

however, Defendants have not established the exemption as a matter of law, and thus fail to merit judgment under their own summary judgment motion.

### III.   TOP HAT EXEMPTION

A "top hat" plan is an ERISA plan that is unfunded and maintained "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  Section 1101(a)(1).  Such a plan is exempt from the fiduciary duties imposed by ERISA. *Id.*; *Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 512 (5th Cir. 2002).  In the instant case, the WAP itself contains a statement that the plan's sponsor believes that the WAP is a top hat plan because it "constitutes an unfunded plan of deferred compensation maintained for a select group of management or highly compensated employees and, therefore, exempt from many ERISA requirements."  This language, while helpful, is not dispositive under the law.  *See Carrabba v. Randalls Food Markets, Inc.*, 38 F. Supp. 2d 468, 472 (N.D. Tex. 1999).

The parties agree that the WAP is unfunded, and it is clear that deferred compensation is provided under the plan.  The present dispute boils down to whether the *primary purpose* of the plan is to provide deferred compensation for *a select group of management or highly compensated employees*.  The former prerequisite is known as the "primary purpose" factor, while the latter is known as the "selectivity" factor.  Not surprisingly, Plaintiffs argue that the WAP is not selective and lacks the required primary purpose, while Defendants contend that the Plan meets both requirements.  The parties agree that whether a plan qualifies as a

5

"top hat" exemption is a question of law, and that the burden of proof rests with the Defendants in this case. *See Carrabba*, 38 F. Supp. 2d at 470. On the other hand, the Fifth Circuit has made clear that factors *underlying* the top hat exemption – such as selectivity and high compensation – can constitute fact issues. *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 627 (5th Cir. 2014) ("The resolution of the dispute over the 'top hat' exemption may require factual determinations regarding, for example, selectivity and high compensation.").

The parties disagree whether a third factor must be examined – that of "substantial influence."  Plaintiffs contend that Defendants cannot show that the Plaintiffs, on an individual basis, had the ability to affect or substantially influence the design and operation of the WAP.  Defendants counter that the Fifth Circuit Court of Appeals has not explicitly adopted a "substantial influence" test for the determination of a top hat exemption, and that the question has no application to these proceedings.

In short, at issue for the Court and parties in context of the pending summary judgment motions are the following:

1.  Whether the primary purpose of the WAP was to provide deferred compensation to a "select group of management or highly compensated employees";

2.  Whether the WAP was maintained for a "select group of management or highly compensated employees" during the relevant plan years; and

3.  Whether Plaintiffs were required to have, and did have, an ability to affect or substantially influence the design and operation of the WAP on an individual basis.

6

### A.   Primary Purpose

In their Motion for Partial Summary Judgment, Plaintiffs argue that Defendants cannot establish the "primary purpose" factor as a matter of law.  In Plaintiffs' view, Defendants' own documents show that the WAP was used primarily to recruit, develop, and retain numerous stock brokers and other employees in order to promote and expand Defendants' businesses.

According to the documents and other summary judgment evidence presented by Plaintiffs, Defendants overtly used and promoted the WAP as a competitive tool to recruit, develop, and retain desirable and successful financial consultants.  Plaintiffs direct the Court to deposition statements of Gabriela Sikich, RBC's designated corporate representative regarding the WAP, confirming that the WAP had, since its inception, been intended to attract and retain financial consultants ("FC's"):

Q:   Do you agree that the objective – the strategic objective of WAP was to attract and retain financial consultants?

A:   Yes[.]

Q:   You all looked at, specifically looked at what was available in the marketplace that might be competitive so that you could attempt to either attract FC's away from competitors or protect your own FC's from being taken away from you by competitors; isn't that true?

A:   Correct.

Q:   And you agree with me that your WAP plan was always intended to retain and attract highly productive FC's, right?

A:   WAP is a retention and recruiting tool, correct.

(Docket Entry No. 84, pp. 15–16.) Plaintiffs further call attention to RBC's own documents, which state that, "The WAP is an important part of the Total Rewards package offered at RBC Wealth Management and is integral to our Finishing Well strategy." *Id.*, p. 16.

Plaintiffs' argument, however, misses the mark. The ERISA statute requires a *primary* purpose; it does not speak in terms of a *sole* or *exclusive* purpose. Indeed, RBC's ability to utilize the WAP as a recruitment and retention tool was premised on the fact that the inherent purpose of the WAP was to provide deferred compensation. Stated differently, the fact that the WAP was intended from its inception to be a top hat plan for deferred compensation to certain employees stands as the very reason RBC was able to utilize it as a recruitment and retention tool.

This controlling distinction between "purpose" and "use" of top hat plans is well recognized. In *Alexander v. Brigham and Women's Physicians Organization, Inc.*, the federal district court determined that a plan's intended use as an employee recruitment and retention plan did not disqualify an otherwise valid top hat plan:

> The fact that a plan is 'established as a means to retain valuable employees' does not disqualify it from top hat status it otherwise deserves. *Demery*, 216 F.3d at 287. This is equally true if a plan providing unfunded, deferred compensation also aids recruitment of desirable employees.
>
> > Top hat plans are designed to provide certain employees with payments over and above the benefits provided by 'qualified' employee benefit plans – *i.e.*, plans that are eligible for favorable tax treatment, such as [the employer's] standard retirement plan. The Internal Revenue Code limits the value of benefits that may be paid under qualified plans, *see* 26 U.S.C. §§ 401(a)(17), 415—hence the need for top hat plans when

8

employers wish to provide a higher level of deferred compensation to their employees.

*Eastman Kodak v. STWB, Inc.*, 452 F.3d 215, 217 (2d Cir. 2006).  A desire to recruit and retain excellent employees would be a common, rather than unusual, motive for establishing a top hat plan. . . . *The fact that the creation of a plan was motivated by a desire to recruit and retain excellent employees does not disqualify it from receiving the top hat status it otherwise merits.*

467 F. Supp. 2d 136, 142–43 (D. Mass.), *aff'd*, 513 F.3d 37 (1st Dist. 2008) (emphasis added).

Further, the Department of Labor issued an ERISA opinion in which it stated that the term "primarily," as used in the phrase "primarily for the purpose of providing deferred compensation," refers to the purpose of the plan – that is, the benefits provided. U.S. Dept. of Labor ERISA Opinion 90-14A at 2.  Plaintiffs do not dispute that the primary benefit provided by the terms of the WAP itself was deferred compensation; rather, they contend that Defendants' promoting, marketing, and use of the WAP as an employee recruitment and retention tool overshadowed the deferred compensation benefits it provided.  Plaintiffs' argument is not supported by applicable legal authority.  To the contrary, Defendants have provided probative summary judgment evidence that the WAP, from inception, was designed to "constitute[] an unfunded plan of deferred compensation maintained for a select group of management or highly compensated employees and, therefore, exempt from many ERISA requirements."  However, as previously stated, this evidence does not entitle Defendants to summary judgment on the top hat issue as a matter of law.

9

The Court finds that Defendants have raised a genuine issue of material fact regarding the primary purpose of the WAP for purposes of the top hat exemption, and that Plaintiffs are not entitled to summary judgment on this issue.

## B.   Selectivity

Unlike the "primary purpose" factor above, the "selectivity" factor is multifaceted and does not lend itself to a straightforward determination. The parties agree that qualitative and quantitative elements are involved in the determination of a plan's selectivity, but they disagree as to the parameters and necessary proof of those elements. The parties further disagree as to whether "substantial influence" is an element of the selectivity factor. Their disagreement as to these matters is not surprising, given the lack of judicial cohesiveness as to those very issues among the various circuits.

*"Substantial Influence"*

The parties disagree as to whether the WAP must meet a separate element of selectivity generally known as "substantial influence." Plaintiffs contend that, as part of their burden of proof on the top hat issue, Defendants must show that each Plaintiff carried or could exert substantial influence over the terms and provisions of the plan, such that they did not need the full panoply of protections provided by ERISA. (Docket Entry No. 84, p. 14.) Defendants essentially argue that this purported additional selectivity factor is a fiction. Both sides cite persuasive decisions from various district courts and circuits.

The Court will once again look first to the actual text of the top hat statutory provision for guidance: a plan must be "unfunded" and "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Nowhere within that deceptively simple language does Congress mention "bargaining power" or "substantial influence," whether addressed on an individual, group, or collective basis.

Acknowledging that the top hat statute itself is silent, Plaintiffs argue that the substantial influence factor had its genesis in a 1990 Department of Labor ("DOL") opinion letter, to-wit:

> It is the view of the Department that in providing relief for 'top-hat' plans from the broad remedial provisions of ERISA, Congress recognized that *certain individuals, by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan*, taking into consideration any risks attendant thereto, and, therefore, would not need the substantive rights and protections of Title I [of ERISA].

DOL Op. No. 90–14A (emphasis added).   Plaintiffs argue that this substantial influence requirement is an independent top hat factor that Defendants must establish as a matter of law for each individual Plaintiff.

To the extent the Fifth Circuit Court of Appeals has spoken on the issue, this Court would look no further.  However, the Fifth Circuit has not directly ruled that DOL Opinion 90-14A sets forth essential requirements for establishing a valid top hat plan.  At most, the Fifth Circuit has acknowledged DOL Opinion Letter No. 90-14A in a footnote:

11

[Top] hat plan participants, unlike ordinary pension plan participants, are typically high-ranking management personnel. Top hat plan participants are therefore better equipped than ordinary pension plan participants to effectively protect their interests in the employee benefits bargaining process. This is the very reason that Congress chose not to subject top hat plans to ERISA's vesting, accrual, participation, and fiduciary requirements. As the Department of Labor has observed:

> [I]n providing relief for 'top hat' plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their positions or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and therefore, would not need the substantive rights and protection of Title I [of ERISA].

Dep't of Labor Op. Ltr. 90–14A.

*Spacek v. Maritime Ass'n,* 134 F.3d 283, 296 n. 12 (5th Cir. 1998). Whether this footnote dictum translates into a independent factor for consideration regarding the validity of a purported top hat plan is not answered by *Spacek*.

The question was subsequently posed, but not clearly answered, in *Carrabba v. Randalls Food Markets, Inc.,* 38 F. Supp. 2d 468, 470 (N.D. Tex.1999), *aff'd,* 252 F.3d 721 (5th Cir. 2001), wherein the district court opined:

> Perhaps, as the Department of Labor and some of the court decisions have suggested, the 'select group' test is whether the members of the group have positions with the employer of such influence that they can protect their retirement and deferred compensation expectations by direct negotiations with the employer. *The evidence does not persuade the court that any significant number of the participants in the [plan] individually had bargaining power of that kind.* Of course, as a group, to the extent that they could act cohesively, they undoubtedly could influence the design and operation of the [plan], but that would be true of any group of employees within a company.

*Id.* (emphasis added).[2] This permutation of a "substantial influence" factor would require proof that a significant number of WAP participants individually had the requisite bargaining power; it would not, however, require Defendants to prove that each of the Plaintiffs individually carried such status.

Neither *Spacek* nor *Carrabba* squarely held that the "substantial influence" element of DOL Letter 90–14A must be considered and met when establishing the validity of a top hat plan. Consequently, it is not readily clear whether the issue is an additional consideration for the courts in determining the selectivity issue, or whether it stands as an additional factor requiring separate analysis. A careful reading of *Carrabba* suggests that the district court addressed "substantial influence" as a part of the selectivity issue and not as a separate factor standing alone. Thus, it would appear that the "substantial influence" or "bargaining power" issue may be, at most, a part of the overarching "selectivity" factor, and not a separate, independent test for purposes of the top hat exemption.

A second significant question raised but left unanswered in *Carrabba* is whether any substantial influence factor is to be considered on an individual, group, or collective basis.

---

[2]The Fifth Circuit's opinion affirming the district court's decision states, in its entirety, as follows:

> The court has carefully considered this appeal in light of the excellent briefs, oral arguments, and pertinent portions of the record. Having done so, we find no reversible error of fact or law by the district court and affirm based on that court's conscientious, well-reasoned opinions, which will be published.

*Carrabba v. Randalls Food Markets, Inc.*, 252 F.3d 721, 712–22 (5th Cir. 2001).

That is, must each plan participant have the prerequisite degree of influence, or is it sufficient that the participants – or a relevant group of participants – be shown to have such influence? Again, a careful reading of the district court's opinion in *Carrabba* suggests that, if such a test were to apply, it would apply on a group basis based on examination of the individual participants: "The evidence does not persuade the court that any significant number of the participants in the [plan] individually had bargaining power of that kind." 38 F. Supp. 2d at 470. The district court expressly excluded any application of a "collective bargaining" approach to a substantial influence test: "Of course, as a group, to the extent that they could act cohesively, they undoubtedly could influence the design and operation of the [plan], but that would be true of any group of employees within a company." *Id.*

Consequently, to any extent that a "substantial influence" factor is relevant to the selectivity issue, it would require a showing that a "significant number of the participants in the [plan] individually had bargaining power of that kind." *Id.* Moreover, at least one federal circuit has recognized that the necessary sufficient influence over the design and operation of the plan could be exerted through the participant's attorney. *Duggan v. Hobbs*, 99 F.3d 307, 312 (9th Cir. 1996). By arguing that they themselves did not have substantial influence over the WAP, Plaintiffs do not establish entitlement to summary judgment as a matter of law under *Carrabba*, as Defendants need not meet such level of proof. Moreover, Defendants themselves do not show they are entitled to summary judgment as a matter of

law, as they have not shown that a significant number of WAP participants individually had the required bargaining power.

As did the district court in *Carrabba*, this Court acknowledges, but does not expressly adopt, a "substantial influence" or "bargaining power" factor for use in determining the top hat issue, and rejects any argument that each participant must meet a "substantial influence" standard. For example, the First Circuit Court of Appeals declined to fashion a substantial influence requirement from DOL opinion letter No. 90-14A, and rejected the notion that a top hat plan status requires members to possess individual bargaining power. *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 47 (1st Cir. 2008). The First Circuit reasoned:

> The appellant leans heavily on the reasoning of [DOL Op. No. 90–14A] and chronicles a number of cases in which courts have cited the letter when discussing the individualized bargaining power of top-hat plan contributors. Insofar as these cases adumbrate a hard-and-fast requirement that individual top-hat plan beneficiaries must have bargaining power, they all ultimately derive that requirement from the DOL opinion letter.
>
> We decline the appellant's invitation to depart from the plain language of the statute and jerry-build onto it a requirement of individual bargaining power. The DOL opinion letter speaks only to Congress's rationale for enacting the top-hat provision. It does not present itself as an interpretation of the provision's requirements, nor does it make any mention of the need for or propriety of demanding that employers demonstrate their employees' ability to negotiate the terms of deferred compensation plans.
>
> \*   \*   \*   \*
>
> Although Congress's rationale for fashioning the exemption was that the members of a 'select group of management or highly compensated employees' could fend for themselves, the statute, by its terms, does not purport to require

proof of power of any sort. In such circumstances, it would be highly unorthodox to convert a rationale (like the one set forth in the DOL opinion letter) into an independent statutory test.

*Id.*, at 47–48 (citations omitted). Had Congress wanted to incorporate a "substantial influence" requirement into the top hat statute, it could have done so; Congress, however, did not further define "select group" with reference to a substantial influence element. 29 U.S.C. § 1101(a)(1).

Nevertheless, the "substantial influence" factor was discussed and applied to a degree by the court in *Carrabba*, and it would appear that, for now, the factor cannot be discounted. The *Carrabba* opinion concluded that "the 'select group' test is whether the members of the group have positions with the employer of such influence that they can protect their retirement and deferred compensation expectations by direct negotiations with the employer." *Id.* at 478. The parties here have not specifically addressed the issue, or the evidence, in this light. Moreover, the "substantial influence" factor is but one part of the selectivity issue as a whole, and is not a determinant factor in isolation from consideration of other selectivity factors.

For these reasons, the motions for partial summary judgment and summary judgment must be denied. Nevertheless, the Court will broadly address the parties' remaining disputes regarding the selectivity issue.

16

*Qualitative and Quantitative Factors*

The parties' second area of disagreement regards the selectivity factor itself; that is, whether the WAP involves a "select group of management or highly compensated employees." The top hat statute provides no definitions or other guidelines regarding these terms or the phrase as a whole, and those federal circuits that have spoken to the issue, have done so without consensus. More importantly, the Fifth Circuit has not itself directly addressed the issue.

In determining whether an ERISA plan qualifies as a top hat plan, a number of circuit courts have required consideration of qualitative and quantitative factors such as (1) the percentage of the total workforce eligible to participate in the plan (quantitative), (2) the nature of their employment duties (qualitative), (3) the compensation disparity between top hat plan members and non-members (qualitative), and (4) the actual language of the plan agreement (qualitative). *See Alexander v. Brigham and Women's Physician Org., Inc.*, 513 F.3d 37, 43–47 (1st Cir. 2008); *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007); *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 288–290 (2d Cir. 2000); *Duggan v. Hobbs*, 99 F.3d 307, 312 (9th Cir. 1996) (holding that the "select group" requirement includes "more than a mere statistical analysis"). *See also Senior Exec. Ben. Plan Participants v. New Valley Corp.*, 89 F.3d 143, 148 (3d Cir. 1996) ("Not only must the plan be unfunded and exhibit the required purpose, it must also cover a 'select group' of employees. This final limitation has both quantitative and qualitative restrictions. In

number, the plan must cover relatively few employees. In character, the plan must cover only high level employees."). These qualitative and quantitative factors must be considered holistically, and no one factor carries more weight than any other factor in determining whether a plan meets the top hat exemption.[3]

By its own terms, the WAP is a plan in which certain employees of the Royal Bank of Canada and its "Participating Subsidiaries" may participate, if eligible. Thus, the relevant employee pool or "workforce" for purposes of these proceedings would be the employees of the Royal Bank of Canada and its "Participating Subsidiaries." The parties disagree as to the relevant numbers, and each presents facts and figures supportive of its legal position. The Court's determination of these issues will require a trial. As already noted, the four selectivity factors are interwoven, and no one factor, standing alone, is determinative. *See, e.g.*, *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 289 (2d Cir. 2000) ("Plaintiffs argue that because Plan B was offered to 15.34% of Extebank employees, the plan was offered to more than a select group. While this number is probably at or near the upper limit of the acceptable size for a 'select group,' we cannot say that it alone made Plan B too broad to be a top hat plan without considering the positions held at the bank by the Plan's participants.").

---

[3] It bears noting that the *Carrabba* court did not explicitly reference these four qualitative and quantitative factors in reaching its decision. Nevertheless, the court applied the factors to the facts of the case.

As a result, Defendants have raised a genuine issue of material fact as to this quantitative aspect of the selectivity issue, and Plaintiffs are not entitled to partial summary judgment. Moreover, Defendants do not establish that they are entitled to summary judgment as a matter of law.

The Court must also examine the nature of the participants' employment duties, as a qualitative factor. To the extent the parties dispute the nature of Plaintiff Brenda Tolbert's own employment, Plaintiffs present testimony that she was a secretary or administrative assistant and did not qualify as a select employee. Defendants, however, presented equally probative evidence that Tolbert was a licensed broker in her own rights and that she gave advice, direction, or information to investment clients as part of her work. Accordingly, Defendants have raised a fact issue regarding Tolbert's work duties and her standing as part of a select group for purposes of the WAP top hat issue. As to the qualitative employment duties of other participants in the WAP, the parties have not provided the Court adequate evidence to reach a determination as a matter of law. Even so, that a small number of participants are not "high ranking" is not dispositive of the top hat issue. *Demery*, 216 F.3d at 289. Defendants have, however, presented probative summary judgment evidence of other participants' work duties sufficient to raise a genuine issue of material fact precluding summary judgment against them.

The Court must next consider the compensation disparity, if any, between WAP participants and non-participants, as a qualitative factor. This factor requires an in-depth

19

review and analysis of workforce and participant compensation for the relevant plan years. Although Plaintiffs argue that one set of WAP participants, the financial consultants, are eligible for participation based upon their production, the comparison factors remain unchanged in that their salaries or other compensation are the relevant metric here.

In *Carrabba*, the court opined that, "Rather than the average salary, the range of the salaries is more useful." 38 F. Supp. 2d at 477. The parties have presented this evidence through a statistical analysis submitted by their respective expert witnesses. The two experts have utilized the same set of raw data but have extrapolated and analyzed the data under different methodologies. Each expert refutes the reliability and propriety of the other expert's methodologies, and decries the conclusions reached by his or her respective counterpart. The Court has given each expert's reports considerable review, and is compelled to conclude that summary judgment in favor of either party would be inappropriate at this juncture, given the depth, breadth, and complexity of the statistical analyses. The reports raise numerous factual issues that cannot, and will not, be resolved at this summary judgment stage, and that are best left for trial.

The final factor calls for a review of the actual language of the plan itself, as a qualitative factor. As noted earlier, the WAP itself contains a statement that the plan's sponsor believes that the WAP is a top hat plan because it "constitutes an unfunded plan of deferred compensation maintained for a select group of management or highly compensated employees and, therefore, exempt from many ERISA requirements." This language

20

constitutes probative evidence, but is not dispositive. *Carrabba*, 38 F. Supp. 2d at 472.

Thus, the language of the WAP itself raises a genuine issue of material fact.

In sum, Defendants have raised genuine issues of material fact regarding the top hat exemption, requiring this Court to deny Plaintiffs' motion for summary judgment. Defendants fail to prove, however, that the WAP is a top hat plan as a matter of law, and the Court must deny their motion for summary judgment. Resolution of the top hat exemption issue must proceed to trial.

## IV. CONCLUSION

The Court **ORDERS** as follows:

1.  Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 84), seeking summary judgment holding that the WAP is not a top hat plan under 29 U.S.C. § 1101(a)(1), is **DENIED**.

2.  Defendants' Motion for Summary Judgment (Docket Entry No. 91) is **DENIED IN PART** insofar as it seeks summary judgment holding that the WAP is a top hat plan under 29 U.S.C. § 1101(a)(1).

3.  The remainder of Defendants' Motion for Summary Judgment is taken under advisement by the Court for disposition in a separate order.

4.  Defendants' response to Plaintiffs' Amended Motion to Certify Class (Docket Entry No. 162) is due **MAY 12, 2015**.

Signed at Houston, Texas, on this the ___ day of April, 2015.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

21