**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRENDA TOLBERT, et al., | § | |
| | § | |
| Plaintiff | § | |
| | § | No. 4:11-CV-107 |
| v. | § | |
| | § | Judge Keith P. Ellison |
| RBC CAPITAL MARKETS | § | |
| CORPORATION n/k/a RBC CAPITAL | § | |
| MARKETS, LLC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL AND RE-URGED**
**MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION AND SUMMARY OF ARGUMENT** ........................................................ 1

**NATURE AND STAGE OF PROCEEDINGS** ........................................................... 3

**ARGUMENT** ................................................................................... 5

I.      **Rule 23 Requires A "Rigorous Analysis."** ..................................... 5

II.    **Rule 23's "Rigorous Analysis" Must Begin With The True Nature Of Plaintiffs' Claims And The Relief They Seek—Which Plaintiffs Have Never Explained** ................................................................. 5

III.   **Plaintiffs Cannot Satisfy Adequacy, Commonality, Or Typicality Under Rule 23(a)** ..................................................................... 7

     A.     Their Claims Untimely, Plaintiffs Are Not Adequate Class Representatives .................................................................. 7

     B.     Plaintiffs' Interests Conflict With Those Who Were Unharmed By The WAP's Top-Hat Status, But Would Be Harmed By The Relief Plaintiffs Seek ......................................................................... 8

IV.    **Plaintiffs Also Cannot Satisfy Any Of Rule 23(b)'s Requirements** ......................... 12

     A.     Plaintiffs Cannot Satisfy Rule 23(b)(1) Or (b)(2) Because Many Class Members Suffered No Injury And Would Be Harmed By Plaintiffs' Relief ...... 12

     B.     Plaintiffs Cannot Satisfy Rule 23(b)(2) Because They Do Not Truly Seek Injunctive Relief And Lack Standing To Do So In Any Event ........................... 15

     C.     Individual Issues Predominate And Thus Preclude Rule 23(b)(3) Certification ...................................................................... 17

V.     **Plaintiffs' Proposed Class Is Substantially Overbroad** ............................... 17

     A.     Plaintiffs Cannot Amend Their Complaint Through Motion Practice ................. 17

     B.     Plaintiffs' "Revised" Class Definition Is Fundamentally Flawed Because It Depends Upon A Misapplication of *American Pipe* Tolling Principles .............. 18

          1.     *American Pipe* Tolling Does Not Apply To ERISA's Statute of Repose ...................................................................... 19

          2.     Even If Tolling Were Applied, It Must Be Limited To Putative Class Members Within Plaintiffs' Original Putative Class ..................... 21

          3.     Plaintiffs Are Not Entitled To Equitable Tolling *After* Class Certification Was Denied ........................................................ 22

**CONCLUSION** ................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Brigham & Women's Physicians Org., Inc.*,
    513 F.3d 37 (1st Cir. 2008) ..................................................................................... 14

*Allison v. Citgo Petro. Corp.*,
    151 F.3d 402 (5th Cir. 1998) ......................................................................... 12, 15, 16

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................... 8, 9, 17

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ........................................................................................ passim

*Anderson v. U.S. Dept. of Housing & Urban Dev.*,
    554 F.3d 525 (5th Cir. 2008) ................................................................................... 18

*Archer v. Nissan Motor Acceptance Corp.*,
    550 F.3d 506 (5th Cir. 2008) ................................................................................ 8, 19

*Armstrong v. Martin Mariette Corp.*,
    138 F.3d 1374 (11th Cir. 1998) ............................................................................... 25

*Bond v. Marriott Int'l, Inc.*,
    296 F.R.D. 403 (D. Md. 2014) ........................................................................ passim

*Bridges v. Dept. of Md. State Police*,
    441 F.3d 197 (4th Cir. 2006) ........................................................................... passim

*Brown v. Nucor Corp.*,
    576 F.3d 149 (4th Cir. 2009) ..................................................................................... 8

*Burlington Northern & Santa Fe Ry. Co. v. Poole Chem. Co.*,
    419 F.3d 355 (5th Cir. 2005) ................................................................................... 19

*Calderon v. Presidio Valley Farmers Assoc.*,
    863 F.2d 384 (5th Cir. 1989) ....................................................................... 23, 24, 25

*Cigna Corp. v. Amara*,
    131 S. Ct. 1866 (2011) ....................................................................................... 6, 14

*Costello v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ............................................................................ 18

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)..................................................................................19, 21

*Cutrera v. Bd. of Supervisors of La. State Univ.*,
    429 F.3d 108 (5th Cir. 2005) ...............................................................18

*Cwiak v. Flint Ink Corp.*,
    186 F.R.D. 494 (N.D. Ill. 1999).............................................................18

*Dickson v. Am. Airlines, Inc.*,
    685 F. Supp. 2d 623 (N.D. Tex. 2010) .............................................22, 23

*Drumm v. Sizeler Realty Co., Inc.*,
    817 F.2d 1195 (5th Cir. 1987) ...............................................................20

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) .............................................................16, 24

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
    770 F. Supp. 2d 618 (S.D.N.Y. 2011)...............................................20, 21

*Gen. Tele. Co. of the Sw v. Falcon*,
    457 U.S. 147 (1982)...............................................................................8

*Gosselink v. Am. Tel. & Tel., Inc.*,
    1999 WL 33737341 (S.D. Tex. Aug. 4, 1999) ......................................8

*Hall v. Variable Annuity Life Ins. Co.*,
    727 F.3d 372 (5th Cir. 2013) ...............................................21, 22, 23, 25

*In re BP p.l.c. Secs. Litig.*,
    51 F. Supp. 3d 693, 699 (S.D. Tex. 2014) ...........................................22

*In re Lehman Bros. Secs. & ERISA Litig.*,
    800 F. Supp. 2d 477 (S.D.N.Y. 2011)...............................................20, 21

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ...............................................................18, 21

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990)...............................................................................20

*Jones v. Saxon Mortg., Inc.*,
    537 F.3d 320 (4th Cir. 1998) ...............................................................19

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
    501 U.S. 350 (1991)...............................................................................21

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ....................................................................5

*Maldonado v. Ochsner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) ...............................................................15, 16

*Odle v. Wal-Mart Stores, Inc.*,
   747 F.3d 315 (5th Cir. 2014) ...........................................................22, 24, 25

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)...............................................................................12

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004)......................................................................20

*Piney Woods Country Life Sch. v. Shell Oil Co.*,
   170 F. Supp. 2d 675 (S.D. Miss. 1999).................................................19, 25

*Plascencia v. Lending 1st Mortg.*,
   2012 WL 253319 (N.D. Cal. Jan. 26, 2012) ...............................................18

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.
   Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012)..................................................20, 21

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013)......................................................................21

*Radford v. Gen'l Dynamics Corp.*,
   151 F.3d 396 (5th Cir. 1998) .............................................................8, 19, 20

*Salazar-Calderon v. Presidio Valley Farmers Assoc.*,
   765 F.2d 1334 (5th Cir. 1985) .............................................................22, 23

*Sawtell v. E.I. du Pont de Nemours & Co., Inc.*,
   22 F.3d 248 (10th Cir. 1994) ..............................................................18, 21

*Smith v. Pennington*,
   352 F.3d 884 (4th Cir. 2003) ..............................................................18, 21

*Spano v. Boeing*,
   633 F.3d 574 (7th Cir. 2011) ...........................................................8, 9, 12, 13

*Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ....................................................................9

*Taylor v. United Parcel Serv.*,
   554 F.3d 510 (5th Cir. 2008) ..............................................................22, 24

*Thomas v. City of Galveston, Texas,*
    800 F. Supp. 2d 826 (S.D. Tex. 2011) ...................................................18

*Veltri v. Bldg. Serv. 32B-J Pension Fund,*
    393 F.3d 318 (2d Cir. 2004)........................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) .......................................................................... passim

*Youngblood v. Dalzell,*
    925 F.2d 954 (6th Cir. 1991) ......................................................................20

## STATUTES

29 U.S.C. § 1109(a) .............................................................................................6

29 U.S.C. § 1113............................................................................7, 20, 21, 25

29 U.S.C. § 1132(a) ....................................................................................3, 6, 13

I.R.C. § 402(b)(4)...............................................................................................9

I.R.C. § 409A ......................................................................................................9

## RULES

Fed. R. Civ. P. 10(c) ...........................................................................................4

Fed. R. Civ. P. 23(a)-(b) ............................................................................ passim

Fed. R. Civ. Proc. 23(c)(1)(B) ........................................................................18

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' "First Amended and Re-Urged Motion for Class Certification" asks the Court to certify a class of current and former participants in RBC's "Wealth Accumulation Plan" ("WAP") going back to June 14, 2004, almost *eleven years* from the present. Dkt. 162 at 3. For various reasons, plaintiffs' motion should be denied.

Despite years of litigation, plaintiffs still have not articulated the precise nature of their claims, the specific relief they hope to obtain, or the legal basis upon which this Court could actually grant any such relief. And they certainly have not done so in a way that satisfies the "rigorous analysis" under Rule 23 to demonstrate that their claims are appropriate for class certification and that the relief they seek can be granted on a class-wide basis. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

This failure alone justifies denying their "Re-Urged" motion, but plaintiffs' reliance on unspecific, sweeping assertions also masks significant differences and conflicts among the members of their proposed class, which prevent them from establishing the adequacy, commonality, and typicality requirements of Rule 23(a). As shown in RBC's summary judgment briefing, plaintiffs' claims are time-barred under any applicable limitations period, and thus they cannot serve as adequate class representatives. Regardless, their proposed class is rife with conflicts—it would include individuals who *benefited* from RBC operating the WAP as a top-hat plan and those who would be *harmed* by retroactively requiring that the WAP comply fully with ERISA's funding, vesting, and anti-forfeiture provisions. Moreover, into which category a particular individual falls depends upon a variety of individualized facts—when they participated, their compensation or production, how they elected to receive their distribution, and whether they forfeited company contributions.

Likewise, the intra-class conflicts negate certification under any provision of Rule 23(b). The conduct plaintiffs allege—operating the WAP as a top-hat plan—helped most putative class

members (who had no forfeitures), meaning certifying a mandatory class under Rule 23(b)(1) or (b)(2), whereby every class member will be conclusively bound by the judgment without a chance to opt-out, is inappropriate. Moreover, given the competing interests and lack of harm across the class, plaintiffs have not explained how the Court could grant a single form of *relief* that would benefit the class *as a whole*. With respect to Rule 23(b)(2), plaintiffs—former WAP participants—lack standing to seek injunctive and declaratory relief; what they really seek is to recover their own forfeited WAP benefits. But seeking predominantly monetary damages, rather than injunctive relief, renders a Rule 23(b)(2) class improper. And finally, individualized factors predominate over any issues arguably common to the proposed class, meaning Rule 23(b)(3) certification is also unwarranted.

In any event, should the Court disagree and conclude that some class is appropriate, it should reject the overbroad one plaintiffs propose. For starters, any class must be limited only to those participants who potentially suffered harm from RBC's operation of the WAP as an ERISA-exempt top-hat plan. RBC submits that the only people falling within this category would be, for any particular year, those who the Court determines *should not have been* included in a properly constituted (i.e., "sufficiently select") top-hat plan.

Plaintiffs' proposed class period is also too long. Both their original and amended complaints (and their first motion for class certification) proposed a class period beginning four years before this lawsuit was filed. Now, without amending their complaint or otherwise seeking leave, they try to expand that period back to June 14, 2004, more than six-and-a-half years before the complaint was filed. This is impermissible and cannot be accomplished through motion practice. Second, plaintiffs proposed class period incorrectly applies equitable tolling principles in several ways: (1) absent class members are not entitled to equitable tolling because ERISA's six-year limitations period is a statute of *repose*; (2) even if applicable, tolling based on the filing of a putative class action does not apply to someone who falls *outside* of the class originally

proposed; and (3) tolling ended when this Court denied plaintiffs' first motion for class certification on March 28, 2012 (Dkt. 97).

For the reasons stated below and in RBC's prior briefing, the Court should reject plaintiffs' broad request for class certification.

## NATURE AND STAGE OF PROCEEDINGS[1]

Plaintiff Tolbert filed the "Original Complaint" in this action on January 11, 2011, asserting claims under ERISA § 502(a)(1)(B), (a)(2), and (a)(3), and the following Rule 23 class:

> [A]ll persons who—**within the last four years**—have or had at least five years of service with [Defendants]; are current or former employees of Defendant(s); and were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased.

Dkt. 1 ¶ 8 (emphasis added); *see id.* ¶¶ 23-24. Tolbert filed an "Amended Complaint" on April 27, 2011, proposing the same class definition. Dkt. 24 ¶ 8.

Tolbert moved for class certification on April 27, 2011, asking the Court to certify the same four-year class proposed in her Original and Amended Complaints. Dkt. 31 at 5. RBC argued, among other things, that Tolbert's proposed class definition was improper because the four-year class period was overbroad in light of the applicable statute of limitations. Dkt. 45 at 12-18. RBC maintained that this case should really be construed as a claim for benefits under ERISA § 502(a)(1)(B), in which case Minnesota's two-year statute of limitations for breach of contracts should apply. *Id.* at 13-16.

The parties filed cross-motions for summary judgment. Dkt. 84; Dkt. 91. Both motions were fully briefed by March 26, 2012. *See* Dkt. 95 (Defs.' Reply).

This Court denied plaintiff's class certification motion on March 28, 2012. Dkt. 97. The Court noted that "Plaintiff seeks to represent a class of [a]ll persons who—**within the last four years**—have or had at least five years of service with Defendants, are current or former employees of Defendants, and were participants in the WAP or who are personal representatives

---

[1] At this point in the proceedings, the Court has received numerous submissions from both parties containing recitations of the facts relevant to summary judgment and class certification. RBC expressly incorporates its prior briefing with respect to these motions, *see infra* at 4 n.2, and does not set forth a separate section restating the facts.

for or beneficiaries of any such person who is deceased." *Id.* at 2 (emphasis added).  The Court indicated that its ruling was subject to reconsideration, "if appropriate," following disposition of the pending summary judgment motions.  *Id.* at 5.

The following day, the Court granted Tolbert's motion to join plaintiffs Gift and Neuhaus.  Dkt. 98.  Despite the denial of class certification and overtures from RBC, plaintiffs chose not to alter the Amended Complaint in any way, but instead to "adopt" it in full.  *See* Dkt. 94 at 1; Dkt. 99 at 1 n.1; Dkt. 116 at 1; Dkt. 123 at 1; Dkt. 125 at 3 n.1; Dkt. 162 at 3 n.1.

In the following months, plaintiffs filed numerous pleadings purportedly in support of both class certification and summary judgment.  *See* Dkts. 51, 55, 76, 112, 116, 121-122, 123, 125.[2]  Among these was an October 5, 2012 "Supplemental and Re-Urged Motion for Class Certification."  Dkt. 125.  In contrast to plaintiffs' Amended Complaint and prior class motion, the "Re-Urged" motion proposed the following class:

> All persons who—**since June 11, 2004**—have or had at least five years of service with Defendants, and who were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased[.]

*Id.* at 3 (emphasis added).  On October 29, 2012, the Court deferred the deadline for responding to plaintiffs' "Re-Urged" motion until it ruled on the parties' summary judgment motions.

On March 27, 2013, the Court granted RBC's motion for summary judgment, finding the WAP was not a "pension benefit plan" governed by ERISA.  Dkt. 146.  The Fifth Circuit reversed on July 14, 2014, and remanded for consideration of the remaining issues raised by the summary judgment motions, including the WAP's top-hat status.  758 F.3d 619 (2014).

On August 5, 2014, plaintiffs filed another motion for class certification, styled as a "First Amended and Re-Urged Motion for Class Certification."  Dkt. 162.  Plaintiffs changed their proposed class definition again, this time proposing that it begin on June 14, 2004.  *Id.* at 3. On September 4, 2014, the Court again deferred disposition of plaintiffs' class motion until after

---

[2] Plaintiffs' "First Amended and Re-Urged" motion, to which this Opposition responds, purports to incorporate the arguments and evidence presented in many of these prior filings.  *See* Dkt. 162 at 3-4.  To the extent RBC filed responses or other filings related to these submissions, RBC also incorporates those filings here.  *See* Fed. R. Civ. P. 10(c).  Those include:  Dkts. 45, 50, 58, 111, and 124.

it ruled on the pending summary judgment motions. RBC also agreed at the September 4 hearing that any applicable statute of limitations would be tolled from that date until the Court ruled on summary judgment. *See* Sept. 4, 2014 Minute Entry.

On April 28, 2015, the Court ruled on the parties' summary judgment motions. Dkt. 174. The Court denied plaintiffs' motion in its entirety and, finding that disputed factual issues require a trial on WAP's top-hat status, denied RBC's motion on that issue. *Id.* The Court took RBC's remaining arguments under advisement. *Id.*

For the reasons set forth below, RBC opposes plaintiffs' request for certification of any class, and certainly the significantly overbroad class they propose.

## ARGUMENT

### I.      Rule 23 Requires A "Rigorous Analysis."

Plaintiffs bear the burden of establishing all of Rule 23's requirements. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007). "Rule 23 does not set forth a mere pleading standard," and courts must undertake a "rigorous analysis" of each Rule 23 prerequisite before certifying a class. *Dukes*, 131 S. Ct. at 2551. This analysis often "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*; *see also Langbecker*, 476 F.3d at 299 (courts "must evaluate with rigor the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues"). Applying such rigor here, the Court should deny plaintiffs' motion.

### II.     Rule 23's "Rigorous Analysis" Must Begin With The True Nature Of Plaintiffs' Claims And The Relief They Seek—Which Plaintiffs Have Never Explained.

Any "rigorous analysis" of the Rule 23 requirements must begin with the nature of plaintiffs' claims and the actual relief they seek, as this will be the starting point from which all else follows, including the proof necessary for establishing liability, potential defenses, a theory of harm and damages, and whether the relief sought can be granted on a class-wide basis. Here, despite years of litigation and extensive briefing, plaintiffs have not articulated clearly what type of claim they bring and, equally important to certification, what theory of relief they assert.

Plaintiffs purport to bring this action as a breach of fiduciary duty pursuant to ERISA

§ 502(a)(2) and (a)(3). Dkt. 24 ¶¶ 116-120. Section 502(a)(2) authorizes a participant to seek "appropriate relief under section 1109," which in turn provides that any fiduciary who breaches his or her duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. §§ 1109(a); 1132(a)(2). Here, plaintiffs do not argue that any alleged mismanagement or breach of fiduciary duty has caused "losses to the plan." Indeed, because the WAP was designed as an exempt top-hat plan, there *was no* separately funded trust to hold assets for paying WAP benefits. *See* Dkt. 24 ¶¶ 109-10. Rather, at bottom, plaintiffs seek to recover forfeited WAP benefits by way of some form of "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

Section 502(a)(3)'s reference to "appropriate equitable relief" means "those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were typically available in equity." *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (quotations omitted). In *Cigna*, the Supreme Court remanded because the Court did not "know with certainty which remedy the District Court understood itself to be imposing," and the "particular standard for determining harm"—which could only "come from the law of equity"—would differ depending on the theory. *Id.* at 1880-81. Different equitable remedies require different elements, and it is essential for a plaintiff to identify with specificity *what* equitable relief they seek. *Id.* Only then may a court assess whether such relief can be granted on a class-wide basis.

Plaintiffs have not even tried to articulate the precise theory of "appropriate equitable relief" they seek under ERISA § 502(a)(3), much less explain how they intend to establish any right to such relief on a class-wide basis. The Court should reject certification for that reason alone. But, as described *infra* at 13-15, when considering the types of equitable relief potentially available, *any* approach will create conflicts among the putative class.

**III.    Plaintiffs Cannot Satisfy Adequacy, Commonality, Or Typicality Under Rule 23(a).**

**A.    Their Claims Untimely, Plaintiffs Are Not Adequate Class Representatives.**

For reasons detailed in RBC's summary judgment briefing, each named plaintiff's claim is time-barred under any applicable statute of limitations. *See* Dkt. 91 at 39-46; Dkt. 111 at 6-7. Thus, plaintiffs are not adequate class representatives.[3]

As RBC has previously argued, plaintiffs admittedly knew the *same* facts underlying this action the *entire* time they participated in the WAP, and certainly more than three years before their January 11, 2011 complaint. *See* Dkt. 91 at 40-41, Dkt. 95 at 17-18; Dkt. 111 at 6-7. ERISA § 413(2) requires a plaintiff to file suit within three years of the earliest date upon which she obtains "actual knowledge" of an alleged breach of fiduciary duty. 29 U.S.C. § 1113(2); *see* Dkt. 91 at 39-42 (defining "actual knowledge"). Plaintiffs' core allegation is that the WAP *never* satisfied ERISA's top-hat exemption and was continually operated in violation of ERISA. *See* Dkt. 24 ¶ 120; *id.* ¶ 33 (alleging this case is about "whether at all relevant times the WAP has been a lawful top hat plan"); Dkt. 162 at 7 ("Defendants have operated an illegal employee pension benefit plan *from 2004 to date*." (emphasis added)). But all along—and certainly before January 11, 2008—plaintiffs knew all of the same information underlying the same ERISA claim they asserted in January 2011.

RBC's summary judgment briefing also established that the fiduciary breach plaintiffs allege must have occurred before January 11, 2005, more than six years before this suit was filed, and is therefore barred by the six-year statute of repose in ERISA § 413(1), 29 U.S.C. § 1113(1). *See* Dkt. 91 at 43; Dkt. 95 at 18-19.[4] This repose period is an absolute outside limit to file suit, meaning "tolling does not apply," and neither does the "continuing violation" theory.

---

[3]  Defendants continue to maintain that despite the label plaintiffs apply, their claims are in reality to recover WAP benefits under ERISA § 502(a)(1)(B), meaning they are subject to Minnesota's two-year limitations period for breach of contract (or, at most, Texas's four-year limitations period). *See* Dkt. 91 at 45-46; Dkt. 45 at 13-16. However, plaintiffs argue that their claims are for a breach of fiduciary duty and seek relief under ERISA § 502(a)(2) and (a)(3), meaning they would be governed by ERISA § 413, 29 U.S.C. § 1113. Even assuming *arguendo* that Section 413 applies, plaintiffs' claims are still untimely.

[4]  Indeed, even plaintiffs' Amended Complaint alleges that RBC's conduct "constitutes a clear and continuing violation" of ERISA from the start. Dkt. 24 ¶ 106.

*Radford v. Gen'l Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998); *see also Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (repose period in § 413 is "an absolute barrier to an untimely suit"); *Gosselink v. Am. Tel. & Tel., Inc.*, 1999 WL 33737341, at *11 (S.D. Tex. Aug. 4, 1999) (rejecting argument that a new fiduciary breach occurred each time defendants misapplied unlawful compensation formula); Dkt. 91 at 43 (collecting cases).

Without timely claims, each of the named plaintiffs is subject to an individualized defense that precludes them from adequately representing the proposed class.

### B. Plaintiffs' Interests Conflict With Those Who Were Unharmed By The WAP's Top-Hat Status, But Would Be Harmed By The Relief Plaintiffs Seek.

Rule 23(a) is designed to "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and it does so by "effectively limit[ing] the class claims to those fairly encompassed by the named plaintiffs' claims." *Dukes*, 131 S. Ct. at 2550 (quotations omitted). Thus, the typicality, commonality, and adequacy requirements "tend to merge" and should collectively "serv[e] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (quotations omitted); *see also Gen. Tele. Co. of the Sw v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Spano v. Boeing*, 633 F.3d 574, 586 (7th Cir. 2011) (requiring a sufficient "congruence" between a plaintiff's claim and those of unnamed class members).

Likewise, Rule 23(a) requires that the proposed representative and all class members "suffered the same injury." *Dukes*, 131 S. Ct. at 2551; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (quotations omitted)). This does *not* mean "merely that [class members] have all suffered a violation of the same provision of the law." *Dukes*, 131 S. Ct. at 2551. Rather, each class member's claim "must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means

that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).

Similarly, typicality and adequacy are designed to ensure that there are no conflicts between the named plaintiffs and the class they seek to represent. *Amchem Prods.*, 521 U.S. at 625. Thus, a plaintiff's claim is not typical of a putative class member's claim if their interests are not aligned, if there are material conflicts among them, or if some putative class members were *not harmed* by the same conduct underlying the named plaintiff's claim. *See Spano*, 633 F.3d at 586; *Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 408-09 (D. Md. 2014).

Here, not all putative class members suffered "the same injury," and multiple intra-class conflicts exist. Plaintiffs seek to certify a class that would include *every* individual who worked for RBC for at least five years and participated in the WAP at some time. Dkt. 162 at 3. But unlike plaintiffs—who allege their WAP benefits were unlawfully forfeited—many within the putative class have suffered no tangible injury at all. To the contrary, many in the putative class experienced only the valuable *benefits* of the WAP's top-hat status—namely, being permitted to defer substantial amounts of direct compensation, generous contributions by RBC, and taxation on gains until a future date of their choosing. *See* Dkt. 111 at 9. Not only does this put these individuals' interests at odds with the named plaintiffs, but they also could actually be harmed by the relief plaintiffs now seek. As explained elsewhere, should plaintiffs succeed and current WAP participants' benefits are immediately vested and placed into a funded trust, those participants likely will suffer an immediate tax liability and penalties, *even before* a distribution of those benefits. *Id.* at 8-9 (citing I.R.C. §§ 402(b)(4) and 409A).

A variety of other facts would prevent the Court from determining whether a particular individual can demonstrate that the WAP failed to meet the top-hat requirements, and whether that individual was harmed by any failure to do so, "in one stroke." For example:

- **Forfeited vs. Non-Forfeited WAP Participants.** Former WAP participants who (like plaintiffs) have already forfeited their company contributions, such as plaintiffs, stand in conflict with other WAP participants who never forfeited contributions and, in fact, obtained the full benefits of participating in the WAP.

- **WAP Participants Over Different Time Periods.**  As argued in prior briefing, plaintiffs cannot simply point to any one set of circumstances to prove the WAP was not a valid top-hat plan over the course of its existence.  *See, e.g.*, Dkt. 45 at 9-12.  In particular, the WAP's population varied annually, depending upon the applicable eligibility thresholds (announced in advance of each year) and how many employees happened to meet those thresholds in a given year.  Moreover, some participants may have met the eligibility requirements in some years but not others.  As a result—and particularly when taken in combination with other differences among putative class members—different WAP participants possess competing interests for establishing that the WAP was not a valid top-hat plan in different years.  For example, Tolbert, who no longer was WAP-eligible after the thresholds were increased for the 2009 Plan year, has no incentive to show the WAP remained insufficiently select *after* 2009.  Just the opposite, she affirmatively used the "dramatic" increase in eligibility thresholds—and the resulting decline in the WAP's population—to *distinguish* the post-2009 WAP from when she participated.  *See* Dkt. 45 at 10-11.

- **WAP Participants, Like Neuhaus and Gift, Who Recovered Their Forfeited WAP Benefits Through Their Subsequent Employer.**  Another distinction exists concerning WAP participants who, after leaving RBC and forfeiting their RBC WAP contributions (for many, by declining to enter into a "business transition agreement"), went to work for competitors who compensated them *specifically* to account for WAP forfeitures.  Plaintiffs Neuhaus and Gift are among this group, and to allow them to recover their full WAP benefits now would result in a double recovery, as they used the fact of their WAP forfeitures as bargaining chips to negotiate sizeable signing bonuses at their new employer.  If nothing else, participants like this have suffered no harm or injury from the WAP's top-hat status, even if they could establish it was invalid.  Whether and to what extent any particular class member obtained this type of bonus or compensation is inherently and necessarily individualized.

In the end, there is not just one layer of contradiction among proposed class members, but instead layer after layer of potential conflicts depending upon these and other differences.  These contradictions and conflicts destroy a finding of commonality, typicality, and adequacy.

A recent ruling denying class certification in another top-hat case underscores the point.  In *Bond v. Marriott International, Inc.*, former employees challenged a Marriott plan's top-hat status and sought to represent a broad class of all plan participants during the applicable time period, with limited exception.  296 F.R.D. at 406-07.  The court denied certification after finding plaintiffs did not establish commonality, typicality, or adequacy under Rule 23(a).  In particular, the court refused to accept plaintiffs' argument—nearly identical to plaintiffs' position here—that commonality was satisfied because all putative class members allegedly were similarly "injured" simply because they all "were participants in a pension plan that Marriott

improperly exempted from ERISA's substantive requirements." *Id.* at 408. Citing *Dukes*, the court found that this "glue upon which" plaintiffs' class relied was nothing more than an assertion that all participants "suffered a violation of the same provision of law[.]" *Id.*

Moreover, the court relied on the fact that—again like plaintiffs' proposed class here— the class encompassed many who were not remotely harmed by Marriott's conduct. Specifically, "many of the putative class members *actually vested in* and received more shares under the Retirement Award vesting schedule than they would have if they had been paid under ERISA's minimum vesting schedules. Plan participants *who have already been paid* benefits equal to or in excess of what they would have received under ERISA vesting have no viable cause of action in this case." *Id.* (emphases added). These circumstances not only precluded a finding of commonality, but they raised potential conflicts of interests and defeated typicality and adequacy as well. *Id.* at 408-09. For example, the named plaintiffs did not participate in each version of the plan at issue, "and thus their claims may be different from those of proposed class members whose Retirement Awards are subject to different terms under different plans." *Id.* Other plaintiffs were subject to a unique affirmative defense that precluded typicality. *Id.*

The reasoning in *Bond* applies equally here. As in *Bond*, the "glue upon which" plaintiffs rely to bind their putative class is *only* that the WAP failed to meet ERISA's top-hat requirements, meaning they participated in an unfunded plan with vesting and forfeiture provisions that arguably violated ERISA. *See* Dkt. 162 at 8-9 ("The issue at the heart of Plaintiffs' First Amended Complaint—the unlawful maintenance of the WAP—involves and affects the entire class."). But like in *Bond*, this is nothing more than an assertion that a class is appropriate because every WAP participant over time "suffered a violation of the same provision of law," *Dukes*, 131 S. Ct. at 2551, which is not enough to satisfy Rule 23's "rigorous analysis."

Moreover, just as in *Bond*, plaintiffs' proposed class includes some who are or were fully vested in their WAP benefits, who have already been paid all WAP benefits owed, and who received equal to or *more* under the WAP than they would have even if RBC was required to satisfy ERISA all along. Thus, the relief plaintiffs seek might help some WAP participants, but

it would not help and could even harm many others. *See, e.g.*, *Spano*, 633 F.3d at 586-87, 591 (denying certification where "many members of the class have no complaint" about the conduct underlying plaintiffs' allegations, and "[i]t is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that relief"). On top of those differences, the WAP's eligibility thresholds and other key terms indisputably varied over their proposed class period, meaning different class members participated in different versions of the WAP, with different terms, at different times. *Id.* (if those harmed and helped by the same conduct over a "slightly different time period . . . . are included in the same class, a conflict will result and class treatment will become untenable").

## IV. Plaintiffs Also Cannot Satisfy Any Of Rule 23(b)'s Requirements.

### A. Plaintiffs Cannot Satisfy Rule 23(b)(1) Or (b)(2) Because Many Class Members Suffered No Injury And Would Be Harmed By Plaintiffs' Relief.

A class action certified under either Rule 23(b)(1) or (b)(2) is considered a "mandatory" class, in that the resolution of the class claims will be binding upon every class member without affording the opportunity to opt out of the suit. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999). Given their mandatory nature, the Supreme Court has "cautioned strongly against overuse of (b)(1) classes," and before certifying one courts must ensure that the named plaintiffs share a "necessary identity of interest" with all other class members. *Spano*, 633 F.3d at 588. "Too liberal an application of the mandatory-class device risks depriving people of one of their most important due process rights: the right to their own day in court." *Id.* Ultimately, a "(b)(1) class action encompasses cases in which the defendant is obliged to treat class members alike." *Allison v. Citgo Petro. Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). This is not one of those cases.

If the alleged conduct underlying the named plaintiffs' claims "harmed some participants and helped others," then the lawsuit lacks the "common interest" required to certify a claim under either prong of Rule 23(a)(1). *Spano*, 633 F.3d at 588; *see also Bond*, 296 F.R.D. at 409 (rejecting Rule 23(b)(1) certification where "some class members suffered no injury and some could be harmed by the requested relief"). Thus, for many of the reasons identified with respect to Rule 23(a) above, certifying a class under Rule 23(b)(1) is inappropriate here.

Once again, *Bond* is instructive. There, like here, the plaintiffs argued that their claims satisfied both Rule 23(b)(1)(A) and (b)(1)(B) because they required a single determination as to whether the plan at issue was a valid top-hat plan. 296 F.R.D. at 409. The court rejected this argument, primarily because "some class members suffered no injury and some could be harmed by the requested relief," making Rule 23(b)(1) certification inappropriate. *Id.* Moreover, for any potential class member who *benefited* from "Marriott's alleged invalid exemption, there is a serious question as to whether they have standing for the declaratory and injunctive relief that the Plaintiffs seek." *Id.*; *Spano*, 633 F.3d at 588 (rejecting Rule 23(b)(1) certification for fiduciary breach claims where alleged conduct "harmed some participants and helped others," meaning the class lacked the "necessary identity of interest"). Finally, the *Bond* court observed that the defendants themselves did not contend that they would be prejudiced if the class were not certified, a primary concern underlying Rule 23(b)(1)(B). 296 F.R.D. at 409.

Here, many among plaintiffs' proposed class suffered no injury—they may have since become vested in or received a full distribution of their WAP benefits, just as they would have if ERISA had applied in full. Likewise, the relief plaintiffs seek has the potential to harm many in the proposed class by subjecting them an immediate taxable event—without an immediate distribution—thus defeating one of the key purposes of participating in the WAP. Mandating that *every* class member participate in this action and potentially be bound by a result that does not further their interests—and may even harm them—is inappropriate.

Likewise, the Court must be able to fashion relief for a (b)(1) class that would benefit the *entire* class as a whole. As discussed *supra* at 5-6, plaintiffs have not even tried to explain what theory of "appropriate equitable relief" they seek under ERISA § 502(a)(3) or how the Court could accomplish it given the divergent interests across the broad class plaintiffs propose. In fact, there would be conflicts among class members under *any* approach.

For example, plaintiffs have suggested that if the Court finds the WAP was not sufficiently select for even one year—or perhaps only by a small number of participants—then RBC "blew" the top-hat exemption for the *entire* WAP over its *entire* existence. *See* Dkt. 24 at

16.  And the remedy they apparently propose would be to reform the WAP as though it had included ERISA-compliant vesting and anti-forfeiture provisions, yet otherwise remained the same.  This result would be draconian and effectively negate almost a decade of good-faith efforts by RBC to establish and preserve the WAP's top-hat status.  Contrary to the Supreme Court's comments on reformation in *Cigna*, 131 S. Ct. at 1879-80  (whereby reformation would conform the plan at issue to what participants had been told), plaintiffs' approach would mean reforming the WAP into the *opposite* of what RBC unambiguously presented to participants:  an unfunded plan for highly-compensated employees in which unvested contributions were subject to forfeiture.  As it relates to certification, many within the proposed class would *not want* the WAP to be converted into a standard ERISA plan, as they continue to enjoy the deferral of taxation and income until they take their benefits for whatever purposes suit them best.

Alternatively, if the Court finds that the WAP was not sufficiently selective at specific times, but met the exemption at all other times, it might reform the WAP retroactively to satisfy the top-hat exemption for designated periods.  In effect, the Court would simply carve out those individuals who allegedly *should not have been* included in the WAP.  The premise of the top-hat exemption is that highly-compensated "top hat" employees are sophisticated, have significant bargaining power, and can protect their own interests.  *See, e.g.*, *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 43 (1st Cir. 2008).  Thus, the only real "harm" that could have occurred from the conduct plaintiffs allege—if any at all—would be limited to someone who *was not* truly a "top hat" employee but nevertheless was allowed to participate in the WAP without the benefit of ERISA's usual protections.[5]

This approach too, however, would splinter the proposed class and create conflicts between those who allege they should not have been a WAP participant at all (like Tolbert

---

[5] Take plaintiff Neuhaus for example, who had annual compensation north of $500,000, not counting bonuses or RBC's WAP contributions.  *See* Dkt. 111 at 4.  Without question, Neuhaus would be deemed a "top-hat" employee at RBC under almost *any* definition.  Further, Neuhaus and others like him, knowing they would forfeit some WAP benefits if they left, negotiated substantial signing bonuses and other compensation at their new employers *specifically* to compensate for what they gave up at RBC.  *Id.* It is hard to see how Neuhaus was harmed even if the Court finds the WAP was slightly over-inclusive in a particular year, and to accept plaintiffs' proposed relief would result in a windfall to someone like him.

alleges), those who might have participated in some years but not others, and those (like Neuhaus) who would have been a WAP participant no matter what. In fact, while Neuhaus must show that the entire WAP should be deemed a non-top-hat ERISA plan for the entire period, Tolbert has already sought to advance her own claim at the expense of those who participated in the WAP *after* 2009, arguing that "dramatic" changes in eligibility made the WAP more "select." *See* Dkt. 45 at 11. Thus, even among former WAP participants who forfeited contributions, there are conflicting interests about the relief the Court should order.

## B. Plaintiffs Cannot Satisfy Rule 23(b)(2) Because They Do Not Truly Seek Injunctive Relief And Lack Standing To Do So In Any Event.

For many of the same reasons, plaintiffs cannot satisfy Rule 23(b)(2), which requires establishing that RBC "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate *respecting the class as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added). Rule 23(b)(2) "applies only when a *single injunction or declaratory judgment* would provide relief to *each member* of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557 (emphasis added); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) ("[C]lass members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damage claims."). Thus, "because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Allison*, 151 F.3d at 412.

This description does not characterize the broad proposed class here. Plaintiffs, who have not been clear about the injunctive and declaratory relief they seek, *see Maldonado*, 493 F.3d at 524 ("[T]he injunctive relief sought must be specific."), allege only that the class "seek[s] a declaratory judgment that at all relevant times the WAP has not been a lawful top hat plan." Dkt. 24 ¶ 115. But this determination cannot be made through a single declaration for all

15

putative class members, who possess different characteristics and participated in the WAP in different years under different terms. And regardless, the consequences that would flow from such a declaration would harm many within the proposed class. *Supra* at 9-12.

Moreover, plaintiffs, who are *former* RBC employees and WAP participants, are not at risk of future harm, meaning they lack standing to pursue the injunctive or declaratory relief they seek under Rule 23(b)(2). *See Maldonado*, 493 F.3d at 525; *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 623 (9th Cir. 2010) (en banc). Plaintiffs, unlike others in their class, no longer have a WAP balance deferred for future distribution. They are not subject to forfeitures. They do not have even a theoretical harm of being an unsecured creditor of an unfunded WAP.

Finally, plaintiffs' proposed class should not be certified under Rule 23(b)(2) because, despite the labels they apply, they unquestionably seek predominantly monetary damages, not truly injunctive or declaratory relief. Monetary relief "predominates" for purposes of Rule 23(b)(2) "when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential member's case." *Allison*, 151 F.3d at 413. Stated another way, "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief," meaning that "damages flow directly from liability to the class *as a whole* on claims forming the basis of the injunctive or declaratory relief." *Id.* at 414 (emphasis in original).

Plaintiffs' request for monetary relief here does not flow automatically from a finding of liability, much less to the class "as a whole." To the contrary, plaintiffs' primary objective here is to recover forfeited WAP benefits, an alleged harm that does not apply to the entire class and which gives rise to most of the conflicts discussed above. Thus, plaintiffs have not shown that money damages would "be only those to which class members *automatically* would be entitled once liability to the class (or subclass) *as a whole* is established." *Allison*, 151 F.3d at 414 (emphases added); *Maldonado*, 493 F.3d at 525 (Rule 23(b)(2) does not apply where "the declaratory relief Appellants seek serves only to facilitate the award of damages").

## C. Individual Issues Predominate And Thus Preclude Rule 23(b)(3) Certification.

Plaintiffs also cannot satisfy Rule 23(b)(3), which requires demonstrating that the issues common to the class, if any, predominate over those affecting individual members, and that a class action would be superior to other methods for fairly and efficiently adjudicating the claims of the putative class members. Fed. R. Civ. P. 23(b)(3). The "predominance" requirement is "far more demanding" than commonality under Rule 23(a). *Amchem Prods*, 521 U.S. at 623-24.

For essentially the same reasons plaintiffs cannot satisfy Rule 23(a) (*supra* at 8-12), they also have not established that common questions would predominate the myriad individualized inquiries necessary to resolve the claims of each putative class member. In particular, each individual's claims—and their motivation for pressing them—could depend upon when he or she participated for the WAP, the applicable eligibility thresholds at that time, the individual's compensation or production each year, the amount he or she deferred in the WAP each year, how much RBC contributed each year, the form of distribution the individual selected each year (immediately after vesting, upon retirement, or somewhere in between), whether he or she *continues* to maintain any WAP balance, whether the individual was terminated for cause or opted to leave RBC without entering a business transition agreement, whether he or she actually forfeited any WAP benefits, whether he or she recovered forfeited benefits from a new employer, and any number of other factors affecting each individual's claim.

Moreover, many plaintiffs—like Tolbert, Neuhaus, and Gift—may be susceptible to individualized defenses such as the statute of limitations or repose. As seen from the discussion above, such defenses will turn on inherently individualized facts and circumstances, including when a class member began participating in the WAP, their salary or production, and their knowledge of the WAP's characteristics and other WAP participants. These defenses also raise individualized issues that would overwhelm a trial of any arguably common issues.

## V. Plaintiffs' Proposed Class Is Substantially Overbroad.

### A. Plaintiffs Cannot Amend Their Complaint Through Motion Practice.

Plaintiffs' Original Complaint, Amended Complaint, and initial motion for class

certification each proposed a class starting *four years* before this action was filed, or January 11, 2007. *Supra* at 3. Despite many opportunities to amend their complaint to modify the proposed class, plaintiffs have never done so—and yet they now ask to enlarge it by almost *two-and-a-half years* to June 14, 2004, more than six-and-a-half years before Tolbert filed this lawsuit. Dkt. 162 at 3. But it is black-letter law that plaintiffs cannot amend their complaint through subsequent briefing. *See, e.g.*, *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 838 (S.D. Tex. 2011).

As an extension of this rule, plaintiffs also may not broaden their class via a motion for class certification beyond the one alleged in their complaint.[6] Although courts may refine or *narrow* a proposed class for purposes of Rule 23, *see* Fed. R. Civ. Proc. 23(c)(1)(B), it is quite another thing to *expand* a class to cover additional time periods or members not encompassed by the underlying pleadings. *See Smith v. Pennington*, 352 F.3d 884, 893 (4th Cir. 2003) (stating that "we look to the complaint to determine the scope" of class claims for tolling purposes, unless the class motion narrows that definition); *Sawtell v. E.I. du Pont de Nemours & Co., Inc.*, 22 F.3d 248, 254 (10th Cir. 1994) (same); *cf. In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 936 (9th Cir. 1996) (refusing to allow plaintiffs to enlarge the class period to add new members). Plaintiffs here not only seek to expand the four-year class asserted in their operative complaint, but also have already moved unsuccessfully to certify that same class, Dkt. 31 at 5; Dkt. 97 at 2. To this day, plaintiffs' Amended Complaint remains the operative pleading and the Court should reject their improper attempt to expand the class alleged therein.

**B.     Plaintiffs' "Revised" Class Definition Is Fundamentally Flawed Because It Depends Upon A Misapplication of *American Pipe* Tolling Principles.**

Plaintiffs' attempt to expand their proposed class back to June 14, 2004 also rests on the incorrect assumption that ERISA's six-year statute of repose has been tolled for absent class members. The filing of a putative class action generally tolls the applicable limitations period

---

[6] *See, e.g.*, *Plascencia v. Lending 1st Mortg.*, 2012 WL 253319, at *3-4 (N.D. Cal. Jan. 26, 2012); *Costello v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009); *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 497 (N.D. Ill. 1999); *cf. Anderson v. U.S. Dept. of Housing & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("Rule 23 does not permit [a district court] to structure a class around claims not pled.").

for "all asserted members" of the class until certification is denied. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983). Once certification is denied, "class action tolling ceases . . . and excluded claimants then must seek to protect their respective interests in ways other than by participation in the class." *Piney Woods Country Life Sch. v. Shell Oil Co.*, 170 F. Supp. 2d 675, 683 (S.D. Miss. 1999).

Plaintiffs' revised class definition depends upon presumed application of *American Pipe* tolling. Indeed, without the benefit of tolling, any class member whose fiduciary breach claim accrued more than six-years before RBC's agreement to begin tolling on September 4, 2014, has long-since expired, even if the Court applies ERISA's six-year statute of repose, 29 U.S.C. § 1113(1). However, tolling does not apply to the putative class members here for at least three reasons: (1) *American Pipe* tolling is a form of equitable tolling and thus does not apply to ERISA's statute of repose; (2) even if it applied, individuals whose claims accrued outside of the four-year class period alleged in the Original Complaint, the Amended Complaint, and initial class certification motion have *never* been "asserted members" of the class and cannot benefit from tolling; and (3) even if *American Pipe* tolling applied, neither it nor any other form of judicial or equitable tolling would cover the period *after* this Court denied class certification.

### 1. *American Pipe* Tolling Does Not Apply To ERISA's Statute of Repose.

*American Pipe* tolling, like other forms of equitable tolling, cannot apply to ERISA's legislatively determined six-year period of repose. Thus, when the Court denied certification on March 28, 2012, proposed class members were no longer putative parties to this case, meaning that neither the period of time before that date, nor any time since (*infra* at 22-25), may be tolled.

The Fifth Circuit has repeatedly held that ERISA establishes a six-year statute of repose after which "[n]o action" may be filed for breach of fiduciary duty. *See, e.g.*, *Archer*, 550 F.3d at 508 (5th Cir. 2008); *Radford*, 151 F.3d at 400. Unlike a statute of limitations, which is a "procedural device," *Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 326 (4th Cir. 1998), "a statute of repose creates a *substantive right* in those protected to be free from liability after a legislatively determined period," *Burlington Northern & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355,

363 (5th Cir. 2005) (emphasis added); *see also Jones*, 537 F.3d at 326. Accordingly, "[a]s a statute of repose, [ERISA] § 413 serves as an absolute barrier to an untimely suit" and "*tolling does not apply*." *Radford*, 151 F.3d at 400 (emphasis added).

Exceptions to statutes of repose must be established by the legislature, and are often in the statute of repose itself—*i.e.*, "legal tolling" (as opposed to "equitable tolling").[7] *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) ("[T]he legislative bar to subsequent action is absolute, subject to legislatively created exceptions . . . set forth in the statute of repose." (quotations omitted)); *In re Lehman Bros. Secs. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011). This is not an apt description for *American Pipe* tolling, which, like all equitable tolling doctrines, is judge-made. Equitable tolling is a doctrine that stops the running of the statute of limitations for some unfairness or excusable mistake, *see, e.g.*, *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 626 (S.D.N.Y. 2011), while a statute of repose is a specific, legislatively determined time in which a plaintiff must file her suit before relief is lost, *see, e.g.*, *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 335 (S.D.N.Y. 2012) ("When the right to sue has been extinguished, no judicially-created remedy can resuscitate it.").

*American Pipe* tolling fits squarely within the former description. In that case, the Supreme Court explained that it was not "breaking new ground" in exercising "judicial power to toll statutes of limitations," and it analogized to other judicially-created equitable tolling rules. 414 U.S. at 558. Numerous courts since—including the Supreme Court and the Fifth Circuit— have specifically referred to *American Pipe* as creating a form of equitable tolling.[8] As such, a growing number of courts have held that *American Pipe* tolling cannot be applied to statutes of

---

[7] In fact, ERISA § 413 contains an example of "legal tolling," by providing that the period of repose applies "*except that* in the case of fraud and concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113(2) (emphasis added).

[8] *See, e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990); *Drumm v. Sizeler Realty Co., Inc.*, 817 F.2d 1195, 1196 (5th Cir. 1987); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004); *Bridges v. Dept. of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *Youngblood v. Dalzell*, 925 F.2d 954, 959 n.3 (6th Cir. 1991).

20

repose like the one contained in ERISA § 1113(1).[9]

Here, once the Court denied plaintiffs' original motion for class certification—thus putting absent class members on notice they were no longer putative parties to this action—they were not entitled to *any* period of tolling, including for the 14 months between the January 11, 2011 filing of the Original Complaint and the Court's March 28, 2012 class certification denial.

### 2. Even If Tolling Were Applied, It Must Be Limited To Putative Class Members Within Plaintiffs' Original Putative Class.

Even were the Court to find that *American Pipe* tolling applies to some extent, only those who actually fell within the class alleged in the Original Complaint—*i.e.*, those who could claim to have objectively relied upon the complaint to preserve their rights—could possibly benefit. *See Crown*, 462 U.S. at 354 ("Once the statute of limitations has been tolled, it remains tolled for *all members of the putative class* until class certification is denied." (emphasis added)); *Am. Pipe*, 414 U.S. at 353-54 ("[T]he commencement of a class action suspends the applicable statute of limitations *as to all asserted members of the class*[,]" *i.e.*, those "*who would have been parties* had the suit been permitted to continue as a class action." (emphases added)); *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 (5th Cir. 2013). It would be objectively unreasonable for individuals falling outside of the originally proposed class to rely on this action to protect their interests or preserve their claims. *See, e.g.*, *Bridges*, 441 F.3d at 211 ("[T]he Supreme Court signaled that *American Pipe* tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members[.]").

Thus, many courts have rejected attempts to benefit from *American Pipe* tolling based on the filing of a class action lawsuit in which the plaintiff fell outside of the putative class.[10] As

---

[9] *See, e.g.*, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) (holding equitable tolling rules do not apply to federal statues of repose); *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109-110 (2d Cir. 2013) (*American Pipe* tolling does not apply to three-year statute of repose for securities fraud claims); *In re Lehman Bros.*, 800 F. Supp. 2d at 481-83 (same); *Footbridge Ltd. Trust v. Countrywide Fin'l Corp.*, 770 F. Supp. 2d 618, 624-25 (S.D.N.Y. 2011) (same); *Plumbers, Pipefitters*, 886 F. Supp. 2d at 333-35 (same).

[10] *See, e.g.*, *Pennington*, 352 F.3d at 894 (rejecting tolling for those outside the class asserted in the complaint); *Sawtell*, 22 F.3d at 253-54 (one not within complaint's proposed class not entitled to tolling); *In re Syntex Corp.*, 95 F.3d at 936 (rejecting tolling where "new Plaintiffs were not asserted class

the Northern District of Texas put it, "[i]n no event could plaintiff gain the benefit of class action tolling from the first two of the previously filed class actions because plaintiff would not have been a putative class member in either of them." *Dickson v. Am. Airlines, Inc.*, 685 F. Supp. 2d 623, 627 (N.D. Tex. 2010); *cf. In re BP p.l.c. Secs. Litig.*, 51 F. Supp. 3d 693, 699 (S.D. Tex. 2014) ("[T]he filing of a class action suspends the applicable statute of limitations as to *all putative class members*[.]" (emphasis added)).

Here, plaintiffs' Original and Amended Complaints both proposed a class covering "the last four years" before the action was filed on January 11, 2011. Anyone who did not meet that definition—including many within plaintiffs' "revised" class—was *not* an "asserted member" of the class, and it would have been objectively unreasonable for them to rely upon this lawsuit to preserve their claims. These individuals are not entitled to tolling, their claims are time-barred, and the "revised" class should be limited accordingly.

### 3. Plaintiffs Are Not Entitled To Equitable Tolling *After* Class Certification Was Denied.

"If the district court denies certification . . . tolling ceases." *Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 320 (5th Cir. 2014); *Hall*, 727 F.3d at 375; *Taylor v. United Parcel Serv.*, 554 F.3d 510, 519 (5th Cir. 2008) ("[I]f the district court denies class certification under Rule 23, tolling of the statute of limitations ends."); *Salazar-Calderon v. Presidio Valley Farmers Assoc.*, 765 F.2d 1334, 1351 (5th Cir. 1985). Here, plaintiffs' attempt to enlarge the original class back to June 14, 2004 ignores not only that they are seeking to rely upon a statute of repose to which *American Pipe* tolling does not apply, but also that even if such tolling were applicable, it necessarily ceased when this Court denied plaintiffs' initial class motion on March 28, 2012. Dkt. 97. At that time, it was no longer objectively reasonable for putative class members—even those *within* the proposed class—"to assume their rights were being protected," *Taylor*, 554 F.3d at 520, and the limitations clock began to tick once again.

Nor may plaintiffs seek certification of another putative class as a way to renew the tolling period for absent members of the prior putative class (and certainly not for *new* members

members" but instead "wanted to expand the class in order to *become* class members").

they seek to *add* to their "revised" class).  *Salazar-Calderon*, 765 F.2d at 1351; *Dickson*, 685 F. Supp. 2d at 630 (once certification is denied, "tolling would salvage no more than the plaintiff's individual claim").  In short, even assuming *American Pipe* tolling applied for the period before the Court denied class certification on March 28, 2012, the limitations clock began to run again that same day and continued unabated, except for the period between September 4, 2014, to April 28, 2015, when RBC agreed that tolling should apply.  Any class member whose claim became untimely during that period may not be included in any certified class.

That the Court's denial of class certification recognized the possibility of reconsideration at a later date does not change this outcome.  When the Court denied certification it was no longer reasonable for putative class members to rely on this case to preserve their claims, as Fifth Circuit precedent confirms.  *See Calderon v. Presidio Valley Farmers Assoc.*, 863 F.2d 384, 390 (5th Cir. 1989); *Hall*, 727 F.3d at 378; *see also Bridges*, 441 F.3d at 212.  In *Calderon*, the Fifth Circuit in a prior appeal concerning a different issue had specifically suggested that the district court might, on remand, "reconsider" its prior denial of class certification; the district court accepted that invitation and, in turn, certified the proposed class.  *Id.* at 389.  But in the appeal that followed, the Fifth Circuit held that "tolling had ceased when the district court denied class certification" the first time around—meaning that the claims of a large swath of class members were time-barred—despite that the ruling was subject to reconsideration at the Fifth Circuit's own invitation and the district court's resulting certification decision.  *Id.* at 390; *see also Hall*, 727 F.3d at 376-78 (holding that *American Pipe* tolling ceased upon the district court's order vacating class certification, despite that vacatur was based on class counsel's oversights, *not* a failure to meet Rule 23 requirements, and reasoning that the vacatur decision rendered it unreasonable for putative class members to rely on the pending action to preserve their claims).

The Fourth Circuit's decision in *Bridges* is particularly instructive.  There, the district court denied plaintiffs' motion for class certification to allow for further discovery, stating that the denial was "without prejudice to [the motion's] later renewal" and even providing that the motion would "automatically [be] considered renewed" if and when plaintiffs filed a reply to the

23

defendant's opposition. 441 F.3d at 212. Plaintiffs did not file a reply and instead reached a settlement agreement that did not resolve individual damage claims. *Id.* at 203-04. Plaintiffs later moved to add 18 members of the earlier class to pursue damage claims, but the court found them untimely. *Id.* at 204. On appeal, the Fourth Circuit held that *American Pipe* tolling ceased upon the district court's original denial of class certification, even though the ruling was "administrative" in nature and subject to renewal. *Id.* at 212-13. As the Fourth Circuit explained, "even though the district court intended its order denying class certification to be a case management device, the order was notice to objectively reasonable putative class members to seek clarification or to take action." *Id.* at 213.

Finally, the Fifth Circuit's decision in *Odle v. Wal-Mart Stores, Inc.* further illustrates these principles. 747 F.3d 315, 320 (5th Cir. 2014). Odle was initially part of the proposed nationwide Rule 23(b)(2) class certified in *Dukes v. Wal-Mart*. Before the Supreme Court appeal, the Ninth Circuit held that Odle, a former employee, lacked standing to seek injunctive relief with the Rule 23(b)(2) class the district court had certified. *Id.* at 320. The Ninth Circuit, however, did not undo the prior certification for Odle outright but instead directed the district court to consider whether former employees like Odle could remain certified under Rule 23(b)(3) instead (as plaintiffs had originally argued below). *Id.* After the Supreme Court decided *Dukes*, Odle filed a new class action limited to employees in Texas, and Wal-Mart argued the claims were time-barred because tolling ended when the Ninth Circuit held that Odle lacked standing for the Rule 23(b)(2) class. *Id.* at 316-19.

The Fifth Circuit disagreed, distinguishing *Calderon* (*supra*) because the Ninth Circuit in *Dukes* never actually *denied* certification at all and "did not invite the California district court to *reconsider a denial* of class certification," but instead merely directed the district court to consider, for the first time, certification of a sub-class under a different subsection of Rule 23. *Id.* at 321-22; *see also Taylor*, 554 F.3d at 521 (same distinction). Here, the Court's March 28, 2012 Order unambiguously denied certification, "subject to the Court's *reconsideration*, if appropriate[.]" Dkt. 97 (emphasis added). Thus, unlike in *Odle* but just like in *Calderon*, any

grant of certification at this stage would constitute "reconsider[ation] of a denial of class certification[.]" *Odle*, 747 F.3d at 321-22.

In sum, the holdings and reasoning in *Calderon*, *Hall*, and *Bridges*, dictate that the putative class members here can be granted "no [*American Pipe*] tolling benefit from the district court's reconsideration of class certification." *Bridges*, 441 F.3d at 213.[11] Nor is any other form of equitable tolling available in light of plaintiffs' reliance on ERISA's statute of repose. *Supra* at 19-21. Accordingly, plaintiffs' "revised" class definition is impermissibly broad and, under controlling Fifth Circuit precedent, must be rejected.

*   *   *

As a result of the arguments above, even if the Court determines that ERISA's six-year period of repose applies to define the scope of plaintiffs' class, the longest period the Court could certify would begin six years before the date the Court certifies a class, plus the approximately eight months for which RBC agreed to tolling. For example, if the Court certifies a class on August 1, 2015, the maximum class period using ERISA § 413(1) would be six years before that date, or August 1, 2009, plus the eight-months of tolled time, *i.e.*, January 1, 2009.

### CONCLUSION

For the reasons stated above, plaintiffs have failed to satisfy Rule 23(a) and Rule 23(b), either of which should preclude certification of this case. Should the Court disagree and certify some class, the definition plaintiffs set forth contains numerous flaws and is significantly overbroad. If the Court decides to certify, it should do so only as a Rule 23(b)(3) opt-out class action, narrowed only to those WAP participants who allegedly suffered harm, and—if the Court rejects RBC's argument that Minnesota's two-year or Texas's four-year limitations period applies—for a period of 6 years and eight months before the date the Court certifies a class.

---

[11] *See also Armstrong v. Martin Mariette Corp.*, 138 F.3d 1374, 1380-81 (11th Cir. 1998) (holding that tolling does not apply even where certification is interlocutory and can be reconsidered); *Piney Woods*, 170 F. Supp. 2d at 684-85 (tolling stopped upon court's certification of a class excluding some putative members, even though court indicated it may reconsider that decision at a future date).

Dated: May 12, 2015

Respectfully submitted,

RBC Capital Markets Corporation; RBC Capital Markets, LLC; RBC Centura Bank; and RBC U.S. Insurance Services, Inc.

by: /s/ Christopher J. Boran

| | |
|---|---|
| Alison J. Gates | Sari M. Alamuddin (*admitted pro hac vice*) |
| TX State Bar No. 24055535 | Ill. State Bar No. 6215689 |
| Federal ID No. 706309 | Christopher J. Boran (*admitted pro hac vice*) |
| MORGAN, LEWIS & BOCKIUS LLP | Ill. State Bar No. 6282552 |
| 1000 Louisiana, Suite 4200 | Matthew A. Russell (*admitted pro hac vice*) |
| Houston, Texas 77002 | Ill. State Bar No. 6290632 |
| 713.890.5157 (Telephone) | MORGAN, LEWIS & BOCKIUS LLP |
| 713.890.5001 (Facsimile) | 77 West Wacker Drive, Fifth Floor |
| | Chicago, Illinois 60601 |
| | 312.324.1000 (Telephone) |
| | 312.323.1001 (Facsimile) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent to

counsel of record through the Court's CM/ECF system on May 12, 2015, as follows:

>Mr. Geoffrey H. Bracken
>Gardere Wynne Sewell LLP
>1000 Louisiana, Suite 3400
>Houston, Texas 77002-5007
>
>Mr. William G. Whitehill
>Mr. Joe B. Harrison
>Mr. James Caleb Scott
>Gardere Wynne Sewell LLP
>1601 Elm Street, Suite 3000
>Dallas, Texas 75201

>s/ Christopher J. Boran