United States District Court
Southern District of Texas
**ENTERED**
May 26, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRENDA TOLBERT, *et al.*,           §
                                     §
            *Plaintiffs*,            §
                                     §
v.                                   §        Civil Action No. H-11-0107
                                     §
RBC CAPITAL MARKETS                  §
CORPORATION, *et al.*,               §
                                     §
            *Defendants*.            §

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' First Amended and Re-Urged Motion for Class Certification (Docket Entry No. 162), Defendants' Response in Opposition (Docket Entry No. 175), and Plaintiffs' Reply to the Response (Docket Entry No. 179). Also pending are Defendants' Motion for Summary Judgment (as to the issues of limitations, exhaustion, and fiduciary duty) (Docket Entry No. 91) and Defendants' Supplemental Motion for Summary Judgment (Docket Entry No. 111), to which the parties have filed various responses, replies, surreplies, and notices of supplemental authority.

Based on careful consideration of the motion, the response and reply, the record, and the applicable law, the Court **DENIES** Plaintiffs' First Amended and Re-Urged Motion for Class Certification and **DENIES** Defendants' motion and supplemental motion for summary judgment for the reasons that follow.

## I.  BACKGROUND AS TO CLASS CERTIFICATION ISSUES

The facts surrounding this putative class action lawsuit have been extensively presented in prior opinions of the Court, and only the facts salient to the certification issue will be recounted herein.

Plaintiffs were employed by Defendants and participated in Defendants' wealth accumulation plan ("WAP") at the time of their respective employment terminations. By its own terms, the WAP was not intended to be an "employee pension benefit plan" under ERISA. The WAP further stated that, if it were determined to be an employee pension benefit plan, Defendant RBC believed the WAP constituted a "top hat plan" exempt from fiduciary and other provisions of ERISA. Plaintiff Tolbert's participation in the WAP ended in 2009 when she was terminated for cause; Plaintiffs Gift and Neuhaus voluntarily resigned from their positions in 2011, but without satisfying the WAP's separation criteria. Under the terms of the WAP, the amounts in Plaintiffs' respective accounts that had not yet vested (as to Neuhaus and Gift) or had not yet been distributed (as to Tolbert) were forfeited. In 2014, the WAP was judicially determined to constitute an employee pension benefit plan under ERISA.

Plaintiffs claim in this lawsuit that the forfeiture provisions were valid only if the WAP was a valid top hat plan. They argue that, because the WAP fails as a top hat plan, the forfeiture provisions violated ERISA's mandates. They assert a claim for breach of fiduciary duty under section 1132(a)(2) and a claim for equitable relief under section 1132(a)(3).

2

Whether the WAP qualifies as an exempt top hat plan under section 1101(a)(1) remains an issue for trial in this case.

As claims for relief, Plaintiffs seek the following in Plaintiff's First Amended Class Action Complaint:

1.  A declaratory judgment finding that the WAP, at all relevant times, has not been a lawful top hat plan.  (Docket Entry No. 24, ¶ 115.)

2.  "Appropriate equitable relief" under section 1132(a)(3) "requiring Defendants to, among other things, establish, fund, and maintain a separate trust to hold and protect all vested accrued WAP benefits, to restore any illegally forfeited benefits, to provide WAP participants with the required reporting information, to pay all appropriate penalties for not complying with ERISA," as well as a permanent injunction prohibiting Defendants from further violating ERISA's mandates.  *Id.*, ¶ ¶ 117, 119.

3.  Unspecified relief for Defendants' breach of fiduciary duties under sections 1132(a)(2) and 1109(a).  *Id.*, ¶ 120.

In their pending amended motion for class certification, Plaintiffs argue that the appropriate class should be:

All persons who – since June 14, 2004 – have or had at least five years of service with Defendants, and who were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased (the Plaintiff Class).

(Docket Entry No. 162, p. 3.)

## II.  LEGAL STANDARDS AS TO CLASS CERTIFICATION

Federal class actions are governed by the requirements of Federal Rule of Civil Procedure 23.  The named plaintiff, as the party seeking certification, bears the burden of proving that the proposed class satisfies the requirements of Rule 23.  *Wal-Mart Stores, Inc.*

3

*v. Dukes*, __U.S. ___, 131 S. Ct. 2541, 2551 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, *etc.*").

The requirements for class certification under Rule 23(a) are:

(1)     the class is so numerous that joinder of all members is impracticable ("numerosity");

(2)     there are questions of law or fact common to the class ("commonality");

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and

(4)     the representative parties will fairly and adequately protect the interests of the class ("adequacy").

FED. R. CIV. P. 23(a)(1)-(4).

To obtain class certification, the moving party must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3). *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). Under Rule 23(b), "Types of Class Actions," a class action may be maintained if Rule 23(a) is satisfied and if:

(b)(1) prosecuting separate actions by or against individual class members would create a risk of:

(A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the

other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(b)(2)  the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(b)(3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

Under *Wal-Mart*, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 131 S. Ct. at 2551 (original emphasis). Thus, as noted in *Perry*, the commonality test is no longer met when the proposed class does nothing more than establish that there is "at least one issue whose resolution will affect all or a significant number" of the putative class members. *Perry*, at *11. Rather, Rule 23(a)(2) requires that all of the class members' claims depend on a

common issue of law or fact whose resolution "will *resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Id.* (citing *Wal-Mart*, 131 S. Ct. at 2551) (original emphasis).   This heightened analysis under *Wal-Mart* will "frequently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Id.,* at *6.   Moreover, the Supreme Court requires the federal district court to look to the dissimilarities among the proposed class members, as "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart,* 131 S. Ct. at 2551.

Plaintiffs assert in this lawsuit a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and a claim for equitable relief under 29 U.S.C. § 1132(a)(3).   Under section 1132(a)(2), a civil action may be brought by a participant for appropriate relief under section 1109 of the ERISA statute.   Section 1109, in turn, provides that,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter *shall be personally liable to make good to such plan any losses to the plan resulting from each such breach,* and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C.A. § 1109 (emphasis added).

Section 1132(a)(2) provides causes of action for breaches of fiduciary duty only to the plan as a whole, as opposed to an individual participant or beneficiary. *LaRue v. DeWolff, Boberg & Associates, Inc.,* 552 U.S. 248, 256 (2008) (recognizing that under well-established

Supreme Court precedent, section 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"); *Massachusetts Mutual Life Insurance Co. v. Russell*, 105 S. Ct. 3085, 3090 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.").

Under section 1132(a)(3), a civil action may be brought by a participant to enjoin any act or practice which violates any provision of the subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or enforce any provisions of the subchapter or terms of the plan. 29 U.S.C.A. § 1132.

## III. PLAINTIFFS' POSITION AS TO CLASS CERTIFICATION

Plaintiffs re-urge the Court to consider Plaintiff Tolbert's original motion for class certification (Docket Entry No. 31), which was denied by the Court on March 28, 2012. In bringing the instant amended motion, Plaintiffs do not raise new grounds or arguments; rather, they reassert arguments previously raised in other pleadings. Although titled as an "amended" motion for class certification, this motion does not present complete or independent grounds for class certification, and instead asks the Court to assimilate Plaintiffs' applicable arguments from prior pleadings.

7

Plaintiffs contend that they meet the requirements of Rule 23(a) as to numerosity, commonality, typicality, and adequacy.  They further contend that they satisfy the requirements of Rule 23(b)(1), (b)(2), and (b)(3).  (Docket Entry No. 31.)

## IV.  DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION

In response, Defendants argue that Plaintiffs have not met their burden as to any aspect of Rule 23. In particular, Defendants assert that Plaintiffs have not clearly articulated what type of claim they bring or what theory of relief they seek.  They argue that, if Plaintiffs are seeking relief under section 1132(a)(2), they have not established any losses incurred by the WAP. Defendants further note that Plaintiffs do not plead any specific theory of the "appropriate equitable relief" they seek under section 1132(a)(3), and fail to show how such relief can be granted on a class-wide basis.  In short, Defendants contend that Plaintiffs' claims and the lack of a clearly-stated mechanism for judicial relief render this lawsuit inappropriate for resolution on a class-wide basis.[1]

## V.  ANALYSIS OF CLASS CERTIFICATION ISSUES

To certify a class in this action, the Court must find that Plaintiffs have satisfied each of the four requirements of Rule 23(a), and that they meet the requirements of Rule 23(b)(1), (b)(2), and/or (b)(3).  Each of these requirements is discussed below.

---

[1] For purposes of this proceeding, the Court declines to adopt Defendants' argument that Plaintiffs are in reality seeking recovery of WAP benefits under section 1132(a)(1)(B).  Plaintiffs were not entitled to the forfeited proceeds under the terms of the WAP *as written*. To merit any recovery, Plaintiffs must step outside the four corners of the WAP.  Whether they can successfully utilize sections 1132(a)(2) and/or (a)(3) for this purpose is a matter best determined at trial, not during class certification.

A.    Rule 23(a)

1.    *Numerosity*

To satisfy the numerosity prong, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000).  Plaintiffs present no discussion or factual specifics in their pending motion as to the number of purported class members in their proposed class.   If the Court resorts to consideration of Plaintiffs' prior class certification pleadings, little additional light is shed on the question.  In Plaintiff Tolbert's original class certification motion (Docket Entry No. 31), she defined the proposed class as:

> All persons who—within the last four years—have or had at least five years of service with Defendants, are current or former employees of Defendants, and were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased[.]

This, of course, is not the same definition under which Plaintiffs here seek class certification, and the Court cannot assume that her arguments as to numerosity in the original motion apply to the different class definition asserted in the instant motion.

Regardless, the allegations in Plaintiff Tolbert's original motion do not sufficiently demonstrate numerosity under either of the class definitions.  In support of her claim of numerosity, Plaintiff Tolbert had alleged the following:

1.    "Here, the WAP has had thousands of participants spread around the country." (Docket Entry No. 31, p. 6.)

2.    "In fact, the number of potential plaintiffs is so large that impracticality of joinder should be presumed without further inquiry." *Id.*

9

That the WAP may have "had thousands of participants" throughout its duration falls well short of demonstrating some evidence or reasonable estimate of the number of purported class members who, "since June 14, 2004, have or had at least five years of service with Defendants, and who were participants in the WAP or who are personal representatives for or beneficiaries of any such person who is deceased." Nor do Plaintiffs give the Court any indication of where the class members may reside in order to establish any basis for geographical dispersion. In short, Plaintiffs do not demonstrate that joinder would be impractical. It may well be that the potential class is numerous and geographically extensive; however, Plaintiffs have not met that burden of proof. This remains true even if consideration is given to Plaintiffs' alternative suggestion in their Reply brief that one primary class and two subclasses be certified. The Court finds that Plaintiffs have not established the numerosity prong under Rule 23(a)(2).

  2.    *Commonality*

Under the commonality prong, a plaintiff must demonstrate that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). To meet this requirement, Plaintiffs' claims "must depend upon a common contention" which is "capable of classwide resolution." *Wal-Mart*, 131 S. Ct. at 2551. In other words, the determination of the truth or falsity of the so-called "common contention" must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

10

As noted in *Perry*, the commonality test is no longer met when the proposed class does nothing more than establish that there is "at least one issue whose resolution will affect all or a significant number" of the putative class members. *Perry*, 675 F.3d at 840. Instead, Rule 23(a)(2) requires that all of the class members' claims depend on a common issue of law or fact whose resolution "will resolve an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Id.* (*citing Wal–Mart*, 131 S. Ct. at 2551) (original emphasis).

The parties agree that Plaintiffs' forfeitures did not violate ERISA if the WAP was a valid top hat plan. Plaintiffs thus contend that the over-arching issue for all putative class members in this case is whether the WAP was a valid top hat plan. They argue that, if the WAP were shown not to qualify as a top hat plan, then all class members would have been entitled to the protections statutorily afforded all ERISA employee pension benefit plans.

However, commonality also requires that class members "suffered the same injury." *Dukes*, at 2551. It is at this point that Plaintiffs' argument falls. They have not demonstrated for purposes of class certification that all members of the proposed class suffered the same injury, because they have not shown that all proposed members suffered *any* injury in fact. The named Plaintiffs claim to have suffered an injury in fact through the forfeiture of certain WAP funds from their accounts; however, Plaintiffs do not show that all proposed class members suffered a forfeiture, particularly as to class members who remain WAP participants at this date. Plaintiffs cannot successfully argue as "injury" Defendants' alleged

11

misrepresentation of the WAP as a top hat plan or failure to maintain the WAP as a top hat plan, as this conflates alleged ERISA violations with injury in fact.

For these reasons, the Court finds that Plaintiffs have not established the commonality prong under Rule 23(a)(2).

3.   *Typicality*

To assess typicality, a court must determine that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(2). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). As the Supreme Court has explained, both the commonality and the typicality requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Plaintiffs' allegations regarding the shared essential characteristics of their claims and losses and those of the class members as a whole are tenuous, at best. The primary focus of this lawsuit has been that Defendants' partial forfeitures of Plaintiffs' WAP funds violated ERISA protections. As stated by the Fifth Circuit, "Giving rise to this lawsuit, portions of the plaintiffs' WAP accounts were forfeited when the plaintiffs left their jobs at RBC. The

12

plaintiffs allege that the *forfeitures* amounted to violations of [ERISA]." *Tolbert*, No. 13-20213, at *1 (5th Cir. 2014) (emphasis added). The Fifth Circuit further noted that, "The plaintiffs do not quibble over whether the *forfeitures* complied with the terms of the WAP. Instead, the plaintiffs allege in this lawsuit that the *forfeiture* provisions violate ERISA's mandates." *Id.*, at *5 (emphases added). Plaintiffs themselves confirm this as their goal: "From the inception of this lawsuit, Plaintiffs have unambiguously charged that the WAP is a non-exempt employee benefit plan. Accordingly, the relief sought by Plaintiffs is the benefit of the numerous requirements and protections afforded by ERISA, including payment of funds that Defendants illegally forfeited[.]" (Docket Entry No. 179, p. 7.)

The proposed class is not limited to employees who have suffered forfeitures of WAP funds pursuant to the WAP provisions. Moreover, Plaintiffs do not show that potential class members who did not suffer such forfeitures suffered any injury in fact at all. Consequently, Plaintiffs do not establish the prerequisite similarity between their legal and remedial theories and those of whom they would purport to represent.[2]

The Court finds that Plaintiffs have not established the typicality prong under Rule 23(a)(2).

---

[2]The Court further notes that Defendants have raised various statutes of limitation as a defense against the named Plaintiffs. Should an applicable limitation require a determination of actual or constructive knowledge of a plaintiff, individual determinations would become necessary. This alone would defeat commonality and typicality.

4.    *Adequacy*

Section 4 of Rule 23(a) requires that plaintiffs demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Thus, to assess representativeness, courts must examine "class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Class representatives must have sufficient knowledge and understanding so as to be able to control or prosecute the litigation. *Feder v. Elec. Data Systems Corp.*, 429 F.3d 125, 129–30 (5th Cir. 2005). In other words, they must be willing and able "to take an active role in and control the litigation and to protect the interests of absentees." *Berger*, 257 F.3d at 479 (internal quotation marks omitted). Finally, courts should endeavor to uncover conflicts of interest between named plaintiffs and proposed class members. *Feder*, 429 F.3d at 130. It is commonly acknowledged, however, that "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Berger*, 257 F.3d at 480.

The Court is very familiar with Plaintiffs' law firm and counsel of record, and is thoroughly satisfied that counsel are knowledgeable of the applicable law and capable of acting as counsel for the class representatives if a class were certified in this case. No concerns are raised as to the ability of counsel in this case.

However, one primary concern of this Court regarding class certification is that the named Plaintiffs are no longer employed by the Defendants. The putative class, on the other hand, includes both current and prior employees, and the prior employees would include those who forfeited funds under the WAP and those who did not. It is undisputed that the WAP, operating as a top hat plan, provided and continues to provide tax and other monetary benefits to participants. Plaintiffs do not dispel Defendants' arguments that any number of putative class members would not necessarily want the WAP's top hat status declared invalid. The Court again emphasizes that the named Plaintiffs have not shown that all putative class members suffered an injury in fact.

Because of these inherent conflicts of interest, Plaintiffs cannot show that they, as the class representatives, would fairly and adequately protect the interests of the class as a whole. In their Reply to Defendants' response (Docket Entry No. 179), Plaintiffs argue that, should the Court be concerned about conflicts within the class, three classes (one primary, two subclasses) could be certified to circumvent any conflict of interest. These three classes would cover current and prior employees, as well as distinguish between employees who suffered forfeitures and those who did not.

The Court is not persuaded that this expanded class concept would resolve any conflicts of interest as between Plaintiffs as the class representatives and the proposed class or subclasses. With or without the expanded subclasses, an inherent conflict of interest would remain between the class representatives and those class members who have no injury

in fact or would not want the WAP declared invalid. Consequently, the Court does not find that Plaintiffs would fairly and adequately protect the interests of the class as a whole under the class or subclass certifications they have proposed.

Because Plaintiffs do not meet the class certification requirements of Rule 23(a), it is unnecessary to consider whether they meet the requirements of any subpart of Rule 23(b). Nevertheless, the Court notes that Plaintiffs have not established that they meet the requirements of Rule 23(b)(1), as they have not proposed a specific, single form of relief that would benefit the entire class as a whole. This is particularly true given that Rule 23(b)(1) provides mandatory certification with no opt-out rights.

Nor do Plaintiffs establish grounds for certification under Rule 23(b)(2), which applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. *Dukes*, 131 S. Ct. at 2557. Plaintiffs expressly seek recovery of their forfeited funds, which would include recovery of forfeited funds for each class member who incurred a forfeiture under the WAP. Each class member's recovery would be based on the amount forfeited from his or her account, and would, by necessity, require individual damages calculations. This runs afoul of *Dukes* prohibition of individualized damage awards.

Moreover, the Court would find it difficult to certify the class under Rule 23(b)(3), which permits a party to maintain a class action it satisfies two additional requirements:

predominance and superiority. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). The predominance element requires a finding that common issues of law or fact "predominate over any questions affecting only individual members." *Id.* This requirement is more demanding than the commonality prong of Rule 23(a) because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* A party seeking class certification must also show that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Because each individual class member who incurred a forfeiture would, under Plaintiffs' theory of recovery, be entitled to recovery of such sum, the Court is not convinced that the "predominance" and "superiority" factors are met in this case.

For these reasons, Plaintiffs' Amended Motion for Class Certification (Docket Entry No. 162) is **DENIED**.

## VI.  EXHAUSTION

In their motion for summary judgment (Docket Entry No. 91), Defendants contend that Plaintiff Tolbert's claims must be dismissed because she failed to exhaust administrative remedies under the Plan prior to filing this lawsuit. Defendants do not raise this argument as against Plaintiffs Gift and Neuhaus. The WAP provides in relevant part as follows:

> 7.2   Claim Procedures. If any Participant or his or her estate is in disagreement with any determination that has been made for payment under this Plan, a claim may be presented to the Committee in accordance with procedures as set forth in this Section 7.

7.3    Making a Claim. The claim must be written and must be delivered to the Committee within 90 days the Participant or beneficiary knows or should have known of his or her claim for benefits. Within 90 days after the claim is delivered, the claimant will receive either: (a) a decision or (b) a notice describing special circumstances requiring a specified amount of additional time (but no more than 180 days from the day the claim as [*sic*] delivered) to reach a decision.

In the event of an Adverse Benefit Determination, the claimant will receive a written or electronic notice specifying: (a) the reasons for the determination; (b) the Plan provisions on which the Adverse Benefit Determination is based; (c) any additional information needed in connection with the claim and the reason such information is needed; and (d) a description of the Plan's review procedures, including a statement of the Participant's right to bring a civil action under ERISA Section 502(a) following an Adverse Benefit Determination upon appeal. Notice of the claimant's right to request a review (as described in Section 7.4) will also be given to the claimant.

\*    \*    \*    \*

7.5    In General. All decisions on claims and on reviews of denied claims will be made by the Committee.

\*    \*    \*    \*

No action at law or in equity may be brought to recover benefits or otherwise enforce the provisions of the Plan unless the Participant or beneficiary has exhausted all remedies under this Section 7.

(Docket Entry No. 24, Exhibit A, "Amended and Restated Royal Bank of Canada US Wealth Accumulation Plan and Prospectus," dated November 1, 2008, pp. 55–56.)

The Fifth Circuit recognizes that ERISA plan participants must exhaust all administrative remedies within the ERISA plan before seeking federal court review of a benefit denial. *Denton v. First Nat. Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir.

1985). "The policies behind the exhaustion requirement include upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).

It is undisputed that Plaintiff Tolbert did not utilize, and has not utilized, the administrative procedures set forth in Section 7 of the WAP. Plaintiffs contend that exhaustion was not required due to the nature of the claims being raised; Defendants contend that exhaustion was required and that failure to exhaust entitles them to summary judgment dismissal of Plaintiff Tolbert's claims.

Defendants initially argued that Fifth Circuit precedent requires individuals who seek to pursue claims for benefits under 29 U.S.C. § 1132(a)(1)(B)[3] first exhaust all available plan procedures for challenging benefits determinations before filing a federal lawsuit, citing *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 293–95 (5th Cir. 2008). Plaintiffs, however, did not bring suit under 29 U.S.C. § 1132(a)(1)(B). The Fifth Circuit has already stated that Plaintiffs in this lawsuit are asserting claims for breach of fiduciary duty under §

---

[3]"A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"

1132(a)(2)[4] and a claim for equitable relief under § 1132(a)(3).[5] *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 623 (5th Cir. 2014).[6] Thus, the questions for determination are whether Plaintiffs' breach of fiduciary claims under § 1132(a)(2) and § 1132(a)(3) are subject to the general exhaustion requirement recognized in this Circuit and, if so, whether Section 7 of the WAP provided "available administrative remedies" as to those claims.[7]

Fifth Circuit precedent supports Plaintiffs' overarching position that benefits claims require administrative exhaustion, but fiduciary claims do not. *See Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (en banc) (noting that fiduciary breach claims do not require exhaustion of administrative remedies); *see also Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 339 (5th Cir. 2006) (same).

---

[4]"A civil action may be brought . . . by a participant . . . for appropriate relief under section 1109 of this title[.]"

[5]"A civil action may be brought . . . by a participant . . . to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provision of this subchapter or the terms of the plan[.]"

[6]Under their First Claim in Plaintiff's First Amended Class Action Complaint (Docket Entry No. 24), Plaintiffs also seek a declaratory judgment that at all relevant times the WAP was not a lawful top hat plan.

[7]The Fifth Circuit recognizes an exception to the affirmative defense of failure to exhaust when such attempts would be futile. *Id.*, at 479. Futility is generally shown when the plan administrator is hostile or biased against the claimant. *Denton v. First Nat. Bank of Waco*, 765 F.2d 1295 (5th Cir. 1985); *see also Bourgeois*, at 479. It is unclear from the pleadings whether Plaintiffs are claiming futility; certainly no probative summary judgment evidence of hostility or bias has been presented to this Court. *See McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) ("[F]ailure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility.").

Defendants, however, argue that not all breach of fiduciary duty claims under ERISA are actually "breach of fiduciary duty claims under ERISA" for purposes of the exhaustion requirement. To the contrary, Defendants contend that plan-based claims can masquerade as breach of fiduciary claims or, as the First Circuit Court of Appeals described it, plan-based claims "artfully dressed in statutory clothing." *Drinkwater v. Metro Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988). Defendants direct the Court to precedent in this Circuit holding that a plaintiff may not avoid the administrative exhaustion requirement by recasting benefits claims as fiduciary breach claims under §§ 1132(a)(2) or (a)(3). *Radford v. Gen'l Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998) (assuming without deciding that the exhaustion requirement would apply to fiduciary breach claims seeking the recovery of plan benefits); *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559–60 (5th Cir. 2004) (holding that fraud claim was properly dismissed for failure to exhaust, because the claim sought to recover plan benefits); *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 339 (5th Cir. 2006) (affirming dismissal of benefits and fiduciary breach claims based on exhaustion requirement). The Fifth Circuit explained the rationale for this distinction in *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990):

> In *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.), *cert. denied*, 488 U.S. 909 (1988), the court considered and rejected the plaintiff's argument that he should not be required to exhaust administrative remedies with respect to his breach of fiduciary duty claims because exhaustion in such a case would be a meaningless exercise, requiring the defendant-fiduciary to adjudicate "the legal consequences of its own fraud and breach of contract." Reasoning that any improper denial of benefits also constitutes a breach of fiduciary duty under ERISA, the court concluded that the exhaustion

requirement would be rendered meaningless if plaintiffs could avoid it simply by recharacterizing their claims for benefits as claims for breach of fiduciary duty. *Id.* at 826. We find *Drinkwater* to be persuasive and therefore conclude that Simmons must exhaust her administrative remedies before complaining of a breach of fiduciary duty in federal court.

*Id.*

Defendants argue that Plaintiffs were required to exhaust administrative remedies because their fiduciary claims in this lawsuit are nothing more than disguised benefits claims. The Court disagrees.

In *Milofsky*, 442 F.3d at 313, the Fifth Circuit held that fiduciary breach claims were independent of any claim for benefits because plaintiffs did not seek the distribution of any plan benefits, but instead sought to recover plan losses resulting from defendants' alleged "failu[re] to effectuate a timely transfer of plaintiffs' account balances from" one plan to another. *Id.* 312–13. In reaching this conclusion, the court relied on *Smith v. Syndor*, 184 F.3d 356, 361, 365 (4th Cir. 1999), wherein the Fourth Circuit recognized that administrative exhaustion is required "where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to [a] claim for benefits." The court found that plaintiffs' claims were not subject to exhaustion because they sought to recover plan losses (not unpaid benefits) arising from the fiduciaries' mismanagement of plan assets, including "selling preferred stock at a grossly undervalued price and engaging in self-dealing." *Id.* at 362–63. Here, Plaintiffs do not allege *plan* losses, but rather the loss of plan *benefits* resulting from an improperly maintained top hat plan.

22

The Court finds persuasive Plaintiffs' argument that their claims and requested relief are statute-based, not plan-based, and that this is not a "disguised" benefits-based case. Unless, and until, the WAP is set aside as a top hat plan, Plaintiffs have no claim for benefits under the WAP as written.

Defendants' motion and supplemental motion for summary judgment based on Plaintiff Tolbert's failure to exhaust (Docket Entries No. 91, 111) are **DENIED**.

## VII.   STATUTE OF LIMITATIONS

Plaintiffs' claims arising under 29 U.S.C. 1132(a)(2) and (a)(3) are governed by either a six or three year limitations period provided by section 1113 of the ERISA statutory scheme.  Section 1113 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of— (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Defendants argue that they are entitled to summary judgment to the extent Plaintiffs seek to recover for plan years prior to 2009.  (Docket Entry No. 91.)  They argue first that Plaintiffs' breach of fiduciary duty claims are subject to the three-year statute of limitations. In making this argument, Defendants contend that Plaintiffs had "actual knowledge" of such

claims well before January 11, 2008 (that is, three years before the filing of their complaint). *See* 29 U.S.C. § 1113(2). Defendants argue next that, even if Plaintiffs did not have actual knowledge of such claims before January 11, 2008, Plaintiffs' claims are still barred because they arose more than six years before the filing of this lawsuit. *See* 29 U.S.C. § 1113(1).

Under the three-year limitation provided in section 1113(2), a plaintiff must file suit within three years of the earliest date on which he or she had actual knowledge of the alleged fiduciary duty breach. Actual knowledge requires that the plaintiff have knowledge of the material facts necessary to understand that some claim exists. *Babcock v. Hartmarx Corp.*, 182 F.3d 336, 339 (5th Cir. 1999); *Maher v. Strachan Shipping Co.*, 68 F.3d 951 (5th Cir. 1995). "That is to say, actual knowledge requires that the [plaintiff] know not only of the events constituting the breach, but 'also that those events supported a claim for breach of fiduciary duty or violation under ERISA.'" *Babcock*, at 339 (citation omitted). In other words, a plaintiff must have knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated. *Reich v. Lancaster*, 55 F.3d 1034, 1057 (5th Cir. 1995). This does not mean that a plaintiff must know the precise cause of action that would provide relief. *Babcock*, at 339.

In their amended complaint, Plaintiffs allege that Defendants failed to (i) cause the WAP to create, fund, and maintain a trust fund for the WAP participants' benefit, and (ii) discharge their duties with respect to the WAP solely in the interests of the participants. Elsewhere, Plaintiffs emphasize that this case is only about "whether at all relevant times the

WAP has been a lawful top hat plan." In other words, the breach Plaintiff alleges is the failure to administer the WAP in accordance with ERISA's funding, vesting and anti-forfeiture provisions.

Defendants attempt to establish Plaintiff Tolbert's actual knowledge based on her receiving information about the WAP commencing in 2001. She was informed of her own eligibility in 2002, participated in the WAP from 2003 to 2008, and received regular information about the benefits under the Plan throughout that time. Plaintiff admits that she knew that annual compensation of at least $150,000.00 was required for WAP eligibility, and that the compensation eligibility requirement did not change from 2002 until Plan Year 2009. This, however, does not demonstrate that she had actual knowledge of the WAP's insufficiency as a top hat plan at any given time.

Defendants further argue that Plaintiff Tolbert had also been informed that the WAP was designed for a select group of management or highly compensated employees of the Royal Bank of Canada and its Participant Subsidiaries, as that phrase appeared in the first sentence of each version of the WAP. She had also been informed that the WAP was intended to be "an unfunded plan of deferred compensation" exempted from many ERISA requirements. Plaintiff Tolbert testified in her deposition that she reviewed a Summary Plan Description containing these statements in December 2001. Again, these acknowledgments fall well short of showing that she had any actual knowledge at any specific time that the WAP was not a valid top hat plan such that these statutory requirements came into play.

Defendants next argue that Plaintiff Tolbert knew the relevant facts that were at least

sufficient to give her knowledge that a fiduciary duty has been breached or ERISA provision

violated.  It is Plaintiff's position that she herself should never have been included in the

WAP.  Specifically, she contends that she was never a highly compensated employee, and

that she was never in a highly-placed managerial position while employed at RBC.  Plaintiff

also has testified that the mere fact that she was allowed to participate was one of the criteria

underlying her assertion that the WAP was not a top hat plan, and that she believes that "the

fact that there was a big disparity in what [she] made and what [Lewis Brazelton] made

would make [the WAP] not a top hat plan."  Defendants, however, do not attach any

particular time frame to these assertions.  Consequently, Defendants have not established

"actual knowledge" as a matter of law, and are not entitled to summary judgment as to the

three-year limitations issue.[8]

Defendants also argue that Plaintiffs' claims are barred by the six-year statute of

limitations.  ERISA provides that no action may be brought for breach of fiduciary duty after

six years following "the date of the last action which constituted a part of the breach or

violation."  29 U.S.C. § 1113(1).  This limitations period is designed to protect plan

---

[8]Defendants cite excerpts from Plaintiff Neuhaus's deposition as establishing "actual
knowledge" for purposes of the three-year statute of limitations, in that he had always believed
that the WAP was "a retirement plan."  It has already been determined that the WAP is an
"employee pension benefit plan" covered by ERISA. Defendants, however, utilize Neuhaus'
testimony as proving he had "actual knowledge" that the plan was not a top hat plan.
Defendants' reliance of this deposition excerpt falls well short of proving "actual knowledge" for
purposes of this summary judgment proceeding.

26

fiduciaries and is considered "a statute of repose, establishing an outside limit of six years in which to file suit, and tolling does not apply." *Radford v. Gen'l Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998); *see also Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (holding that the six-year period in section 1113 serves "as an absolute barrier to an untimely suit").   Under this scheme, Defendants argue, the "continuing violation" doctrine generally does not apply to extend the application of section 1113(1) beyond the conduct actually constituting a breach, citing *Gosselink v. Am. Tel. & Tel., Inc.*, 1999 WL 33737341, at * 11 (S.D. Tex. Aug. 4, 1999) (rejecting argument that a new fiduciary breach occurred each time defendants misapplied allegedly unlawful compensation formula).   Thus, contend Defendants, a plaintiff cannot avoid expiration of the six-year limitation by simply pleading that an alleged fiduciary breach continued over time.   Rather, the six-year limitations period may be interrupted only if the plaintiff identifies a distinct and independent fiduciary breach occurring on or after January 11, 2005.

Plaintiffs, on the other hand, argue that it is Defendants' burden to establish "the date of the last action which constituted a part of the breach or violation," and to prove that Plaintiff's claim occurred more than six years after this date.   See 29 U.S.C. § 1113(1); *Citigroup Inc.*, 649 F.3d at 371.   Plaintiffs state that Defendants fail to set forth any evidence establishing the date the WAP failed to meet the top hat exemption – *i.e.*, the date of the breach or violation.   Instead, they claim, Defendants attempt to shift this burden to Plaintiffs, arguing that Plaintiffs' "challenges to the WAP's top hat status prior to the 2009 Plan year

necessarily arise from conduct occurring before January 11, 2005," that "Plaintiff's

allegations are expressly based upon RBC's alleged failure to meet the top hat requirements

at any time after 2002, and certainly prior to January 11, 2005," and that "Plaintiff cannot

identify any other independent alleged breach between 2002 and 2005, on which she can rely

to avoid the expiration of the six-year period of repose set forth in 29 U.S.C. § 1113(1)."

Since RBC does not establish a specific date as to when the six-year limitations period began

or expired as to the named Plaintiffs, the Court cannot grant summary judgment on this issue.

*Painter Family Inv., Ltd., L.L.P. v. Underwriters at Lloyds Syndicate 4242*, 2011 WL

6755839 at *2 (S.D. Tex. 2011) ("Therefore, granting summary judgment on a statue of

limitations defense is appropriate only if there is no genuine dispute of material fact as to

when the limitations period began or expired.").

Regardless, Plaintiffs allege that Defendants unlawfully forfeited Plaintiff Gift's WAP

funds in September 2011 and Plaintiff Neuhaus's funds in November 2011, both of which

occurred less than six years before they joined this lawsuit in 2012. Defendant Tolbert was

terminated from employment in 2009, followed by the forfeiture of her WAP employer

contributions. Thus, to the extent this case is governed by section 1113(1)(A) applicable to

affirmative fiduciary breaches, and to the extent Plaintiffs are claiming that the forfeitures

constituted breaches of a fiduciary duty, the unlawful forfeiture claims stemming from the

Wap's non-top hat status would appear brought well within any six-year limitations period.

The Court makes this observation not as a matter of law, but only as a further reason why

summary judgment cannot be granted as to limitations. The issue will ultimately be determined by the evidence adduced at trial.

Defendants' motion and supplemental motion for summary judgment (Docket Entries No. 91, 111) are **DENIED** as to the statute of limitations defense.

## VIII.  BREACH OF FIDUCIARY DUTY

Defendants contend that Plaintiffs have failed to name any defendant who can be held liable for the alleged breaches of fiduciary duty. (Docket Entry No. 91.) It is well-settled that a person can be deemed a fiduciary under ERISA only to the extent he has or exercises specified authority, discretion or control over a plan or its assets. *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir. 2008); 29 U.S.C. § 1002(21). Further, the Supreme Court has made clear that conduct related to the decision to modify, amend or terminate a plan cannot give rise to fiduciary liability. *Hughes Aircraft Co.*, 525 U.S. at 444; *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) ("[T]he act of amending a pension plan does not trigger ERISA's fiduciary provisions[.]"). This is because such decisions typically concern "the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts," and thus involve conduct that is more akin to the settlor of a trust, as opposed to the fiduciary role of plan administration or management. *See Hughes*, 525 U.S. at 444-45.

Plaintiffs contend that Defendant RBC is liable for the fiduciary breaches made the basis of this lawsuit, primarily arising from their failure to maintain the WAP as a qualifying

top hat plan. (Docket Entry No. 93.)  Because the WAP's status as a viable top hat plan has

not yet been determined, the propriety of Plaintiffs' breach of fiduciary duty claims remain

untested as well.

Until the top hat issue is resolved at trial and clearer evidence is presented as to

Defendants' actions and responsibilities vis-a-vis the WAP, Defendant RBC remains named

as the putative fiduciary entity in this lawsuit. This is not an issue that can be determined at

this juncture, and summary judgment must be denied.

## IX.  FINAL CONCLUSION

Plaintiffs' First Amended and Re-Urged Motion for Class Certification (Docket Entry

No. 162) is **DENIED**.

Defendants' Motion for Summary Judgment (Docket Entry No. 91) and Supplemental

Motion for Summary Judgment (Docket Entry No. 111) are **DENIED**.

Signed at Houston, Texas, on this the 26 day of May, 2016.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE