# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA TOLBERT, et al., | § | |
| | § | |
| Plaintiff | § | |
| | § | No. 4:11-CV-107 |
| v. | § | |
| | § | Judge Keith P. Ellison |
| RBC CAPITAL MARKETS | § | |
| CORPORATION n/k/a RBC CAPITAL | § | |
| MARKETS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**STIPULATED FINDINGS OF FACT**

Plaintiffs Brenda Tolbert, Joseph Neuhaus, Jr., and Lawrence Gift, Jr. ("Plaintiffs"), and Defendants RBC Capital Markets, LLC, RBC Bank (USA), and RBC Insurance Services, Inc. ("RBC" or "Defendants") (collectively, the "Parties"), through their respective counsel, having had the benefit of revisiting the existing factual record in light of the Court's rulings on the Parties' Motions for Summary Judgment (Dkts. 174, 186) and Plaintiffs' "Re-Urged" Motion for Class Certification (Dkt. 186), and to effectuate settlement of this matter, hereby stipulate to the following findings of fact:

**I.   OVERVIEW OF THE RBC WEALTH ACCUMULATION PLAN.**

1. The WAP was established in 2001 by the Royal Bank of Canada ("Royal Bank"), headquartered in Toronto, Ontario, along with its participating United States subsidiaries. The WAP took effect beginning in the 2002 plan year. The Royal Bank and any participating U.S. subsidiary are considered the "sponsors" of the WAP. *See* Dkt. 24, Am. Cmpl. Ex. A, 2008 WAP (hereinafter "2008 WAP") § 1.1; *see also* Dkt. 174 at 18 ("By its own terms, the WAP is a

1

plan in which certain employees of the Royal Bank of Canada and its 'Participating Subsidiaries' may participate, if eligible.").

2. The WAP is administered by the WAP Committee, the members of which serve under the Royal Bank's Head of Human Resources. 2008 WAP § 1.2.

3. The WAP is a nonqualified deferred compensation plan for certain high-earning and key management employees of the Royal Bank and its participating subsidiaries. The WAP's stated purpose was to be "a nonqualified deferred compensation plan pursuant to which a select group of management or highly compensated employees . . . may be offered the opportunity to elect to defer receipt of a portion of their compensation" until a time of their choosing. 2008 WAP § 1.1. The WAP provides that in the event it is "determined to be an 'employee pension benefit plan,' the Company believes that it" is a top hat plan, "exempt from many of ERISA's requirements." *Id.* § 5.11.

4. Consistent with these statements in the Plan, RBC designed and maintained the WAP for the primary purpose of providing deferred compensation to its participants. *See, e.g.*, Dkt. 91, RBC MSJ Ex. 1, Sikich Dep. at 141:15-25 (explaining RBC offers the WAP to eligible employees to defer additional income aside from RBC's 401(k) Plan); Dkt. 111-1, RBC MSJ Suppl. Ex. A, Neuhaus Dep. at 89:15-90:13 (explaining the ability to defer compensation, calling it a "substantial benefit" for eligible employees); Dkt. 111-2, Gift Dep. at 40:21-41:6, 43:8-15.

5. Throughout the relevant period, the WAP provides for both pre-tax voluntary participant deferrals and company contributions by the Royal Bank, including annual, productivity, and loyalty bonuses, as well as matching contributions in certain Plan years. *See* 2008 WAP § 2.2; Dkt. 91, RBC MSJ Ex. 4, 2008 WAP Summary (FC) at 1-2; *id.* Ex. 5, 2009

WAP Summary (FC) at 2; *id.* Ex. 6, 2010 WAP Summary (FC/BD) at 2; *id.* Ex. 7, 2011 WAP Summary (FC/BD) at 2; *see also id.* Ex. 2, Buchert Dep. at 18:21-19:4, 42:3-43:13, 51:7-9.

6. Eligible participants' voluntary deferrals are always 100% vested and cannot be forfeited. 2008 WAP § 4.1.

7. Unlike voluntary deferrals, RBC's company contributions were subject to varying vesting schedules. *See, e.g.*, Dkt. 91, RBC MSJ Ex. 5, 2009 WAP Summary (FC) at 1-2; *id.* Ex. 8, 2009 WAP Summary (BD/CD) at 2; *id.* Ex. 9, 2009 WAP Summary (PCG Director) at 2.

8. When an employee leaves RBC before satisfying the vesting schedule with respect to any particular company contribution, that amount is deemed "forfeited" and the account is reduced accordingly. 2008 WAP § 4.6. Furthermore, if an employee is terminated "for cause," as defined by the WAP and determined by the WAP Committee, any of RBC's company contributions remaining in that employee's WAP account are also deemed forfeited. Dkt. 146 at 8-9; *see also* 2008 WAP §§ 1.2, 4.3.

9. The WAP is not funded by a res or trust separate from the general assets of the Royal Bank or its subsidiaries, and participants have no greater rights to their WAP accounts or benefits than an unsecured creditor of the Royal Bank or its participating subsidiaries. *See* Dkt. 174 at 5 (noting the Parties' agreement that "the WAP is unfunded"); 2008 WAP § 8.2 (explaining that "[a]ll Participants are general unsecured creditors" of RBC "with respect to the amounts payable pursuant to distributions from the [WAP] accounts").

## II. ELIGIBILITY TO PARTICIPATE IN THE WAP.

10. The WAP contains two express eligibility requirements: (1) the employee of the Royal Bank or its "Participating Subsidiaries" must neither reside nor perform the majority of their services in Canada, *see* Dkt. 174 at 18; 2008 WAP § 2.1(b); and (2) the employee must

3

satisfy specified minimum thresholds or requirements as determined by the WAP Committee in their discretion, 2008 WAP § 2.1(a).

11. Over the years relevant to Plaintiffs' allegations, the WAP Committee established minimum eligibility requirements for participation in the WAP based upon an employee's annual compensation, annual "production" (*i.e.*, the amount of revenue to RBC generated from the employee's clients), and/or their job title or position. The Parties reached a stipulation reflecting the various eligibility requirements in each Plan year at issue (Dkt. 75), which the Parties incorporate by reference.

### III. THE COMPOSITION OF WAP PARTICIPANTS

#### A. Number of WAP-Eligible Employees

12. For Plan years 2004 through 2010, between 1.97% and 3.31% of all employees of all Plan sponsors (i.e., the Royal Bank and its "Participating Subsidiaries") were eligible to participate in the WAP annually. Dkt. 91, RBC MSJ Ex. 18, Niden Supp. Rpt. ¶ 46. Over those years, the WAP's average overall eligibility percentage was 2.84% of the Plan sponsor workforce. *Id.*

#### B. Compensation of WAP-Eligible Employees.

13. *WAP-Eligible Employees vs. Entire Plan Sponsor Workforce.* For Plan years 2004 through 2010, the median compensation of WAP-eligible employees was between 5.2 and 7.2 times (on average 6.2 times) greater than that of all Plan sponsor employees. *Id.* ¶¶ 50-51. The median compensation of WAP-eligible employees over this period was greater than the compensation of at least 94% of Plan sponsor employees. *Id.* ¶ 52.

14. For Plan years 2004 through 2010, the average compensation of WAP-eligible employees was between 4.0 and 5.5 times greater than that of all Plan sponsor employees. *Id.*

¶ 53-54.  The average compensation of WAP-eligible employees was greater than the compensation of at least 96% of all Plan sponsor employees during the years analyzed.  *Id.*

15. *WAP-Eligible Employees vs. Non-Eligible Employees.*  From 2004 through 2010, the median compensation for all WAP eligible employees was between 5.3 and 7.4 times (on average 6.3 times) greater than that of all non-eligible Plan sponsor employees. *Id.* ¶ 57.

16. Over the same period, the average compensation of all WAP-eligible employees was between 4.7 and 6.5 times greater than that of all Plan sponsor employees.  *Id.* ¶ 58.

    **C.**    **Job Responsibilities and Characteristics of WAP-Eligible Employees**

17. Employees of the Royal Bank and its participating subsidiaries who were eligible for the WAP ranged across different positions, including Financial Consultants, Complex and Brach Directors, Business Line Directors and Presidents, Regional Directors, and other high-ranking or high-earning RBC employees.  *See* Dkt. 75, Jt. Stip.

18. WAP-eligible employees in the positions of Complex Directors, Branch Directors, Business Line Directors and Presidents, and Regional Directors perform various leadership and upper-management responsibilities, including supervision of all RBC branches, establishing annual budgets and growth or profitability targets, and overseeing, recruiting, and retaining the Financial Consultant population discussed below.  *See* Dkt. 91, RBC MSJ Ex. 14, Complex Dir. Job Description; *id.* Ex. 15, Org. Chart; *id.* Ex. 16, Branch Mgr. Job Description.

19. The WAP also included eligible employees from other RBC business segments, including executive level employees of certain subsidiaries with a Vice President title, or those who otherwise satisfied the minimum annual compensation or production thresholds established by the WAP Committee for any particular Plan year.  *See* Dkt. 75 (Jt. Stip.).

20. High-performing Financial Consultants at RBC also could be eligible for the WAP and comprised the largest single group of participants.  Financial Consultants act as the

"face" of RBC in connection with interfacing with clients, to whom they provide investment and other financial advice. *See* Dkt. 91, RBC MSJ Ex. 11, Brazelton Dep. at 12:22-14:5, 15:25-19:5, 19:21-20:21. Their financial success and compensation at RBC is driven almost exclusively by their ability to develop their own book of business. *See id.* 12:20-17:2, 19:21-20:21.

21.     Successful Financial Consultants are heavily recruited, and the competition for their services can be substantial. Unlike ordinary employees, Financial Consultants who leave RBC generally take with them their individual book of business and clientele, along with the stream of commission revenue it generates for RBC. Dkt. 111-1, Neuhaus Dep. at 38:20-39:16, 40:14-25, 21-66:15; Dkt. 111-2, Gift Dep. at 26:2-20, 76:13-77:1; Dkt. 91, RBC MSJ Ex. 11, Brazelton Dep. at 21:2-24:4; *id.* Ex. 12, Brazelton Client List. Moreover, exiting Financial Consultants also often leave with other Financial Consultants, partners, and staff. *See* Dkt. 111-1, Neuhaus Dep. at 55:23-56:16; Dkt. 111-2, Gift Dep. at 71:10-14; Dkt. 91, RBC MSJ Ex. 17, Tolbert Dep. at 31:13-33:17, 42:8-16, 47:5-20.

22.     Promising Financial Consultants are highly sought after employees, both at RBC and in the financial services industry generally. *See* Dkt. 91, RBC MSJ Ex. 11, Brazelton Dep. at 20:18-23; *id.* Ex. 2, Buchert Dep. at 23:9-14, 25:10-22, 27:20-37:23. To attract Financial Consultants, competing firms offer substantial signing bonuses (often in the form of a forgivable promissory note). Dkt. 111-2, Gift Dep. at 24:5-14; 57:15-58:5; Dkt. 91, RBC MSJ Ex. 11, Brazelton Dep. at 60:16-61:20; Dkt. 111-1, Neuhaus Dep. at 45:11-46:1, 47:3-18, 48:10-15.

23.     Because of successful Financial Consultants' value and importance to RBC's business model, the WAP was designed to attract and retain such Financial Consultants, by offering an attractive benefit to defer compensation and bonuses on a pre-tax basis, over and above the amounts permitted in RBC's 401(k) plan, and with the applicable vesting periods

serving as a strong incentive for a Financial Consultant to remain at RBC until his or her awards have vested. Dkt. 91, RBC MSJ Ex. 1, Sikich Dep. at 40:12-15; *id.* Ex. 2, Buchert Dep. at 51:7-9, 98:1-7.

24. Not only was the WAP designed with the interests of Financial Consultants in mind, but RBC took special effort to tailor and adapt the WAP to the preferences of its participants. Dkt. 91, RBC MSJ Ex. 3, Sikich Decl. ¶ 9. Moreover, feedback from participants led to numerous changes to the WAP's operations. *Id.*; *see also id.* Ex. 1, Sikich Dep. at 154:4-155:6. For example, feedback from participants led to numerous changes to the WAP's operation, including: additional investment options were added; participants were given greater flexibility to move their WAP investments among different investment vehicles within the Plan; and matching company contributions were eliminated in favor of annual bonus payments through the WAP. *See id.* Ex. 3, Sikich Decl. ¶ 9; *see also id.* Ex. 1, Sikich Dep. at 154:4-155:6.

Dated: June 28, 2016                                                                 Respectfully submitted,

By: /s/ *Geoffrey H. Bracken*                                        By: /s/ *Matthew A. Russell*

Geoffrey H Bracken
  Tex. State Bar No. 02809750
Gardere Wynne Sewell LLP
1000 Louisiana St
2000 Wells Fargo Plaza
Houston, TX 77002-5011
713.276.5739 (Telephone)
713-276-6739 (Facsimile)
gbracken@gardere.com

Joe B. Harrison
  Tex. State Bar No. 09115500
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
214.999.4633 (Telephone)
214.999.3633 (Facsimile)

Sari M. Alamuddin (*admitted pro hac vice*)
  Ill. State Bar No. 6215689
Christopher J. Boran (*admitted pro hac vice*)
  Ill. State Bar No. 6282552
Matthew A. Russell (*admitted pro hac vice*)
  Ill. State Bar No. 6290632
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
312.324.1000 (Telephone)
312.323.1001 (Facsimile)
sari.alamuddin@morganlewis.com
christopher.boran@morganlewis.com
matthew.russell@morganlewis.com

*Attorneys for Defendants RBC Capital Markets Corporation; RBC Capital Markets, LLC; RBC Centura Bank; RBC U.S. Ins. Servs., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent to counsel of record through the Court's CM/ECF system on June 28, 2016

s/ <i>Matthew A. Russell</i>